UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
RICARDO COPANTITLA, DIEGO DIAZ
DE LA VEGA, IGNACIO GARCIA,
FREDDY GUACHUN, JULIO
LANTIGUA, MANUEL LIZANDRO,
MARTIN LOPEZ, SEBASTIAN LOPEZ,
AUGUSTIN MALDONADO, HENRY
MATUTE, JOELITO MELENDEZ,
AUSSENCIO RAMIREZ, AND JOSE
LUIS VARGAS,

                    Plaintiffs,

                -against-

FISKARDO ESTIATORIO, INC. d/b/a
THALASSA RESTAURANT, GEORGE
MAKRIS, JULIA MAKRIS, and STEVE
MAKRIS,

                    Defendants.
------------------------------------------------------- X

Case No. 09 Civ. 1608 (RJH)

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas
New York, New York 10020
212-262-6700
Attorneys for Defendants

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF THE CASE..........................................................................................1

ARGUMENT ....................................................................................................................4

I   DEFENDANTS' RESPONSES AND OBJECTIONS ARE PROPER AND PLAINTIFFS' MOTION TO COMPEL SHOULD BE DENIED..............................................................4

    A. Applicable Standard ......................................................................................4

    B. Plaintiffs' Requests Seek Information Outside the Scope of Discovery and Should be Limited...........................................................................................5

    C. Document Request No. 40 Is Premature, Seeking Post-Judgment Discovery, and Overbroad ........................................................................................................9

    D. Defendants Have Produced Documents Sufficient to Prove The Restaurant's Revenues ........................................................................................................12

II   PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES ...............................14

CONCLUSION...............................................................................................................15

# TABLE OF AUTHORITIES

**Pages**

**CASES**

Barkley v. Olympia Mtg. Co.,
    Docket No. 05-5679, 2007 WL 656250 (E.D.N.Y. Feb. 27, 2007)......................................7, 8

Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.,
    236 F.R.D.129 (E.D.N.Y. 2006).........................................................................................7, 8

Collens v. City of New York,
    222 F.R.D. 249 (S.D.N.Y. 2004) ..............................................................................................7

Comprehensive Habilitation Serv., Inc. v. Commerce Funding Corp.,
    240 F.R.D. 78 (S.D.N.Y. 2006) .............................................................................................14

Davis v. Ross,
    107 FRD 326 (S.D.N.Y. 1985) ..............................................................................................10

Hazeldine v. Beverage Media, Ltd.,
    Docket No. 94-3466, 1997 WL 362229 (S.D.N.Y. June 27, 1997)...................................10, 12

Martinez v. Thompson,
    Docket No. 04-0440, 2007 WL 1017315 (N.D.N.Y. Mar. 29, 2007)....................................7, 9

Messa v. Woods,
    Docket No. 9:07-cv-0306, 2008 WL 2433701 (N.D.N.Y. June 12, 2008)................................7

Rubert v. Sellers,
    48 A.D.2d 265 (4th Dep't 1975)................................................................................10, 11, 12

Tillery v. Lynn,
    607 F. Supp. 399 (S.D.N.Y. 1985) ........................................................................................10

Treppel v. Biovail Corp.,
    Docket No. 03-3002, 2006 WL 468314 (S.D.N.Y Feb. 28, 2006) ...........................................5

Ultradent Products, Inc. v. Hayman,
    Docket M8-85, 2002 WL 31119425 (S.D.N.Y. Sept. 24, 2002) ..........................................7, 8

Vinyard v. Rite-Hite Corp,
    Docket No. 07-2829, 2010 WL 98994 (E.D.N.Y. Jan. 7, 2010) ............................................14

Wade v. Sharinn & Lipshie, P.C.,
    Docket No. 07-2838, 2009 WL 37521(E.D.N.Y. Jan. 7, 2009) ..............................................11

World Wrestling Fed'n Entm't, Inc v. William Morris Agency, Inc.,
 204 F.R.D. 263 (S.D.N.Y. 2001) ..................................................................................5

**STATUTES**

Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 et seq. (the "FLSA")...................1

N.Y.C. Admin. Code Section 8-107 ......................................................................................2

New York Executive Law Section 296....................................................................................2

New York Labor Law Section 196-d......................................................................................2

New York Labor Law Section 215 .........................................................................................2

New York Labor Law Section 652 .........................................................................................1

New York Labor Law Section 663 .........................................................................................2

**RULES**

Fed. R. Civ. P. 26(b)(2)...........................................................................................................5

Fed. R. Civ. P. 37(a)(3)(B) ......................................................................................................4

Fed. R. Civ. P. 37(a)(3)(B) and 37(a)(4).................................................................................5

Fed. R. Civ. P. 37(a)(5)(A) ....................................................................................................14

**REGULATIONS**

12 N.Y.C.R.R. Section 137-1.6 ..............................................................................................2

12 N.Y.C.R.R. Section 137-1.8 ..............................................................................................2

## PRELIMINARY STATEMENT

Defendants Fiskardo Estiatorio, Inc. d/b/a Thalassa Restaurant (the "Restaurant"), George Makris, Julia Makris, and Steve Makris (collectively, "defendants") respectfully submit this Memorandum of Law in opposition of the motion to compel discovery filed by plaintiffs Ricardo Copantitla, Diego Diaz de la Vega, Ignacio Garcia, Freddy Guachun, Julio Lantigua, Manuel Lizandro, Martin Lopez, Sebastian Lopez, Augustin Maldonado, Henry Matute, Joelito Melendez, Aussencio Ramirez, and Jose Luis Vargas (collectively "plaintiffs"). Plaintiffs seek an order compelling defendants to provide an answer to Plaintiffs' Interrogatory No. 9, and to produce documents responsive to Plaintiffs' Document Request Nos. 6, 40, 44, 46, 47, and 55 ("Remaining Requests").

Defendants rightfully withheld the names and identifying information of non-party employees as a necessary safety precaution, because plaintiffs improperly seek to use discovery as a tool to try to gather additional plaintiffs' and not to further the claims of the current plaintiffs, and the names, addresses, telephone numbers, social security numbers, payroll, and tax information is not relevant nor likely lead to the discovery of relevant information. Furthermore, defendants did not produce the personal financial information and net worth of the individual defendants, because the request is irrelevant, premature, overbroad, and would be prejudicial to defendants during the liability phase of trial. For the reasons set forth below, plaintiffs' motion should be denied, as well as their request for an award of attorneys' fees and costs.

## STATEMENT OF THE CASE

Plaintiffs are present or past employees of the Restaurant who primarily allege violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 et seq. (the "FLSA") and New York wage-hour laws. Specifically, plaintiffs assert claims for: (1) failure to pay minimum wages under the FLSA and the New York Minimum Wage Act, New York Labor

Law Section 652; (2) failure to pay overtime wages under the FLSA and the New York Labor Law; (3) failure to provide "spread of hours" pay under the New York Labor Law; (4) unauthorized deductions from wages in violation of the New York Labor Law; (5) unlawful retention of gratuities, and "charges purported to be gratuities," in violation of New York Labor Law Section 196-d; (6) requiring plaintiffs to pay for and clean and maintain their uniforms in violation of regulations under the New York Labor Law, 12 N.Y.C.R.R. Section 137-1.8 and New York Labor Law Section 663; and (7) failure to pay "call-in" pay in violation of regulations under the New York Labor Law, 12 N.Y.C.R.R. Section 137-1.6. The Amended Complaint further alleges that defendants retaliated against plaintiffs Copantitla, Diaz de la Vega, Garcia, Lantigua, Lizandro, S. Lopez, Maldonado, Melendez and Vargas for complaining about violations of the New York Labor Law, in violation of New York Labor Law Section 215.[1]

The Amended Complaint also alleges one claim of false imprisonment under New York common law involving Vargas. Further, plaintiffs Diaz de la Vega and Melendez assert claims of sexual harassment, in violation of New York Executive Law Section 296 and N.Y.C. Admin. Code Section 8-107. Diaz De La Vega alleges that he was fired for his refusal to engage in sexual acts with Kemal Kurt, the Restaurant's former Maitre d', and Melendez alleges that he resigned from the Restaurant because Kurt allegedly touched him in an inappropriate manner while at work.

With respect to these claims, plaintiffs seek the following:

i. the difference between the reduced hourly wage a plaintiff was paid because of the tip credit allowance the Restaurant took, and the statutorily-prescribed New York minimum wage;

ii. their share of the amount of tips from banquets that the Restaurant allegedly illegally retained as a service charge;

iii. an extra hour of pay at the applicable New York minimum wage for each day on which each plaintiff worked a spread of more than 10 hours;

---

[1] At the beginning of his deposition on February 8, 2010, Garcia voluntarily withdrew his claim for retaliation and wrongful discharge. A Consent Order will be filed shortly.

2

iv. the cost of those uniform items for which a plaintiff paid, the full statutory weekly uniform maintenance allowance for all weeks that the Restaurant did not offer any laundry service, and a reasonable percentage of the statutory weekly uniform maintenance allowance for weeks on which the Restaurant provided laundry service for only the jacket or suit portion of employees' uniforms; and

v. the difference between the reduced hourly overtime rate employees were paid because of the tip credit allowance that the Restaurant claimed, and the federally prescribed overtime rate of one and one-half times the full statutory New York minimum wage.

In addition, plaintiffs seek, among other relief, liquidated damages, prejudgment interest, punitive damages, a preliminary and permanent injunction, attorneys' fees and costs.

On June 26, 2009, plaintiffs served defendants with their first set of interrogatories and document requests. In July 2009, this case was referred to Magistrate Judge Francis for mediation and, if mediation was unsuccessful, discovery was to proceed on September 8, 2009. (See Affirmation of Stephanie L. Aranyos ("Aranyos Aff."), dated February 15, 2010 Aranyos Aff., Exs. A.) Nevertheless, on or about on August 6, 2009, defendants produced approximately 2,400 pages of payroll and other documents. The parties' claims were not resolved at mediation, and on September 10, 2009 the parties submitted a joint letter to the Hon. Richard J. Holwell, U.S.D.J., advising that discovery would proceed. (Aranyos Aff., Ex. B.)

Defendants served their responses and objections to Plaintiffs' interrogatories on or about October 8, 2009 and their responses and objections to Plaintiffs' first request for the production of documents on or about October 13, 2009. (See Aranyos Aff., Exs. C-F.) While defendants set forth objections, defendants also made a good faith effort to provide substantive responses to the interrogatories subject to those objections. (Id.)

In October 2009, the parties agreed to enter into a Stipulation and Order of Confidentiality ("Confidentiality Order"). The Confidentiality Order was not easily negotiated, but over the next several months, defendants made several concessions to continue the process,

and the parties finalized the Confidentiality Order in January 2010.[2] Contrary to plaintiffs' assertion, the delay in finalizing the Confidentiality Order was not defendants' fault. Nor was the "scope of protection" expanded with each draft. Defendants did not expect the negotiations to last so long, as evidenced by their willingness to produce "Confidential" documents on October 22, 2009 subject to finalizing the Confidentiality Order. (See Aranyos Aff., Ex. G.) However, rehashing that negotiation serves no purpose and is irrelevant to resolution of the instant motion.

In a letter dated November 12, 2009, plaintiffs alleged certain deficiencies with respect to Defendants' responses to plaintiffs' discovery requests. (See Decl. of Bernadette K. Galiano ("Galiano Decl."), Ex. B.) Defendants, in a letter dated December 9, 2009, stated that they would be willing to produce relevant documents and meet-and-confer once the Confidentiality Order was finalized.[3] With only one remaining issue in the Confidentiality Order negotiations, defendants expected the meet-and-confer to occur "very soon." (Id.)

On January 25, 2010, the Confidentiality Order was entered. Defendants agreed to immediately produce "confidential" documents for inspection. Indeed, defendants made more than 30 boxes of documents for inspection. And, defendants have produced over 10,000 documents to plaintiffs. Plaintiffs apparently remain dissatisfied and now seek the intervention of this Court. For the reasons set forth below, plaintiffs' motion should be denied.

## ARGUMENT

### I

### DEFENDANTS' RESPONSES AND OBJECTIONS ARE PROPER AND PLAINTIFFS' MOTION TO COMPEL SHOULD BE DENIED

**A.** **Applicable Standard**

Fed. R. Civ. P. 37(a)(3)(B) provides that a party may move for an order compelling a discovery response. A motion to compel a discovery response is only appropriate

---

[2] As plaintiffs' stated in their brief, negotiations were "hard fought." (Pla. Br. 3.)
[3] Indeed, the Confidentiality Order resolved at least 7 of plaintiffs' alleged deficiencies raised in the November 12, 2009 letter.

4

if a party entirely fails to answer an interrogatory or to permit the inspection of relevant documents, or if a party provides an "evasive or incomplete" answer or response. Fed. R. Civ. P. 37(a)(3)(B) and 37(a)(4).

Federal Courts in New York recognize that while the scope of discovery is broad, it is not unlimited and may be circumscribed. See World Wrestling Fed'n Entm't, Inc v. William Morris Agency, Inc., 204 F.R.D. 263, 265 (S.D.N.Y. 2001); Treppel v. Biovail Corp., Docket No. 03-3002, 2006 WL 468314 at *2 (S.D.N.Y Feb. 28, 2006) Indeed, the scope of discovery may be limited by the Court. Treppel, 2006 WL 468314 at *2. See also Fed. R. Civ. P. 26(b)(2).

Here, defendants provided complete responses and proper objections. Therefore, defendants should not be compelled to respond to the Remaining Requests.

### B. Plaintiffs' Requests Seek Information Outside the Scope of Discovery and Should be Limited

To the extent plaintiffs seek discovery related to the names of Restaurant employees that are not parties to this action, discovery should be appropriately circumscribed. First, defendants have legitimate safety concerns for the Restaurant employees that cannot be adequately protected by the Confidentiality Order. Second, plaintiffs' may not abuse the discovery process by using it as a tool to obtain more plaintiffs. Third, by asking for information about individuals who did not work with plaintiffs and/or worked different jobs, i.e. the night porter, the requests are clearly overbroad, unduly burdensome and not likely to lead to the discovery of relevant information.

In light of sworn testimony elicited during the recent hearing before the National Labor Relations Board ("NLRB"), safety of the Restaurant's employees is a genuine concern. Specifically, Manuel Segundo Paguay ("Mr. Paguay"), a busboy at Thalassa, testified that late on the night of January 23, 2009, or early in the morning of January 24, 2009, he called the Restaurant in a panic because, he reported, a group of people had followed him from the

5

Restaurant to the subway station. Representatives of ROC-NY[4] waited for Thalassa workers leaving work at 10:00 p.m. on January 23, 2009.

On January 23, 2009, Mr. Paguay left work shortly before midnight. Mr. Paguay testified that, a representative of ROC-NY confronted him. Not surprisingly (considering that a total stranger had approached him late at night on a dark, nearly-deserted block), that representative testified that Mr. Paguay "seemed startled and... was pretty afraid..." As he walked to the subway station, Mr. Paguay was approached by a group of people who asked him to sign a document to "win a lot of money" against Thalassa. He became "very scared" and tried to walk away, but the group followed him. He went into a market and waited there for 15 to 20 minutes, hoping the group would go away. But when he left the market, the people were still there, and "three to four women … surrounded [him] again." He attempted to get away by going into the subway station, but the people continued to follow him. Mr. Paguay boarded a train, and the people followed him on to it. Shortly before the train departed from the second station stop, Mr. Paguay jumped off as the doors closed, leaving his pursuers on the train.

Mr. Paguay testified during a trial before the NLRB about how he felt upon leaving the Restaurant and encountering the strangers (whom the Restaurant learned only at the hearing on September 17, 2009 were ROC-NY representatives) on the street that night:

> When I came out of the Restaurant it was between 11:30 and 12. In one corner there were two people, and in another corner there were two people and I saw a big crowd of people.
> ***
> And two of those people came up to me. And they told me to sign this. And I told them "I don't know what you're talking about."
> ***
> When they told me to sign, I was very scared. . . . I had the money that they had paid me that day with me. One stopped me from one side, and the other stopped me from the other side.

(See Aranyos Aff. Exs. H and I)

---

[4] ROC-NY is the Restaurant Opportunities Center of New York, an organization that several, possibly all, plaintiffs have met with since 2008 in an attempt to organize the workers at the Restaurant.

6

In light of defendants' legitimate safety concerns for its employees, discovery of their names should be appropriately limited in a manner that protects Restaurant employees from harassment – or worse – and presents no prejudice or hardship to plaintiffs. Safety concerns are a sound basis for withholding information from discovery. Cf. Messa v. Woods, Docket No. 9:07-cv-0306, 2008 WL 2433701 at *2 (N.D.N.Y. June 12, 2008); Collens v. City of New York, 222 F.R.D. 249, 254 (S.D.N.Y. 2004) (court refused to require disclosure of police officer's home address because of a justifiable fear of jeopardizing the officer's safety. The Court stated that "defendant should not have to prove that harm will befall her nor should she have to wait for harm to occur. Indeed, courts have often protected the disclosure of "particularly personal information" such as officers' home address even where defendants have failed to establish the existence of a privilege as to employment records generally" (citations omitted.)); Martinez v. Thompson, Docket No. 04-0440, 2007 WL 1017315 at *2 (N.D.N.Y. Mar. 29, 2007). Moreover, defendants' safety concerns are not some "unsubstantiated assertion," Messa, 2008 WL 2433701 at *2, but are derived from their own experience and their employee's experience, as described in his sworn testimony.

The cases that plaintiffs cite in their memorandum are inapplicable to the circumstances at hand. First, in all the cases cited by plaintiffs the courts relied on the premise that a confidentiality order would sufficiently protect the information sought and withheld. See Barkley v. Olympia Mtg. Co., Docket No. 05-5679, 2007 WL 656250 at *20 (E.D.N.Y. Feb. 27, 2007); Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc., 236 F.R.D. 129, 136 (E.D.N.Y. 2006); Ultradent Products, Inc. v. Hayman, Docket M8-85, 2002 WL 31119425 at *4 (S.D.N.Y. Sept. 24, 2002). While such a premise, no doubt, generally holds true, it is inapplicable in this case. In this case – and in filing this motion – plaintiffs violated the

Confidentiality Order entered in this case by publicizing documents identifying the names of customers that are clearly marked "CONFIDENTIAL" – without notice to or permission of defendants – instead of submitting the documents directly to Chambers. As this breach demonstrates, plaintiffs cannot be trusted to protect the identity of Restaurant employees.

Moreover, the cases are also distinguishable because the information sought in those cases was critical to proving a party's case. In Barkley, the plaintiff's lawsuit alleged a pattern and practice of predatory lending to minority homebuyers, making those borrowers' names and addresses necessary to prove the claim. 2007 WL 656250 at *1. In Chembio Diagnostic the court expressly acknowledged that confidential trade information was "necessary" and the party withholding information failed to "demonstrate why the confidentiality order is inadequate," 236 F.R.D. at 136, while defendants in this case have. And in Ultradent Products, the court recognized that the withholding party's overbreadth objections were not valid because the discovery request was sufficiently narrow. 2002 WL 31119425 at *4.

In this case, the information withheld or redacted from defendants' production was non-party employee names along with other identifying information.[5] The discovery sought includes employees that worked different jobs and/or worked during a different time period (as the vast majority of plaintiffs only worked in 2007/2008). Defendants' have produced all relevant information, including wage, hours, and payroll information, for plaintiffs and all wage, hours, and payroll information for non-party employees. Numbers – not names – matter here. Plaintiffs have no need for non-party employee names and identifiers to support their claims and suffer no prejudice whatsoever. Indeed, non-party employees names are also not "critical" to satisfy the plaintiffs' tip distribution claims.

---

[5] Defendants produced payroll information with the names, addresses, Social Security numbers, and other identifying information for non-party employees redacted. To the extent that some payroll information was produced with additional redactions, defendants will unredact those documents (except identifying information) upon receipt of a written request from plaintiffs' counsel identifying those bates stamp numbers.

8

Due to the absence of a need for, or the relevance of, employee names, the legitimate safety concerns, and the demonstrated inadequacy of the Confidentiality Order, discovery as to employee names and other identifying information should not be granted.

Plaintiffs, having no need for non-party employee names, could only want their names in order to search out additional plaintiffs. But using the discovery process to add more plaintiffs is not an appropriate use. See Martinez, 2007 WL 1017315 at *2 ("The Court will not permit Plaintiff to use discovery as a fishing expedition to identify other possible defendants …"). For the reasons set forth above, defendants responses to Request Nos. 6, 55, and Interrogatory No. 9, are just and reasonable.

Similarly, defendants' responses and objections to Request 44, 45 and 46 are just and reasonable. Plaintiffs' seek [a]ll documents concerning Raphael Abrahante, Said [sic] Dogan, and Tommy Ziotas, including but not limited to their personnel files, performance records, warnings, and contemplated discipline or actual discipline. (See Aranyos Aff., Ex. C, Requests 44, 45, and 46.) Furthermore, plaintiffs' requests are not limited to the relevant Time Period. These documents have no relevance to plaintiffs' claims and are not reasonably likely to lead to the discovery of any admissible evidence. None of the individuals identified are plaintiffs' "employers" nor are they tipped employees. And, the information requested contains information that the Restaurant keeps confidential including but not limited to addresses, social security numbers, telephone numbers, payroll and tax information. Thus, plaintiffs' request to compel this information should be denied.

## C. Document Request No. 40 Is Premature, Seeking Post-Judgment Discovery, and Overbroad

Plaintiffs' Request No. 40 seeks "[a]ll documents concerning the assets, liabilities and net worth of each defendant, including <u>without limitation</u> (i) ownership of any real or personal property; (ii) appraisals of any real or personal property; (iii) bank and investment statements; (iv) mortgage records; or (v) insurance." (emphasis added). The sole purpose for

9

requesting this information is, as plaintiffs' claim, to "determine[] appropriate punitive damages." (See Galiano Decl., Ex. A.) Plaintiffs seek punitive damages only based on claims under New York law.

Plaintiffs' request for financial information for the purposes of punitive damages is premature and overbroad. Financial information is not discoverable until the jury "brings in a special verdict that the plaintiff is entitled to punitive damages." Davis v. Ross, 107 FRD 326, 327 (S.D.N.Y. 1985); see also Rubert v. Sellers, 48 A.D.2d 265, 272 (4th Dep't 1975) (on state law claims with punitive damages "it is not important for [plaintiff] to know defendant's wealth" until plaintiff "obtains a special verdict that he is entitled to punitive damages").

The cases cited by plaintiffs allowing discovery of a defendant's financial information are inapposite. Tillery v. Lynn, stands for the proposition that pre-trial discovery of a defendant's financial information to determine punitive damages are only appropriate when there is a bifurcated trial for liabilities and damages. 607 F. Supp. 399, 403 (S.D.N.Y. 1985); see also Hazeldine v. Beverage Media, Ltd., Docket No. 94-3466, 1997 WL 362229 at *3 (S.D.N.Y. June 27, 1997) (pre-trial discovery of financial information should be accompanied by a bifurcated trial). The reason that pretrial disclosure requires bifurcation is because it is "in the interests of justice and to avoid any undue prejudice during the liability phase." Tillery, 607 F. Supp at 403. Indeed, "'defendant's wealth should not be a weapon to be used by plaintiff to enable him to induce the jury the find the defendant [liable], thus entitling plaintiff to punitive damages.'" Id. (quoting Rupert, 48 A.D.2d at 272). But, because neither party here is seeking bifurcation (in fact, plaintiffs claim it should be denied) Request No. 40 is premature.

In addition to having bifurcated trials, Tillery also required pre-trial disclosure because delay would be "unduly burdensome" and be "inefficient and unfair." Tillery, 607 F. Supp. at 402.[6] Plaintiffs', aside from conclusory statements to the same effect, offer no explanation on how post-judgment discovery would be burdensome or unfair. Certainly this

---

[6] Defendants direct the Court to this pinpoint citation, which was erroneously cited in Plaintiffs' Brief. In addition, the "inefficient and unfair" language quoted in Plaintiffs' brief appears no where in Tillery.

10

Court, like other courts that have prohibited pretrial disclosure, would be able to resolve the punitive damages discovery, if necessary, in a timely manner. Doing so would ensure the defendants could maintain the privacy of their financial information until and if it becomes necessary. See Rupert, 48 A.D.2d at 273. It would result in a more efficient pretrial discovery that is not distracted by financial information that may become applicable post judgment. See id. Moreover, to avoid any prejudice or delay, if judgment is awarded against any of defendants on the claims where punitive damages apply, those defendants will be prepared to produce any financial information within the timeframe ordered by the Court.[7] Requiring production of financial information only after the judgment relieves defendants of a significant prejudice - disclosure of private financial information that may not be applicable at trial – and will pose little delay or burden on Plaintiffs. Furthermore, some individual defendants are incorrectly named as defendants and are not "employers" within the meaning of the FLSA or New York labor law and will be the subject of a motion for summary judgment. Thus, their information should not be produced.

Wade v. Sharinn & Lipshie, P.C., cited by plaintiffs, is not applicable to defendants' objection. Docket No. 07-2838, 2009 WL 37521 at *1 (E.D.N.Y. Jan. 7, 2009).[8] In that case, the defendant's only objection was that punitive damages were not permitted. Id. Defendant did not object on the basis that discovery was premature. Id.

Although defendants object to the disclosure at this stage, defendants attempted to compromise with plaintiffs' counsel at the January 27, 2010 meet-and-confer by offering to produce documents responsive to this request after a judgment had been entered. Plaintiffs' rejected this reasonable offer and did not tender any counter-offer or compromise in return.

---

[7] Courts that require disclosure of financial information to aid the jury in determining an appropriate amount for punitive damages have not required extensive discovery – and certainly not on the scale requested by plaintiffs. Hazeldine, 1997 WL 362229 at *4 Instead, because a defendant's net worth is only to serve as a "guide" in determining punitive damages, an affidavit from defendants as to their net worth is all that is necessary. Rupert, 48 A.D.2d at 272

[8] Defendants refer the Court to this citation to this case, which was erroneously cited in Plaintiffs' Brief.

If the Court later requires disclosure of defendants' financial information and net worth (whether pretrial or post-judgment), the information provided should be limited; plaintiffs' Request No. 40 is overbroad. When a defendant's net worth is presented to the jury to aid its determination of punitive damages, there is "no need for plaintiff to explore the "details" of the defendant's assets and liabilities." Hazeldine v. Beverage Media, Ltd., Docket No. 94-3466, 1997 WL 362229 (S.D.N.Y. June 27, 1997). See also Rupert, 48 A.D.2d at 272 ("the purpose of presenting to the jury the amount of defendant's wealth is only to furnish them a guide for suitable punishment"). Accordingly, "a mere statement of defendant's respective total net worth is sufficient." Rupert, 48 A.D.2d at 272. Indeed, in Hazeldine, the court rejected a plaintiff's discovery request with a scope similar to Request No. 40. In that case, plaintiff sought "three years of tax returns; information regarding real estate holdings, motor vehicles, investments, and bank and brokerage accounts; documents regarding personal loans; and, documents reflecting net worth …" 1997 WL 362229 at *1. Nevertheless, the Court recognized that the defendant's "legitimate privacy interests outweigh plaintiff's need for all the specific types of financial information requested." Id. Instead, the court required the defendant to produce an affidavit "in the form of a personal balance sheet listing [] assets and liabilities." Id. Accordingly, if this Court orders disclosure of defendants' net worth (whether pre- or post-judgment) an affidavit – and not production of documents and records – is sufficient. However, since Request 40 is premature the scope need not be addressed at this time.

### D. Defendants Have Produced Documents Sufficient to Prove The Restaurant's Revenues

Defendants should not be compelled to produce additional documents in response to Request Nos. 25 and 48. Plaintiffs' Document Request No. 25 seeks "[a]ny documents reflecting, referring, or relating to financial statements of Thalassa Restaurant during the Time Period, whether formal or informal, audited or unaudited, including but not limited to profit/loss statements, documents containing information revenues, balance sheets, and tax returns relating

12

to both income tax and sales tax." Plaintiffs' acknowledge that defendants produced the first page of Corporate Defendant's tax returns. However, plaintiffs contest the redactions of "gross profits" and Schedule K, which identifies the shareholders. While plaintiffs scoff at the production, a close look at those pages reveals that all of the responsive information is presented, and that a substantial amount of substantive information is provided by the Restaurant's financial performance from 2002. In addition, defendants have provided for inspection thousands of pages of documents including all of the Restaurant's receipts, which show the revenues of the Restaurant. Furthermore, the business records produced by defendants contain the documents necessary to calculate the damages sought in this case.

Second, plaintiffs' requested and defendants agreed to produce the corporate documents for Fiskardo Estiatorio, Inc. d/b/a Thalassa Restaurant, which identify the shareholder of the Corporate Defendant. (See Aranyos Aff., Ex. B, Request 31 and Response to Request 31.) Thus, Schedule K is duplicative and unnecessary discovery.

Finally, any information concerning tax reporting practices is beyond the scope of this action and is irrelevant. Plaintiffs' Request 48 seeks "[a]ll documents reflecting, referring, or relating to any investigations conducted by any governmental authority into the labor practices or tax reporting practices of any Defendant. This request is not limited to the Time Period." Plaintiffs' claim that this information is relevant to determine whether the "violations of the labor and employment laws in this action were willful, whether Defendants have a good faith defense to these violations, and as to the amount of damages if the tax return is improper." However, plaintiffs' arguments are unsound. Defendants have produced all relevant payroll documents, receipts, and banquet documents, so that the tax returns should not be considered the best

evidence to base calculation of damages on**.**  Thus, plaintiffs' motion to compel additional responses to Requests Nos. 25 and 48 should be denied.

## II

## PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES

Under Fed. R. Civ. P. 37(a)(5)(A),(iii) "[i]f the motion [to compel] is granted … the court must … require … the party or attorney advising that conduct, or both to pay movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if: the opposing party's nondisclosure was substantially justified." (Emphasis added.) An award of attorney's fees is not warranted here.  As set forth above, defendants' opposition to plaintiffs' motion is substantially justified; it is made in good faith, not for the purposes of delay, and is based on sound legal principles. Thus, an award of attorneys' fees is not justified here. "When the dispute involves differing interpretations of the governing law, opposition is substantially justified unless it involves unreasonable, frivolous or completely unsupportable reading of the law."  Comprehensive Habilitation Serv., Inc. v. Commerce Funding Corp., 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (internal citations omitted) (attorney's fees denied when party was substantially justified in its "argument as to relevance").  See also Barkley, 2007 WL 656250 at *8 (Court declined to issue sanctions when non-movant offered "non-frivolous support for their opposition to [the] discovery requests).  Unlike, the non-moving party in Vinyard v. Rite-Hite Corp, Docket No. 07-2829, 2010 WL 98994 (E.D.N.Y. Jan. 7, 2010), defendants have put forth valid and reasonable legal arguments to support their objections that plaintiffs are not entitled to the names of non-party employees and other identifiers.

## **CONCLUSION**

Accordingly, plaintiffs' motion to compel responses to document requests and to interrogatories should be denied.

Dated: New York, New York
February 15, 2010

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: ___/s/ Stephanie L. Aranyos_____
Stephanie L. Aranyos (SA-1657)
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700
Attorneys for Defendants Fiskardo Estiatorio, Inc.
d/b/a Thalassa Restaurant, Julia Makris, George Makris, Steve Makris