UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICARDO COPANTITLA, DIEGO DIAZ DE LA VEGA, IGNACIO GARCIA, FREDDY GUACHUN, JULIO LANTIGUA, MANUEL LIZANDRO, MARTIN LOPEZ, SEBASTIAN LOPEZ, AUGUSTIN MALDONADO, HENRY MATUTE, JOELITO MELENDEZ, AUSSENCIO RAMIREZ, and JOSE LUIS VARGAS,

    Plaintiffs,

-against-

FISKARDO ESTIATORIO, INC. d/b/a THALASSA RESTAURANT, GEORGE MAKRIS, JULIA MAKRIS, and STEVE MAKRIS,

    Defendants.

09 Civ No. 1608 (RJH) (JCF)

---

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCLOSURE

CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
(212) 848-4000

URBAN JUSTICE CENTER
123 William Street, 16th Floor
New York, New York 10038
(646) 602-5600

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................2

      A.    Defendants Should Be Compelled To Produce Relevant Information Protected By the Confidentiality Agreement ...............2

      B.    Discovery Relevant To Claims For Punitive Damages Should Proceed Immediately .............................................................8

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

### Cases

Collens v. City of New York, 222 F.R.D. 249 (S.D.N.Y. 2004) ...................................... 3

Davis v. Ross, 107 F.R.D. 326 (S.D.N.Y. 1985) ............................................................. 8

Hazeldine v. Beverage Media, Ltd., No. 94-cv-3466, 1997 WL 362229
    (S.D.N.Y. June 27, 1997) ........................................................................................ 8, 9

King v. Conde, 121 F.R.D. 180 (E.D.N.Y. 1988) ........................................................... 3

Martinez v. Robinson, 99-cv-11911, 2002 U.S. Dist. LEXIS 4454
    (S.D.N.Y. Mar. 19, 2002) ...................................................................................... 8, 9

Martinez v. Thompson, No. 9:04-cv-0440, 2007 WL 1017315
    (N.D.N.Y. Mar. 29, 2007) ......................................................................................... 3

Messa v. R.K. Woods, No. 9:07-cv-0306, 2008 WL 2433701
    (N.D.N.Y. June 12, 2008) ......................................................................................... 3

Rubert v. Sellers, 368 N.Y.S.2d 904 (4th Dep't 1975) ................................................... 8

Tillery v. Lynn, 607 F. Supp. 399 (S.D.N.Y. 1985) .................................................... 8, 9

### Statutes

42 U.S.C. § 1983 ............................................................................................................. 3

Fed. R. Civ. P. 37(a) ...................................................................................................... 1

N.Y. Labor Law Sec. 196-d .......................................................................................... 5

S.D.N.Y. Local Rule 26.3(c)(3) ..................................................................................... 7

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
### OF PLAINTIFFS' MOTION TO COMPEL DISCLOSURE

Plaintiffs Ricardo Copantitla, Diego Diaz de la Vega, Ignacio Garcia, Freddy Guachun, Julio Lantigua, Manuel Lizandro, Martin Lopez, Sebastian Lopez, Augustin Maldonado, Henry Matute, Joelito Melendez, Aussencio Ramirez, and Jose Luis Vargas (collectively, "Plaintiffs") respectfully submit this reply memorandum of law in further support of their motion to compel disclosure pursuant to Federal Rule of Civil Procedure 37(a).

### PRELIMINARY STATEMENT

Defendants' opposition fails to provide a justification for their continued and long standing refusal to respond to discovery requests -- calling for indisputably relevant information -- that were served in June 2009, eight months ago. Instead, Defendants allege for the first time in their opposition brief ("Def. Opp.") that they have a "safety concern" for restaurant employees that justifies their refusal to respond. While the evidence provided by Defendants suggests that one male employee may have felt "scared" when approached by female union organizers outside the restaurant,[1] Defendants have offered no evidence to support a justifiable concern that producing the requested information would pose a threat to *anyone's* safety or security. Defendants' purported reasons for withholding relevant information are meritless and merely an

---

[1]  See Affirmation of Stephanie L. Aranyos, Esq., in Opposition to Plaintiffs' Motion to Compel dated February 15, 2010, Exs. H-I.  However, for a complete record of Manuel Segundo's fanciful testimony before the National Labor Relations Board, see Declaration of David A. Colodny executed February 19, 2010 ("Colodny Decl."), Ex. 1, submitted herewith.

attempt to conceal the truth.  To the extent any legitimate privacy concerns exist, such concerns are protected by the Confidentiality Order that the parties spent months negotiating.

Defendants also continue to refuse to produce certain financial information on the grounds that it is premature.  Defendants' refusal is without any basis.  Defendants have made no request for bifurcation, and even if the trial in the action were bifurcated, it would not justify bifurcation of discovery.  The court should reject these arguments and compel Defendants to respond to the discovery requests now, so that further delay can be avoided. Finally, the court should order Defendants to pay Plaintiffs' expenses, including attorneys' fees, because Defendants' delay in responding to these discovery requests is egregious and inexcusable.

## ARGUMENT

**A.     Defendants Should Be Compelled To Produce Relevant Information Protected By the Confidentiality Agreement**

Defendants raise for the first time in their opposition brief that they "have legitimate safety concerns for the Restaurant employees that cannot be adequately protected by the Confidentiality Order."  Def. Opp. at 5.  Defendants never expressed this "safety" concern in their Responses and Objections dated October 8, 2009 and October 13, 2009, in their letter dated February 1, 2010, or in their Supplemental Responses and Objections dated February 2, 2010.  See, e.g., February 4, 2010 Galiano Decl. Exs. D-E.  Moreover, Defendants never raised their "safety" concerns at the meet-and-confer on January 27, 2010.[2]  At that time, Defendants instead

---

[2]   We note that David W. Field, counsel for Defendants, objected to producing the requested information during a teleconference with Judge Francis on January 21, 2010.  At that time, too, he never mentioned a purported concern for anyone's safety as a basis for refusing to produce clearly responsive and relevant information.

2

cited a supposed concern over "privacy suits" by unnamed third-parties -- a specious claim that they now appear to have abandoned. This newly minted "safety" concern is equally baseless and does not justify Defendants' refusal to produce relevant non-privileged information. Any purported "safety" concern asserted by Defendants is directed at representatives of ROC-NY who are not plaintiffs in this action. Def. Opp. at 6. There has been no allegation that there is a "safety" concern directed at any Plaintiff in this action.

Furthermore, the authorities cited by Defendants to support withholding information on the basis of a safety concern are factually distinguishable and wholly inapposite. Each of these cases addresses violations of 42 U.S.C. § 1983 and related discovery:

- Collens v. City of New York, 222 F.R.D. 249, 251 (S.D.N.Y. 2004), is a civil rights action alleging that New York City Police Department officers violated constitutional rights. The court determined that the plaintiff was not entitled to disclosure of the police officer's home address because the information was not relevant to the claims and because it was covered by the official information privilege, a qualified privilege that covers the disclosure of police investigation material and personnel files. Id. at 254-55.

- In Martinez v. Thompson, No. 9:04-cv-0440, 2007 WL 1017315, at *1 (N.D.N.Y. Mar. 29, 2007), a prison inmate commenced a civil rights action against various Department of Correctional Services employees arising from an alleged physical assault. The court determined that for "security reasons" the prison inmate would be permitted to inspect copies of photographs of corrections employees but would not be permitted to retain a copy of the photographs. Id. at *2. The court also agreed that the inmate should be provided with a redacted copy of the Inspector General's report on the incident "because of the serious security concerns regarding the release of the [report] to the plaintiff, who is *pro se*." Id. (internal quotation marks omitted).

- Messa v. R.K. Woods, No. 9:07-cv-0306, 2008 WL 2433701, at *1 (N.D.N.Y. June 12, 2008), involved claims by a prison inmate against the Superintendent of Upstate Correctional Facility based upon the use of excessive force. The court did not address any specific safety concern, finding instead that the defendants had not "offered any proof to substantiate any basis for withholding the documents from Plaintiff on this motion." Id. at *2. The court -- in a footnote -- simply stated the standard for asserting the official information privilege in the event "counsel . . . intends to assert safety or security as a basis for withholding discovery from a party." Id. at n.1. ("Defendants must make a 'substantial threshold showing' that there are 'specific harms likely to accrue from disclosure of specific materials.'") (citing King v. Conde, 121 F.R.D. 180, 189 (E.D.N.Y. 1988)). The court then ordered the defendants to produce all responsive documents within 30 days. Id.

3

Defendants' cases have absolutely no bearing on this motion. Plaintiffs in this case are current or former restaurant employees. They are not prison inmates, nor are they requesting any information that is covered by the official information privilege. This purported "safety concern" is just another delay tactic by Defendants to avoid producing relevant, non-privileged information. Even if Defendants were entitled to assert the official information privilege, they have utterly failed to demonstrate any "specific harm likely to accrue" from the production of unredacted, responsive documents that include employee names, positions, schedules, and tip amounts. Similarly, Defendants have failed to demonstrate that the Confidentiality Order cannot sufficiently protect the information sought in Document Request Nos. 6, 44, 46, 47, 55 and Interrogatory No. 9.[3]

As Plaintiffs explained more fully in their opening brief ("Pl. Mem."), Document Requests Nos. 6, 44, 46, 47, and 55 and Interrogatory No. 9 are directly relevant to Plaintiffs' claims for violations of federal, state and local employment laws. Pl. Mem. at 7-8. Defendants' assertion that they have produced "all relevant information" is flatly untrue, Def. Opp. at 8, because Defendants' redactions of significant information from produced documents deprives Plaintiffs of several categories of information directly relevant to their claims:

---

[3] Defendants have suggested that Plaintiffs violated the Confidentiality Order by filing documents marked CONFIDENTIAL with the Court. Def. Opp. at 7-8. That is simply untrue. The Order permits the parties to disclose Confidential Information to the Court. Moreover, Paragraph 12 of the Confidentiality Order provides: "Each party shall reserve the right to request the Court to have any pleadings, motions, or other papers filed with the Court disclosing any Confidential Information to be filed under seal and kept under seal until further order of the Court." Galiano Decl. Ex. C. As Defendants have not requested that the motion be filed under seal, Plaintiffs have in no way violated the Confidentiality Order; the statement that "plaintiffs cannot be trusted to protect the identity of Restaurant employees" is unfounded. Def. Opp. at 8.

4

- *Tip Pool Schedules*:  The non-party employee names and identifying information is relevant because Plaintiffs are alleging that certain categories of employees received money from the tip pool who should not have received it.  In order to determine how much tip money was improperly diverted, it is necessary to determine which employees received tips, how much they received, and what positions they held in the Restaurant.  Defendants, in documents produced thus far, have redacted information showing the names of the employees who received tips from both *a la carte* service and banquets.[4]  Without the names that have been redacted, both Plaintiffs and the Court will ultimately be left to guess who received tips and whether it was legal for the Restaurant to distribute the wait-staff's tips to such persons.[5]  See, e.g., Colodny Decl., Ex. 2 (showing only tips distributed to Plaintiff Henry Matute and deleting all other names of persons who received tips), Ex. 3 (Defendants redacted the names of persons who received tips, the positions of such persons, and the amount of tips that they received -- all information critical to establishing both Defendants' legal violations and the damages flowing).

- *Employee Time Card and Job Detail Reports*:  As discussed more fully in Plaintiffs' opening brief, the production of employee time cards is relevant to determining which individual employees were required to "clock in" and whether Defendants paid employees for less time than actually worked.  The redactions on these time reports make it impossible to determine which employees clocked in and if Defendants paid Plaintiffs for the actual hours they worked.  See, e.g., Colodny Decl. Ex. 4 (showing employee time records for the period from January 15, 2007 to January 21, 2007).

---

[4]  Plaintiffs note that Defendants' opposition mischaracterizes the categories of damages that Plaintiffs seek, and is misleading on a critical point.  Plaintiffs seek damages for tips that were wrongfully diverted from both banquet and *a la carte* service and allege that the Restaurant required the wait-staff (and other employees) to participate in a tip pool that included persons who did not directly serve customers.  Plaintiffs seek damages for violations stemming from those improper practices.

[5]  Although some of the documents show workers by category (e.g., busboys, runners, etc.), not all documents contain such information.  Moreover, simply knowing the categories of workers is not adequate.  For example, the Restaurant categorized persons who polish glasses and silverware as "busboys" and included them in the tip pool.  Although called "busboys," the Restaurant violated state and federal law by requiring the wait-staff to share their tips with the polishers.  Without knowing the names of the employees within the busboy category, we cannot know how much money was given to polishers.  That information is critical to demonstrating violations of N.Y. Labor Law Sec. 196-d (stolen gratuities) and both federal and state minimum wage laws (which prohibit the restaurant from taking a tip credit if the workers do not receive all of their tips).

- *Payroll Register*: These payroll documents are necessary for comparing the Plaintiffs' time cards to payroll records to ensure that Plaintiffs were paid for the hours actually worked. Defendants' redactions have rendered these documents entirely incomprehensible. For example, the Payroll Register purportedly covering January 19, 2007 is entirely redacted, but the time records for that period show that at least Plaintiffs Matute, Lopez, Melendez, and Lizondro worked on January 19, 2007. Compare Colodny Decl. Ex. 5 (payroll register) to Ex. 4 (time records). The Plaintiffs need these documents in their entirety to determine whether the Plaintiffs were properly paid.

- *Payroll from Paychex, Inc*.: Similar to the payroll register, Plaintiffs need these documents for the purpose of comparing hours worked with hours paid. Additionally, these documents are essential to determining which employees were receiving tips, how much overtime was paid, and what deductions (i.e. meals and uniforms) were taken from Plaintiffs' pay. See, e.g., Colodny Decl. Ex. 6.[6]

- *Internal Payroll Schedules*: These documents are necessary for comparing cash tips, charged tips and banquet tips among employees in the tip pool and determining who was included in the tip pool as well as determining any deductions from Plaintiffs' paychecks. See, e.g., Colodny Decl. Ex. 7.

All of these documents must be produced to Plaintiffs in their entirety as Defendants have no justifiable excuse for redacting this nonprivileged information.

With respect to Document Request Nos. 44, 45 and 46, which seek documents concerning Raphael Abrahante, Said Dogan, and Tommy Ziotas (all members of the Restaurant's management team), Defendants claim that "[n]one of the individuals identified are plaintiffs' 'employers' nor are they tipped employees." Def. Opp. at 9. But Plaintiffs need this information precisely in order to determine whether this representation by Defendants is correct; Defendants are not entitled to assume the truth of their legal position and then improperly withhold information on the basis of that untested position. Plaintiffs believe that Mr. Dogan, a former manager, improperly received tips, and it is certainly possible that others did too. Plaintiffs

---

[6] Plaintiffs would have provided the court with an example covering the same week in January 2007 as Exs. 4 and 5, except no such document could be located in Defendants' production.

should not have to take Defendants' word for it. As these Requests are relevant to claims of existing Plaintiffs, the baseless assertion by Defendants that Plaintiffs seek this information to gather additional plaintiffs is unfounded. Def. Opp. at 9. Moreover, the deadline to amend the complaint and add additional plaintiffs was January 8, 2010 and has long since passed.

Finally, Defendants' offer that "[t]o the extent that some payroll information was produced with additional redactions, defendants will unredact those documents (except identifying information) upon receipt of a written request from plaintiffs' counsel identifying those bate stamp numbers," Def. Opp. at 8 n.5, is absurd. It is impractical for Plaintiffs to "identify those bates stamp numbers" when almost every page of their production was improperly redacted. Defendants unilaterally made improper redactions and refused to produce unredacted copies when requested; it is *Defendants'* obligation to correct these deficiencies and produce all relevant non-privileged information.[7]

Accordingly, the court should compel Defendants to respond to Document Request Nos. 6, 44, 46, 47, and 55 and Interrogatory No. 9.[8]

---

[7] In fact, Plaintiffs explicitly told Defendants before they produced any documents that Plaintiffs did not think redactions were appropriate, and that Plaintiffs were willing to discuss the scope of redaction decisions before Defendants made any such redactions. Plaintiffs further said that if Defendants unilaterally redacted, and did so improperly, then Plaintiffs would insist that the documents be re-produced without the improper redactions. Defendants completely ignored this invitation to confer, and unilaterally made improper redactions. They cannot now shift the cost to Plaintiffs to correct their own mistakes. Colodny Decl. ¶¶ 2-3, Ex. 4.

[8] Plaintiffs believe almost all of the types of documents discussed herein are responsive to Document Request No. 6. They are also responsive to other requests; however, Defendants lumped all documents together without specifying the requests to which they were responsive. Redactions were made across the board. Defendants also did not comply with S.D.N.Y. Local Rule 26.3(c)(3) by failing to provide, in all Interrogatory Responses,

(Cont'd on following page)

**B.      Discovery Relevant To Claims For Punitive Damages
Should Proceed Immediately**

Document Request No. 40 is not premature. "[T]he possibility that some portion of the case may be bifurcated for trial, or the fact that there may be more than one trial, does not adequately support [the defendants'] request to stay discovery." Martinez v. Robinson, 99-cv-11911, 2002 U.S. Dist. LEXIS 4454, at *8 (S.D.N.Y. Mar. 19, 2002) (Francis, U.S.M.J.) (citation omitted). Discovery as to the Defendants' net worth, relevant to Plaintiffs' claims for punitive damages, should proceed now even if the Court ultimately determines that bifurcation of the trial is appropriate.

Defendants' argument in reliance on Davis v. Ross, 107 F.R.D. 326, 327 (S.D.N.Y. 1985) and Rubert v. Sellers, 368 N.Y.S.2d 904, 912 (4th Dep't 1975), that "[f]inancial information is not discoverable until the jury 'brings in a special verdict that the plaintiff is entitled to punitive damages,'" Def. Opp. at 10, is not persuasive in light of Hazeldine v. Beverage Media, Ltd., which Defendants also cite in their opposition. In Hazeldine, No. 94-cv-3466, 1997 WL 362229, at *3 (S.D.N.Y. June 27, 1997), the court acknowledged that there was tension between (a) Tillery v. Lynn, 607 F. Supp. 399, 402-403 (S.D.N.Y. 1985), where the court bifurcated the trial but allowed pretrial financial discovery to proceed, and (b) Davis, where the court denied the plaintiff's request for pretrial financial discovery. Ultimately, the court

---

(Cont'd from preceding page)

appropriate information required by the rule to identify persons. An Order by the Court requiring Defendants' fully respond to Interrogatory No. 9 would cure numerous other inadequate Interrogatory Responses.

8

followed Tillery, determining that "pre-trial financial discovery and a bifurcated trial is the more efficient method of managing a trial involving a punitive damages claim." Id. at *3.[9]

Moreover, post-trial discovery of financial information would be "unduly burdensome" and "inefficient and unfair" to Plaintiffs.[10] Although Defendants' claim that post-trial discovery would enable the court to "resolve the punitive damages discovery, if necessary, in a timely manner," Def. Opp. at 11, Defendants' discovery practices in this case to date clearly suggest the contrary. Plaintiffs issued their First Request for the Production of Documents and First Set of Interrogatories to Defendants on June 26, 2009. Plaintiffs have been waiting nearly eight months for the production of relevant, non-privileged documents. The discovery deadline, initially set to expire on November 2, 2009, was extended until February 26, 2010 by Judge Holwell. As the parties still have numerous discovery disputes outstanding, including this motion, discovery will need to be extended further. In light of Defendants' recurring inability to comply with discovery demands in a timely manner, it will be "unduly burdensome" and "inefficient and unfair" to Plaintiffs to delay the discovery of this information even further. Therefore, the Court should compel the production of documents related to Request No. 40.

---

[9] The Hazeldine court also held that "since defendants' legitimate privacy interests can be protected with a confidentiality order, I conclude that pre-trial financial discovery should proceed." Id. at *3.

[10] Defendants claim that Plaintiffs erroneously attributed the "inefficient and unfair" language cited in their opening brief to Tillery, when the language quoted does not appear in that case. Def. Opp. at 10 n.6. As Plaintiffs' citation to the sentence includes both a citation to Tillery and to Martinez -- where the "inefficient and unfair" language is cited -- the suggestion that Plaintiffs misrepresented the language of the authorities cited is groundless. Pl. Mem. at 10.

**CONCLUSION**

For all the foregoing reasons, the Court should grant Plaintiffs' motion to compel disclosure, including the production of all documents that were previously improperly redacted, require Defendants to pay Plaintiffs' reasonable expenses, including attorneys' fees, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

URBAN JUSTICE CENTER
By   /s/ David A. Colodny
         David A. Colodny  (DC-4234)
         dcolodny@urbanjustice.org
     123 William Street, 16th Floor
     New York, New York  10038
     Telephone:  (646) 602-5600
     Facsimile:  (212) 533-4598


CHADBOURNE & PARKE LLP
Marc D. Ashley
mashley@chadbourne.com
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369

SHEARMAN & STERLING LLP
Daniel C. Lewis
daniel.lewis@shearman.com
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179

*Attorneys for Plaintiffs*