UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
RICARDO COPANTITLA, DIEGO DIAZ   : 09 Civ. 1608 (RJH) (JCF)
LA VEGA, IGNACIO GARCIA, FREDDY  :
GUACHUN, JULIO LANTIGUA, MANUEL  :
LIZANDRO, MARTIN LOPEZ, SEBASTIAN :   MEMORANDUM
LOPEZ, AUGUSTIN MALDONADO, HENRY  :   AND  ORDER
MATUTE, JOELITO MELENDEZ,        :
AUSSENCIO RAMIREZ, and JOSE LUIS  :
VARGAS,                          :
              Plaintiffs,        :
                                 :
     - against -                 :
                                 :
FISKARDO ESTIATORIO, INC. d/b/a  :
THALASSA RESTAURANT, GEORGE MAKRIS,:
JULIA MAKRIS, and STEVE MAKRIS,  :
                                 :
              Defendants.        :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Ricardo Copantitla, Diego Diaz De La Vega, Ignacio Garcia, Freddy Guachun, Julio Lantigua, Manuel Lizandro, Martin Lopez, Sebastian Lopez, Augustin Maldonado, Henry Matute, Joelito Melendez, Aussencio Ramirez, and Jose Luis Vargas bring this action against Fiskardo Estiatorio, Inc. ("Fiskardo") d/b/a Thalassa Restaurant ("Thalassa"), George Makris, Julia Makris, and Steve Makris.  The plaintiffs, who are current and former employees at Thalassa, seek damages and injunctive relief under the Fair Labor Standards Act (the "FLSA"), New York Labor Law ("NYLL"), New York State statutory and common law, and New York City law for alleged violations arising out of their employment.

The plaintiffs now move pursuant to Rules 15(a) and 20(a) of the Federal Rules of Civil Procedure for leave to file a Second Amended Complaint.  They seek to add Fantis Foods, Inc. ("Fantis

1

Foods") as a defendant.  They also wish to include additional allegations concerning the defendants' violations of a specific section of the NYLL as well as language regarding the defendants' status as employers within the meaning of the New York State Human Rights Law and the New York City Administrative Code.  The plaintiffs also move pursuant to Rule 37(a) of the Federal Rules of Civil Procedure for an order compelling discovery from the defendants.  Specifically, they seek information regarding non-party employees, including those they believe may be managers; financial information from the defendants in order to determine damages; and information regarding governmental investigations into Thalassa's labor practices or tax-reporting practices.  Finally, the defendants move pursuant to Rule 45(c)(3) of the Federal Rules of Civil Procedure to quash subpoenas that were served on two non-parties, Fantis Foods and Fantis Transfer Corp. Inc. ("Fantis Transfer").

For the reasons set forth below, the plaintiffs' motion to amend is granted and their motion to compel is granted in part and denied in part.  The defendants' motion to quash is granted in part and denied in part.

Background

    A.   Facts

Fiskardo is a New York Corporation that has operated as Thalassa, a restaurant located in Manhattan.  (Amended Complaint ("FAC"), ¶¶ 20, 22-23).  According to the plaintiffs, Julia Makris has been Chairman or Chief Executive Officer of Thalassa (FAC, ¶

25), and George and Steve Makris have been owners of the restaurant. (FAC, ¶¶ 24, 26). For various time periods from January 2002 through the present, the plaintiffs have worked at the restaurant as dishwashers, busboys, polishers, runners, barbacks, servers, and expediters. (FAC, ¶¶ 7-19, 32).

In their first Amended Complaint, the plaintiffs allege that the defendants did not properly compensate them, in violation of both federal and state law. (FAC, ¶ 43). They contend, among other things, that they were paid below the minimum wage, were not paid for some of the hours they worked, and were not properly compensated when they worked overtime. (FAC, ¶¶ 46-50, 54). The plaintiffs also allege that the defendants did not allow employees to receive gratuities intended for them. They report that the defendants kept for themselves one quarter of Thalassa's required twenty-percent gratuity for banquets and pre-planned parties (the "Service Fee"). (FAC, ¶¶ 73-83). The plaintiffs also contend that Thalassa's management insisted that wait-staff pool their tips and that the managers then distributed the proceeds to restaurant personnel, including managers and polishers, who are not eligible for these tips under the FLSA and NYLL. (FAC, ¶¶ 84-91). Furthermore, the plaintiffs complain that the defendants deducted the cost of their required uniforms from their paychecks and refused to reimburse them for the costs of cleaning and maintaining the uniforms. (FAC, ¶¶ 92-100).

In addition, the plaintiffs claim that the defendants retaliated against them when they complained about labor law

violations.  (FAC, ¶¶ 101-103).  The alleged retaliation consisted of intimations that they would lose their jobs if they continued to complain, threats of physical harm, a drastic reduction of their hours of work, the termination of Mr. De La Vega, Mr. Garcia, and Mr. Lantigua, and the constructive discharge of Mr. Lizandro and subsequent interference with his ability to obtain a new job. (FAC, ¶¶ 104-110).

The plaintiffs further contend that on October 2, 2008, the day after one of them tried to deliver a letter to the defendants notifying them of violations of federal and state labor laws, Mr. Vargas was interrogated in the restaurant's basement office by Steve Makris and "other agents of Defendants" "about the contents of the letter and the names of the workers who had registered complaints." (FAC, ¶¶ 111-115).  They claim that two people in the office identified themselves as police officers and displayed badges.  (FAC, ¶ 116).  According to the plaintiffs, Steve Makris then summoned bona fide police officers to arrest Mr. Vargas, and although the police responded, they did not make an arrest.  (FAC, ¶ 118).

Lastly, Mr. Diaz De La Vega and Mr. Melendez claim that they "were subjected to repeated and severe sexual harassment" by Kemal Kurt, one of Thalassa's managers.  (FAC, ¶¶ 120-123).  Mr. Diaz De La Vega alleges that he was fired from the restaurant as a result of his refusal "to engage in sexual acts" with Mr. Kurt, and Mr. Melendez states that he resigned from his position because Mr. Kurt repeatedly touched him in a sexually provocative manner.  (FAC, ¶¶

4

122-123).

    B.   Procedural History

    The Complaint in this action was filed on February 20, 2009.
On September 16, 2009, the plaintiffs filed an Amended Complaint
that added Mr. Guachun and Mr. Ramirez as plaintiffs.  On November
4, 2009, the Honorable Richard J. Holwell, U.S.D.J., set January 8,
2010 as a final deadline for the joinder of parties or amendment of
pleadings.[1]  (Memorandum Endorsement dated Nov. 4, 2009).    On
December 7, 2009, the plaintiffs served document and deposition
subpoenas on Fantis Foods and Fantis Transfer.    After the
defendants moved to quash these subpoenas, the plaintiffs moved for
leave to file a Second Amended Complaint on January 8, 2010.  And,
finally, on February 4, 2010, the plaintiffs filed a motion to
compel certain discovery from the defendants.  On March 25, 2010,
I heard oral argument on these three motions.

Discussion

    A.   The Motion to Amend

    In their proposed Second Amended Complaint, the plaintiffs
name Fantis Foods as an additional defendant.  They also insert
language alleging that all of the defendants are employers within
the meaning of the New York State Human Rights Law and the New York
City Administrative Code (the "Status Language").  (Second Amended
Complaint ("SAC"), ¶¶ 29-33).  This language is added to their
previous assertion in their Amended Complaint that the defendants

_____

        [1] The plaintiff's letter that Judge Holwell endorsed lists the
date as January 8, 2009, which is clearly a typographical error.

were employers under the FLSA and the NYLL.  (FAC, ¶¶ 27-30).  The plaintiffs contend that they added this language in order to "further clarif[y] that Plaintiffs intend to hold all Defendants liable for the sexual harassment claims, though that point should already be clear in the First Amended Complaint."  (Memorandum of Law in Support of Plaintiffs' Motion for Leave of Court to File Plaintiffs' Second Amended Complaint ("Pl. Amend. Memo.") at 3).

Furthermore, the plaintiffs seek to include additional allegations concerning the defendants' violations of NYLL § 196-d (the "§ 196-d Allegations").  The First Amended Complaint alleges that "Thalassa Restaurant's owners regularly demanded and retained approximately one quarter" of the Service Fee in violation of § 196-d.  (FAC, ¶¶ 73-74, 83, 164).  The Second Amended Complaint broadens this accusation, by alleging that all of the defendants "regularly demanded and retained a significant portion" of the Service Fee and "failed to distribute significant portions" of the Service Fee to the waitstaff.  (SAC, ¶ 87).  It also asserts that in addition to retaining one quarter of the Service Fee, the defendants sometimes used other portions of the Service Fee to pay restaurant expenses, including employees' wages and compensation owed to the "banquet manager."  (SAC, ¶¶ 88-89).  The defendants oppose each of the changes, and Fantis Foods filed a separate response, arguing that it should not be joined in the action.

<u>          </u>1.   <u>Standard for Amendment</u>

A motion to amend is generally governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that "[t]he court

should freely give leave when justice so requires." Fed. R. Civ.
P. 15(a)(2).  Notwithstanding the liberality of the general rule,
"it is within the sound discretion of the court whether to grant
leave to amend."  <u>John Hancock Mutual Life Insurance Co. v.</u>
<u>Amerford International Corp.</u>, 22 F.3d 458, 462 (2d Cir. 1994);
<u>accord</u> <u>Krumme v. WestPoint Stevens Inc.</u>, 143 F.3d 71, 88 (2d Cir.
1998).  Regarding the use of this discretion, the Supreme Court has
stated:

> In the absence of any apparent or declared reason -- such
> as undue delay, bad faith or dilatory motive on the part
> of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment,
> futility of amendment, etc. -- the leave should . . . be
> freely given.

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (internal quotation marks
omitted).

Where, as here, a proposed amendment adds new parties, the
propriety of amendment is governed by Rule 21 of the Federal Rules
of Civil Procedure.  <u>Momentum Luggage & Leisure Bags v. Jansport,</u>
<u>Inc.</u>, No. 00 Civ. 7909, 2001 WL 58000, at *1 (S.D.N.Y. Jan. 23,
2001).  That rule states that a party may be added to an action "at
any time, on just terms."  Fed. R. Civ. P. 21.  In deciding whether
to permit joinder, courts apply the "same standard of liberality
afforded to motions to amend pleadings under Rule 15."  <u>Soler v. G</u>
<u>& U, Inc.</u>, 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (quoting <u>Fair Housing</u>
<u>Development Fund Corp. v. Burke</u>, 55 F.R.D. 414, 419 (E.D.N.Y.
1972)); <u>accord</u> <u>Smith v. P.O. Canine Dog Chas</u>, No. 02 Civ. 6240,
2004 WL 2202564, at *12 n.11 (S.D.N.Y. Sept. 28, 2004); <u>Momentum</u>

Luggage, 2001 WL 58000, at *2; Clarke v. Fonix Corp., No. 98 Civ.
6116, 1999 WL 105031, at *6 (S.D.N.Y. March 1, 1999).  Thus,
joinder will be permitted absent undue delay, bad faith, prejudice,
or futility.  Joinder may be denied as futile if the proposed
pleading would not withstand a motion to dismiss pursuant to Rule
12(b)(6).  See Oneida Indian Nation of New York v. City of Sherill,
337 F.3d 139, 168 (2d Cir. 2003), rev'd on other grounds, 544 U.S.
197 (2005); Smith v. CPC International, Inc., 104 F. Supp. 2d 272,
274 (S.D.N.Y. 2000).  To overcome objections of futility, the
moving party must merely show that it has "at least colorable
grounds for relief."  Ryder Energy Distribution Corp. v. Merrill
Lynch Commodities Inc., 748 F.2d 774, 783 (2d Cir. 1984) (citation
omitted); see also Kaster v. Modification Systems, Inc., 731 F.2d
1014, 1018 (2d Cir. 1984).

      2.  _Fantis Foods_

In the Second Amended Complaint, the plaintiffs allege that
Fantis Foods, a company located in Carlstadt, New Jersey, is wholly
owned by members of the Makris family, including George Makris and
Steve Makris.  (SAC, ¶¶ 28, 137).  They assert that at least during
some of the time period of which the plaintiffs complain, George
Makris was Chairman or Chief Executive Officer of Fantis Foods.
(SAC, ¶ 138).  They also claim that during that time, Steve Makris
was not an employee of Fiskardo and received no salary from
Fiskardo, but rather was Chief Operating Officer of Fantis Foods,
and in that capacity, "had significant authority over the terms and
conditions of the Plaintiffs' employment, including the power to

set wages, hire and fire." (SAC, ¶¶ 139-140).

Further, the plaintiffs allege that Tommy Ziotas, a corporate officer of Fiskardo, also worked for Fantis Foods as General Manager and was the person primarily responsible for managing Thalassa's payroll. (SAC, ¶¶ 141-144). They assert that during part of the time that Mr. Ziotas helped to manage Thalassa's payroll, he was employed only by Fantis Foods and not by Fiskardo. (SAC, ¶ 142). The plaintiffs contend that some of Thalassa's payroll documents "were routinely sent to the Fantis offices" in New Jersey, and that Mr. Ziotas and Fantis Foods "regularly had custody and control over most or all of" the payroll documents. (SAC, ¶¶ 143-144). Finally, the plaintiffs claim that some of the payroll documents issued to them during their employment at Thalassa identified "Fantis" under a heading titled "co." (SAC, ¶ 145).

Based on these assertions, the plaintiffs allege that Fantis Foods was the plaintiffs' employer within the meaning of the FLSA, the NYLL, the New York State Human Rights Law, and the New York City Administrative Code. (SAC, ¶ 33). They claim that Fantis Foods "through its agents, had sufficient authority over the Plaintiffs' employment at Thalassa Restaurant as to render it an employer, and subject it to joint and several liability for the labor law violations." (SAC, ¶¶ 33, 146).

The defendants and Fantis Foods oppose this amendment on the basis of futility. Fantis Foods states that the plaintiffs' motion is "based solely on a misstatement of facts." (Proposed Defendant

9

Fantis Foods, Inc.'s Brief in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint ("Fantis Response") at 1). In support of this contention, Fantis Foods submitted affidavits from Mr. Ziotas and Jerry Makris, the Vice President of Fantis Foods, stating that "Fantis does not manage Thalassa's payroll" and that "Fantis has never been in the business of operating a restaurant." (Affidavit of Tommy Zibtas dated Jan. 22, 2010, ¶ 6; Affidavit of Jerry G. Makris dated Jan. 22, 2010, ¶ 13).

Because Fantis Foods currently is not a party to this action, its standing to contest the plaintiffs' motion "is, at best, dubious." Vasquez v. Summit Women's Center, Inc., No. 301 CV 955, 2001 WL 34150397, at *1 n.1 (D. Conn. Nov. 16, 2001); accord State Farm Mutual Automobile Insurance Co. v. CPT Medical Services, P.C., 246 F.R.D. 143, 146 n.1 (E.D.N.Y. 2007) (non-parties proposed as new defendants lack standing to challenge motion to amend). However, the defendants, who obviously have standing, also rely on the affidavits of Mr. Ziotas and Jerry Makris in their response to the plaintiffs' motion.

Nevertheless, I decline to consider these affidavits. Because determinations of futility on a motion for leave to amend are subject to the same standards as motions under Rule 12(b)(6), "[f]utility is generally adjudicated without resort to any outside evidence." Wingate v. Gives, No. 05 Civ. 1872, 2009 WL 424359, at *5 (S.D.N.Y. Feb. 13, 2009) (citing Nettis v. Levitt, 241 F.3d 186, 194 n.4 (2d Cir. 2001) ("Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to

dismiss.")); accord Cecilio v. Kang, No. 02 Civ. 10010, 2004 WL 2035336, at *17 (S.D.N.Y. Sept. 14, 2004) ("Normally, a motion for leave to amend is adjudicated without resort to any outside evidence."); Dipace v. Goord, 308 F. Supp. 2d 274, 278 (S.D.N.Y. 2004) (same); Durabla Manufacturing Co. v. Goodyear Tire and Rubber Co., 992 F. Supp. 657, 661 n.4 (S.D.N.Y. 1998) ("The Court declines to consider the deposition testimony submitted by defendants in opposition to plaintiff's motion for leave to amend the Complaint."). Accordingly, a decision regarding whether the inclusion of Fantis Foods as a defendant is futile must be based solely on the allegations in the Second Amended Complaint, with all inferences drawn in favor of the plaintiffs. See Neshewat v. Salem, 365 F. Supp. 2d 508, 516 (S.D.N.Y. 2005).

The FLSA defines an employer as one who "suffers or permits" an employee to work. 29 U.S.C. § 203(g). "This definition is necessarily a broad one, in accordance with the remedial purpose of the FLSA." Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003). "An entity 'suffers or permits' an individual to work if, as a matter of 'economic reality,' the entity functions as the individual's employer." Id. (citing Goldberg v. Whitaker House Cooperative, Inc., 366 U.S. 28, 33 (1961)). "The regulations promulgated under the FLSA expressly recognize that a worker may be employed by more than one entity at the same time." Id. (citing 29 C.F.R. § 791.2).

To determine if an entity is, as a functional matter, a joint employer for the purposes of the FLSA, "[t]he Second Circuit has

declined to circumscribe [a court's] analysis to a precise set of factors, recognizing up to ten common factors while noting that a district court is 'free to consider any other factors it deems relevant to its assessment of the economic realities.'"  Lin v. Great Rose Fashion, Inc., No. 08 CV 4778, 2009 WL 1544749, at *12 (E.D.N.Y. June 3, 2009) (quoting Zheng, 355 F.3d at 71-72); accord Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999) ("[A]ny relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition.").  The goal of the economic-realities test "is to determine whether the employees in question are economically dependent upon the putative employer."  Lopez v. Silverman, 14 F. Supp. 2d 405, 414 (S.D.N.Y. 1998).

The circuit has noted that in deciding whether an entity is a joint employer, "different sets of relevant factors" apply "based on the factual challenges posed by particular cases."  Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 142 (2d Cir. 2008).  Some of the factors that the Zheng Court found important for consideration -- for example, "the extent to which plaintiffs performed a discrete line-job that was integral to [the putative joint employer's] process of production," 355 F.3d at 72 -- were specific to the nature of the job at issue in that case, garment manufacturing.  However, other Zheng factors are useful in this case, including: (1) whether the putative joint employer's premises and equipment were used for the plaintiffs' work; (2) the degree to which putative joint employer or its agents supervised

the plaintiffs' work; and (3) whether the plaintiffs worked exclusively or predominantly for the putative joint employer.  Id. at 72; Barfield, 537 F.3d at 138 n.4.

The plaintiffs rely on Lin in support of the contention that Fantis Foods is a joint employer here because it is "significantly entwined with" Thalassa.  (Omnibus Reply in Support of Motion for Leave to File a Second Amended Complaint ("Pl. Amend. Reply") at 4).  In Lin, which involved the working conditions at a garment factory, the defendants moved to dismiss on the basis that the plaintiffs lacked standing pursuant to the FLSA.  2009 WL 1544749, at *11.  The court denied the motion, holding, among other things, that "[d]iscovery [was] needed to determine whether a functional employment relationship existed between the Plaintiffs and Great Wall [(one of the defendants)] under the Zheng factors."  Id. at *15.  The court explained that "[n]early every aspect of [the two businesses at issue] was intertwined" and found that "Defendants' dubious uses of the corporate form and the interlocking relationships between the Defendant Corporations are pertinent to the joint employer inquiry in this case."  Id. at *16.  The court pointed out that (1) evidence had already established that the purported agents of Great Wall supervised the plaintiffs' work in the factory; (2) "[t]he ownership of the premises and the equipment used in the Factory could be imputed to Great Wall, given the tangled leasing relationships" at issue and "the fact that the Factory's space was distinguished from Great Wall's space by nothing more than a pile of paper boxes;" and (3) garments

manufactured in the factory were made exclusively for Great Wall. Id. at *15.

While the facts alleged in this case may not support joint employer status as strongly as those in Lin, the plaintiffs have pled enough to survive a motion to dismiss.  Most compellingly, they have asserted that Steve Makris, while receiving a salary solely from Fantis Foods, supervised the plaintiffs and had the power to set their wages as well as hire and fire them.  (SAC, ¶¶ 139-140).  Likewise, they claim that Mr. Ziotas, the primary person responsible for managing Thalassa's payroll, was also at some point only employed by Fantis Foods, not Fiskardo.  (SAC, ¶¶ 141-142).  Finally, they allege that Fantis Foods often had custody and control over Thalassa's payroll documents and that some of the payroll documents provided to them listed "Fantis" under the heading of "company."  (SAC, ¶¶ 143-145).  None of these factors is dispositive, but taken together, they provide enough for the plaintiffs to establish Fantis Foods' joint employer status for the purposes of a motion to amend.  Although -- in their response papers and at oral argument -- the defendants and Fantis Foods vigorously objected to the plaintiffs' characterization of the facts, the appropriate time for such objections is in a motion for summary judgment, when the plaintiffs have had an opportunity for discovery.

### 3.   The § 196-d Allegations and the Status Language

The plaintiffs also seek to add language that claims that all of the defendants are employers under the New York State Human

Rights Law and the New York City Administrative Code (the Status Language) as well as additional allegations under § 196-d that the defendants, on occasion, used portions of the Service Fee to pay restaurant expenses, including employees' wages and the banquet manager's compensation (the § 196-d Allegations).

The defendants contest these changes. They argue that the plaintiffs' request has been unduly delayed because when they filed the Complaint or Amended Complaint, the plaintiffs "knew or should have known" to include the Status Language and also should have been aware of the facts upon which the § 196-d Allegations are based. (Defendants' Brief in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint ("Def. Amend. Response") at 10). They further claim that the plaintiffs have failed to provide a reason for their delay. (Def. Amend. Response at 10). In opposing the plaintiffs' desire to add the Status Language, the defendants insist that "[h]aving made a strategic decision not to include that language, plaintiffs should not be allowed to do so now." (Def. Amend. Response at 10).

The plaintiffs' request, however, comes within the deadline set by Judge Holwell for the amendment of pleadings. Moreover, delay, absent bad faith or prejudice, is not a sufficient basis for denying leave to amend. See Parker v. Columbia Pictures Industries, 204 F.3d 326, 339 (2d Cir. 2000); Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993); Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987); Lawrence v. Starbucks Corp., No. 08 Civ. 3734, 2009 WL

15

4794247, at *3 (S.D.N.Y. Dec. 10, 2009); <u>In re Horizon Cruises Litigation</u>, 101 F. Supp. 2d 204, 215 (S.D.N.Y. 2000).  The defendants do not assert that they are prejudiced by these proposed amendments.  And, in light the modest scope of the additions,[2] there is no reason to believe that they would be.

In addition, the defendants have failed to show bad faith.  While they deem the plaintiffs' decision not to include the Status Language "strategic," it is difficult to imagine why such a decision would be tactical.  Instead, it is more likely that the omission of this language was an oversight.  <u>See</u> <u>Larkins v. Selsky</u>, No. 04 Civ. 5900, 2006 WL 3548959, at *11 (S.D.N.Y. Dec. 6, 2006) ("[T]he Court finds it likely that Plaintiff inadvertently omitted these allegations from his Second Amended Complaint.  In the interest of justice, he should be permitted to correct his oversight."); <u>Braunscheidel v. Buffalo Carpenters Pension Plan</u>, No. 89 CV 356, 1993 WL 30935, at *3 (W.D.N.Y. Jan. 28, 1993).  Furthermore, the plaintiffs explain that the facts underlying the § 196-d Allegations were revealed as they reviewed documents produced to them by the defendants in October 2009, after they had filed the Amended Complaint.  (Pl. Amend. Reply at 6).  Specifically, they assert that those documents indicated that the defendants used portions of the Service Fee to pay restaurant

---

[2] In fact, as the plaintiffs pointed out at oral argument, they do not necessarily have to add the § 196-d Allegations because they have already asserted a claim under § 196-d, but they are doing so in an abundance of caution in order to ensure that the defendants have notice of the extent of their claim.  (Transcript of Proceeding on March 25, 2010 ("Tr.") at 9-10).

expenses, including the wages of other employees and the compensation of the banquet manager. (Pl. Amend. Memo. at 3).

Because these additions are hardly delayed and because the defendants have failed to show prejudice or bad faith, the plaintiffs are permitted to amend their complaint to include the Status Language and § 196-d Allegations.

B.   <u>Motion to Quash</u>

The defendants moved to quash document and deposition subpoenas served on Fantis Foods and Fantis Transfer (collectively, the "Fantis Companies").[3]   Fantis Transfer owns the building in which Thalassa is located and appears to be operated at least in part by George Makris. (Affirmation of David W. Field dated Dec.

---

[3] The plaintiffs challenge the defendants' standing to object to the subpoenas. (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Quash Subpoenas Served on Non-Parties Fantis Food, Inc. and Fantis Transfer Corp., Inc. ("Pl. Response") at 5-6). "Generally, absent a claim of privilege, a party does not have standing to object to a subpoena served on a non-party." <u>In re Flag Telecom Holdings, Ltd.</u>, No. 02 Civ. 3400, 2006 WL 2642192, at *2 (S.D.N.Y. Sept. 13, 2006) (citing <u>Langford v. Chrysler Motors Corp.</u>, 513 F.2d 1121, 1126 (2d Cir. 1975)). "However, a party may have 'a sufficient privacy interest in the confidentiality of records pertaining to their personal financial affairs so as to give them standing to challenge the subpoenas.'" <u>Id.</u> (quoting <u>Sierra Rutile Ltd. v. Katz</u>, No. 90 Civ. 4913, 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994). The defendants here contend that they have standing because the subpoenas seek personal information about the individual defendants, including their business, financial, and employment relationship with other members of the Makris family and the Fantis Companies. (Defendants' Reply Brief in Further Support of Their Motion to Quash Plaintiffs' Subpoenas Served on Non-Parties Fantis Food, Inc. and Fantis Transfer Corp., Inc. at 2). I agree. Although not all of the plaintiffs' requests seek such information, the fact that some of them do is sufficient. Moreover, given the overlap in ownership between Fiskardio and the Fantis Companies, dismissing the defendants' motion would only cause delay because the Fantis Companies likely would raise the same objections in their own motions to quash.

17, 2009 ("Field Aff."), ¶ 4; Entity Information Form from New York
State Department of State, Division of Corporations, attached as
Exh. E to Declaration of Marc D. Ashley dated Dec. 24, 2009).  The
subpoenas seek the identical information from the companies.  With
regard to documentary evidence, the subpoenas request:

> (1) "All documents concerning the business, financial,
> employment, and/or any other relationship between" the
> Fantis Companies and Fiskardo;
>
> (2) "All documents concerning the business, financial,
> employment, and/or any other relationship between George
> Makris, Julia Makris, and/or Steve Makris," including the
> sharing of funds between the individual defendants and
> the Fantis Companies;
>
> (3) "All documents concerning the business, financial,
> employment, and/or any other relationship between" the
> Fantis Companies;
>
> (4) "All documents constituting correspondence between" the
> Fantis Companies, including documents concerning
> Thalassa's "employee check and payroll questions and
> concerns;"
>
> (5) All documents concerning the plaintiffs;
>
> (6) "All documents concerning complaints against and/or
> investigations of" the Fantis Companies "regarding
> minimum wages, overtime, distribution of tips, uniforms,
> sexual harassment, and/or other employment practices,
> including complaints resulting in any legal or regulatory

actions against" the Fantis Companies;

(7)   "All documents concerning any steps taken by [the Fantis Companies] . . . to learn about minimum wage and overtime requirements under the U.S. Fair Labor Standards Act, New Jersey Statutes and/or New York Labor Law, or to encourage or secure compliance with these laws . . . ;" and

(8)   "All documents concerning the employment practices or policies at Thalassa Restaurant, including records concerning compensation of Thalassa Restaurant employees, Thalassa Restaurant revenues, the collection and distribution of gratuities and service charges, and private parties (or banquets) held at Thalassa Restaurant."

(Schedule A of Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises to Fantis Foods, Inc., attached as part of Exh. A to Field Aff.; Schedule A of Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises to Fantis Transfer Corp., Inc., attached as part of Exh. B to Field Aff.).  Except for Requests Numbers 6 and 7, which do not limit the time period for the documents that are sought, the other requests seek documents from January 1, 2002 to the present.

The deposition subpoenas ask the Fantis Companies to identify and produce people knowledgeable regarding the following matters:

(1)   "The corporate structure, nature of business, capital structure, ownership, organization, incorporation,

governance, and current legal status of" the Fantis Companies;

(2)   The relationship between the Fantis Companies and Fiskardio;[4]

(3)   The relationship between the Fantis Companies and George Makris, Julia Makris, Steve Makris, and/or Tommy Ziotas;

(4)   "Any bookkeeping, payroll or other services [the Fantis Companies] provide[] in connection with Thalassa Restaurant's employment of workers;"

(5)   "Complaints against and/or investigations of [the Fantis Companies] . . . regarding minimum wages, overtime, distribution of tips, uniforms, sexual harassment, and/or other employment practices . . . ;"

(6)   "Any steps taken by [the Fantis Companies] . . . to learn about the minimum wage and overtime requirements of the U.S. Fair Labor Standards Act, New Jersey Statutes, and/or New York Labor Law, or to encourage or secure compliance with these laws . . . ;"

---

[4] This is the only request whose wording varies between the two subpoenas. In the subpoena to Fantis Foods, the plaintiffs suggest that these documents should include "without limitation the business, financial, employment, and/or any other relationship between Fantis Foods, Inc. and Thalassa Restaurant." (Schedule A of Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action to Fantis Foods, Inc. ("Fantis Foods Dep. Subpoena"), attached as part of Exh. A to Field Aff., ¶ 2). In the plaintiffs' subpoena to Fantis Transfer Corp., they add to this list "without limitation the structure and amount, if any, of rent paid by Thalassa Restaurant to Fantis Transfer Corp." (Schedule A of Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action to Fantis Transfer Corp., Inc. ("Fantis Transfer Dep. Subpoena"), attached as part of Exh. B to Field Aff., ¶ 2).

(7)   All records maintained by the Fantis Companies that relate to Thalassa; and

(8)   "The relationship between Fantis Transfer Corp. and Fantis Foods, Inc., including without limitation the business, financial, employment, and/or other relationship between [them]."

(Fantis Foods Dep. Subpoena; Fantis Transfer Dep. Subpoena).  As with the requests for documents, these requests limit the relevant time period to after January 1, 2002, except for numbers 5 and 6, which are not restricted in time.

On December 9, 2009, the defendants wrote to the plaintiffs objecting to the subpoenas as overbroad and requested that they be withdrawn and replaced with "[s]ubpoenas narrowly construed to address the relevant issues of the action." (Letter of Stephanie L. Aranyos dated Dec. 9, 2009, attached as Exh. C to Field Aff., at 1-2).  By letter dated December 11, 2009, the plaintiffs deemed the subpoenaed information "relevant and material to the case" and refused to withdraw the subpoenas.  (Letter of Bernadette K. Galiano dated Dec. 11, 2009, attached as Exh. D to Field Aff, at 1-2).  These letters were the only communication that the parties had over the subpoenas prior to the defendants' filing of the instant motion to quash; the parties never met and conferred regarding the scope of the subpoenas.  (Tr. at 21, 26).

### 1.   The Scope of Discovery

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense[.]" Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004); see Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Convolve, Inc. v. Compaq Computer Corp., 223 F.R.D. 162, 167 (S.D.N.Y. 2004); Melendez v. Greiner, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The burden of demonstrating relevance is on the party seeking discovery. See Mandell v. Maxon Co., No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007).

Once relevance has been shown, it is up to the responding party to justify curtailing discovery. Condit, 225 F.R.D. at 106; Melendez, 2003 WL 22434101, at *1. "[T]he court must limit the frequency or extent of discovery" when:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). Similarly, a subpoena may be quashed

22

or modified if, among other things, it "subjects a person to undue burden," Fed. R. Civ. P. 45(c)(3)(A)(iv), or requires "disclosing a trade secret or other confidential, research, development, or commercial information."  Fed. R. Civ. P. 45(c)(3)(B)(I).

In assessing these considerations, "special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation."  Travelers Indemnity Co. v. Metropolitan Life Insurance Co., 228 F.R.D. 111, 113 (D. Conn. 2005); see also Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2004 WL 719185, at *1 (S.D.N.Y. April 1, 2004) ("[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty."); Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) ("[T]he status of a witness as a nonparty to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience.'" (alteration in original)). Of course, "discovery should not simply be denied on the ground that the person or entity from whom it is sought is not a party to the action. . . .  A better approach is for the court to take steps to relieve a nonparty of the burden of compliance even when such accommodations might not be provided to a party."  Wertheim Schroder & Co. v. Avon Products, Inc., No. 91 Civ. 2287, 1995 WL 6259, at *6 (S.D.N.Y. Jan. 9, 1995).

> An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party.  Whether a subpoena imposes  an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered

by it, the particularity with which the documents are described and the burden imposed."

Travelers Indemnity Co., 228 F.R.D. at 113 (quoting United States v. International Business Machines Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979)); accord Bridgeport Music Inc. v. UMG Recordings, Inc., No. 05 Civ. 6430, 2007 WL 4410405, at *2 (S.D.N.Y. Dec. 17, 2007); Night Hawk Ltd. v. Briarpatch Ltd., No. 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). The subpoenas at issue here may now be analyzed in light of these principles.

## 2. The Fantis Companies' Status in the Litigation

As a result of my decision on the plaintiffs' motion to amend, Fantis Foods will soon be joined as a defendant in this action. As a result, the plaintiffs are no longer required to request documents and deposition testimony from the company via subpoena. However, the dispute over the scope of the plaintiffs' requests is not mooted. At oral argument, defense counsel stated that if I determined that Fantis Foods could be added as a defendant in this action, the defendants would continue to contest the requests to Fantis Food as overbroad. Therefore, I will construe the document subpoena to Fantis Foods as a request for the production of documents and the deposition subpoena as a notice of deposition under Rule 30(b)(6) of the Federal Rules of Civil Procedure.

During the oral argument, defense counsel argued that "if Fantis was joined it would be joined under this limited issue of a joint employer and [the plaintiffs] could take discovery with respect to what they believe are joint employment issues." (Tr. at 22). Defense counsel further noted that the plaintiffs had no

interactions with Fantis Foods and that "no torts happened over in Cartlstadt, New Jersey," and thus "there would be no reason to go rummaging around there."  (Tr. at 23).

The plaintiffs have listed three reasons for the so-called "rummaging": (1) to determine if either of the Fantis Companies is a joint employer (Pl. Response at 8-9; Tr. at 20, 24); (2) to investigate whether the individual defendants' violations of the labor law in this case were "willful" based on whether they acquired knowledge of the labor law through their other family businesses (Pl. Response at 8; Tr. at 24); and (3) to gather any documents held by the Fantis Companies relating to the plaintiffs' employment at Thalassa.  (Tr. at 25).

a.   Information Related to Joint Employment

Document Requests Nos. 1, 2, 3, and 8 as well as Deposition Topics Nos. 1, 2, 3, and 7 appear to fall within the first category identified by plaintiffs' counsel -- they seek information intended to determine whether the Fantis Companies are joint employers of the plaintiffs.  Even though I have granted the plaintiffs' motion to add Fantis Foods as a defendant in this action on the basis that they have pled facts sufficient to show that Fantis Foods may be a joint employer of the plaintiffs, there is no question that the plaintiffs have a right to discovery on this issue in order to support their contention during summary judgment or at trial.  The issue, of course, is the appropriate scope of that discovery.

As they stand, the plaintiffs' requests are grossly overbroad, and I decline to rewrite them.  Thus, in order to receive this

information, the plaintiffs must serve on Fantis Foods new discovery requests narrowly tailored to information regarding Fantis Foods' potential status as a joint employer. I note that the requests in the subpoenas were restricted to the time period of January 2002 to the present, which appears to be an appropriate restriction, since this is the period in which the plaintiffs worked.

With respect to Fantis Transfer, plaintiffs' counsel have acknowledged that they "are fishing" for information that could support its joint employment status, but they contend that they "have a basis to fish which is the relationship between the corporations." (Tr. at 20). Perhaps, but the plaintiffs' current requests to Fantis Transfer are far too expansive. If they wish, the plaintiffs may re-serve subpoenas on Fantis Transfer limited to requests directed at the narrow issue of determining whether Fantis Transfer is a joint employer. Information regarding the landlord-tenant relationship between Fantis Transfer and Fiskardio is entirely irrelevant to this action and should be explicitly excluded.

b.  Prior Experience with Labor Laws

During the oral argument, plaintiffs' counsel conceded that the second purpose of their discovery requests -- to determine if the defendants' violations were "willful" -- may become "unnecessary" if they were to ask the individual defendants during their depositions whether they had prior experience with the labor laws and, if so, from where that experience stems. (Tr. at 25).

26

If George, Julia, or Steve Makris admitted that he or she had such experience as the result of work related to the Fantis Companies, a request for documents relating to the incidents and further deposition testimony may be appropriate.  In light of the over-inclusiveness and potential intrusiveness of Document Requests Nos. 6 and 7 and Deposition Topics Nos. 5 and 6, the defendants' objections to these requests are sustained.

        c.   <u>Information Relating to Employment at Thalassa</u>

The plaintiffs' requests for information relating to employment at Thalassa can be divided into two categories.  First, Document Request No. 5 seeks information specifically relating to the plaintiffs' employment.  The relevance of this request is axiomatic; to the extent the Fantis Companies possess documents concerning the plaintiffs, they should be produced.

Second, in Document Request Nos. 4 and 8 and Deposition Topic Nos. 4 and 7, the plaintiffs seek information that concerns Thalassa generally.  Because they pertain to the defendants' employment practices and are limited in time to the period when the plaintiffs worked, Document Request Nos. 4 and 8 as well as Deposition Topic No. 4 are plainly relevant.  Deposition Request No. 7, which requests deposition testimony concerning "any and all records kept and maintained by [the Fantis Companies] that refer or relate to Thalassa . . ." is overinclusive, especially in view of the landlord-tenant relationship between Fiskardio and Fantis Transfer.  It is difficult to imagine that the Fantis Companies possess documents relating to Thalassa that are relevant to this

action aside from those addressed in the other document and
deposition topic requests. However, if the plaintiffs believe they
do, they must submit more specific requests to the Fantis
Companies.

    C. <u>Motion to Compel</u>

    The document requests and interrogatories at issue in the
plaintiffs' motion to compel can be grouped into three broad
categories -- information relating to employees, to Thalassa
management, and to liability and damages.

    1. <u>Employees</u>

    The plaintiffs seek "[a]ll documents reflecting the names of
any persons employed at Thalassa Restaurant, their positions and
work schedules." (Responses and Objections to Plaintiffs' First
Request to Defendants for the Production of Documents ("Def. Doc.
Response"), attached as Exh. C to Affirmation of Stephanie L.
Aranyos dated Feb. 15, 2010 ("Aranyos Aff."), Request No. 6).
Similarly, they request that the defendants "[i]dentify all persons
employed at Thalassa Restaurant during the Time Period,[5] including
their positions and dates of employment." (Responses and
Objections to Plaintiffs' First Set of Interrogatories to Defendant
Julia Makris ("J. Makris Inter. Response"), attached as Exh. D to
Aranyos Aff., Interrogatory No. 9). The plaintiffs have also
requested the production of "[a]ll documents assigning employee
numbers, or referencing employees by such numbers or nicknames."

---

    [5] The parties' submissions do not explain how "Time Period"
was defined by the plaintiffs.

(Def. Doc. Response, Request No. 55).

    In documents turned over to the plaintiffs containing this information, the defendants redacted the information regarding employees other than the plaintiffs. (Tipped Employee Payroll, attached as Exh. 3 to Declaration of David A. Colodny dated Feb. 19, 2010 ("Colodny Decl."); Employee Time Card and Job Detail, attached as Exh. 4 to Colodny Decl.; Payroll Time Register/Payroll Register, attached as Exh. 5 to Colodny Decl.; Payroll Journal, attached as Exh. 6 to Colodny Decl.; Paycheck, attached as Exh. 7 to Colodny Decl.). The plaintiffs have agreed to the redaction of the social security numbers of non-party employees, but contest the redaction of other information -- including names, positions, and tip amounts. (Memorandum of Law in Support of Plaintiffs' Motion to Compel Disclosure ("Pl. Compel Memo.") at 7).

    The plaintiffs argue that this information is relevant for a number of reasons. First, it will help them locate witnesses who can testify to their "work hours, uniform requirements," and Thalassa's" practices relating to customer accounts, banquets, and tips." (Pl. Compel Memo. at 7). Next, other employees' names, positions, and tip amounts are critical to their claim that the restaurant distributed tips to employees who were not eligible to receive them and necessary to calculate their damages stemming from the improper tipping practices. (Pl. Compel Memo. at 7; Reply Memorandum of Law in Further Support of Plaintiffs' Motion to Compel Disclosure ("Pl. Compel Reply") at 5). The plaintiffs acknowledge that some of the documents that have been produced by

the defendants identify the workers by category, but they note that
such categorization is insufficient for their purposes because the
workers may have been mislabeled. (Pl. Compel Reply at 5 n.5). As
an example, they explain that Thalassa categorized persons who
polish glasses and silverware as "busboys" and had them share in
the tips, in violation, they claim, of federal and state law. (Pl.
Compel Reply at 5 n.5). The plaintiffs therefore contend that
without knowing the names of those included in the busboy category,
they cannot determine how much money was given to the polishers,
which they deem "critical" to demonstrating violations of § 196-d
and federal and state minimum wage laws. (Pl. Compel Reply at 5
n.5).

Moreover, the plaintiffs assert that the defendants' redaction
of other employees' time cards "make[s] it impossible to tell which
individual employees were required to 'clock in' and which were
considered managers." (Pl. Compel Memo. at 7). They insist that
they need this information in order to determine if Mr. Kurt was
considered a manager and, "[b]ecause Plaintiffs also allege [that]
their paystubs often stated a lower number of hours than the number
of hours that Plaintiffs actually worked, time cards should be
produced in their entirety to ensure that information about the
Plaintiffs' hours was not improperly redacted." (Pl. Compel Memo.
at 7). In addition, the plaintiffs note that the information they
seek is specifically covered by the Confidentiality Order dated
January 25, 2010 and therefore will protect the privacy of Thalassa
employees. (Pl. Compel Memo. at 4-6).

30

The defendants contend that the Confidentiality Order insufficiently ensures the safety of Thalassa employees. They offer testimony from a recent National Labor Relations Board ("NLRB") hearing by Manuel Segundo Paguay, a busboy at Thalassa, that late one night, he was confronted by representatives from the Restaurant Opportunities Center of New York. (NLRB Tr.,[6] attached as Exhs. H, I to Aranyos Aff., at 588-90, 377). The defendants describe this organization as one with which several, if not all, of the plaintiffs have met in an attempt to organize the workers at the restaurant. (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Compel ("Def. Compel Response") at 6 n.4). Mr. Paguay stated that the group followed him, telling him to sign something in order to "win a lot of money" from a lawsuit. (NLRB Tr. at 590-91). He testified that in order to try to lose them, he went into a market for 15 or 20 minutes, but when he exited, the group returned. (NLRB Tr. at 591). Mr. Paguay said that the group followed him onto a subway train and that he only escaped when he left the train car just as the doors were closing. (NLRB Tr. at 591-93).

The defendants argue that in light of Mr. Paguay's testimony, the discovery of employees' names should be limited to protect Thalassa's employees from "harassment -- or worse." (Def. Compel Response at 7). The plaintiffs contend that the defendants' argument is simply a delaying tactic. (Pl. Compel Reply at 4).

---

[6] "NLRB Tr." refers to the transcript of the hearing before the NLRB.

They note that this is the first time that the defendants have
cited concerns about their employees' safety as a reason not to
disclose the information requested by the plaintiffs; previously,
the plaintiffs assert, the defendants had expressed concern about
"privacy suits" being filed by third parties. (Pl. Compel Reply at
2-3; Tr. at 27).

Additionally, the defendants challenge these discovery
requests on the basis that they are being used to recruit more
plaintiffs. (Def. Compel Response at 5, 9). The plaintiffs
respond that such an allegation is unfounded as the deadline to
amend the complaint in order to add additional plaintiffs passed on
January 8, 2010. (Pl. Compel Reply at 7).

The plaintiffs also request the production of Thalassa's
internal payroll schedule, arguing that it is necessary in order
for them to conduct a comparison of cash tips, charged tips, and
banquet tips among employees in the tip pool and to determine who
was included in the tip pool and what, if any, deductions were made
from the plaintiffs' paychecks. (Pl. Compel Reply at 6).

The plaintiffs are entitled to receive documents showing the
names, positions, work schedules, and tip amounts of all people
employed at Thalassa from January 2002 through the present (as
requested by Request No. 6), as well as any documents assigning
numbers or referencing employees by numbers or nicknames (as
requested by Request No. 55). This information is clearly
relevant, as it will allow the plaintiffs to locate witnesses and
to investigate their claims regarding the allocation of tips. The

plaintiffs have demonstrated that they require the names of non-party employees; simply knowing their "numbers" or categories of employees is inadequate.   In order to address the defendants' concern that current and former employees of Thalassa may be harassed as a result of the release of their names and contact information, the social security numbers of the employees shall be redacted and any contact information -- addresses and phone numbers, for example -- will be released for attorneys' eyes only. In addition, the defendants need not respond to Interrogatory No. 9, which asks the defendants to list all employees who worked at Thalassa during the Time Period, because the plaintiffs have proffered no explanation why this information is not already covered by Requests Nos. 6 and 55.  See Local Civil Rule 33.3(b)(1) (interrogatories disfavored where information available through documents or depositions).

The plaintiffs are also entitled to unredacted copies of time cards, job detail reports, payroll records, payroll documents from Paychex, and Thalassa's internal payroll schedule.  The documents produced shall be limited to those created on or after January 1, 2002.  These documents are relevant to the plaintiffs' claims regarding the improper distribution of tips, failure to pay for certain hours worked and for overtime, unjustified deductions from paychecks, and violation of minimum wage laws.

2.   Thalassa Management

The plaintiffs also move to compel the production of all

33

documents concerning Raphael Abrahante, Sait[7] Dogan, and Tommy Ziotas, "including but not limited to [their] personnel file, performance records, warnings, and contemplated discipline or actual discipline." (Def. Doc. Response, Requests Nos. 44, 46, 47). Mr. Ziotas is the Vice President of Thalassa (Affidavit of Tommy Ziotas dated Jan. 22, 2010, ¶ 1); Mr. Dogan was Thalassa's maitre d' (Tr. at 34); and Mr. Abrahante is the restaurant's chef. (Tr. at 33-34). At oral argument, the plaintiffs agreed to withdraw their request for documents from the personnel files of Mr. Abrahante and Mr. Ziotas. (Tr. at 36). They further stated that the only documents they required from Mr. Dogan's file were those regarding his authority that he had at Thalassa, which they deem relevant to determining if he improperly received tips. (Tr. at 37). The plaintiffs also agreed that such information could be found in Mr. Dogan's job description and similar documents and that his entire personnel file need not be turned over. (Tr. at 37-38).

Accordingly, the defendants shall produce all documents relating to Mr. Dogan that indicate the positions that he held at Thalassa, his responsibilities at the restaurant, and whether or not he received money from the tip pool. In addition, the defendants shall produce any information in Mr. Dogan's file relating to his compensation. This is relevant for purposes of comparing his compensation to that of Mr. Kurt to help determine if Mr. Kurt was a manager. The documents produced shall be limited to

---

[7] The plaintiffs incorrectly listed Mr. Dogan's first name as "Said."

the time period from January 2002 through the present.

### 3.   Discovery Relating to Liability and Damages

#### a.   Document Request No. 40

The plaintiffs seek production of "[a]ll documents concerning the assets, liabilities and net worth of each Defendant, including without limitation (i) ownership of any real or personal property; (ii) appraisals of any real or personal property; (iii) bank and investment statements; (iv) mortgage records; or (v) insurance." (Def. Doc. Response, Request No. 40).   They assert that this information relates to a determination of punitive damages, which they claim they are entitled to under New York Executive Law § 293 and NYLL § 215.   (Pl. Compel Memo. at 8).   The defendants argue that Document Request No. 40 is premature and overbroad.   (Def. Compel Response at 10).   They insist that this private information should not be disclosed until they are found liable on any of the claims for which the plaintiffs seek punitive damages.   (Def. Compel Response at 11).   Courts in this circuit are split on the issue of allowing pretrial disclosure of financial information relevant to a determination of punitive damages.   Some permit it. See Wade v. Sharinn & Lipshie, P.C., No. 07 CV 2838, 2009 WL 37521, at *1 (E.D.N.Y. Jan. 7, 2009); Hazeldine v. Beverage Media, Ltd., No. 94 Civ. 3466, 1997 WL 362229, at *2-3 (S.D.N.Y. June 27, 1997); Open Housing Center, Inc. v. Kings Highway Realty, No. 93 CV 0766, 1993 U.S. Dist. LEXIS 15927, at *3-8 (E.D.N.Y. Nov. 8, 1993); Tillery v. Lynn, 607 F. Supp. 399, 402-03 (S.D.N.Y. 1985).   Others have found that such disclosure is premature.   See Agudas Chasidei

<u>Chabad of United States v. Gourary</u>, No. 85 CV 2909, 1989 WL 38341, at *1-2 (E.D.N.Y. April 12, 1989); <u>Davis v. Ross</u>, 107 F.R.D. 326, 327-38 (S.D.N.Y. 1985).

At this point in the litigation, I decline to grant the plaintiffs access to this information.  It is conceivable that upon a summary judgment motion, some of the defendants or some of the plaintiffs' claims will be dismissed, abrogating the need for disclosure of part, or all, of this highly confidential information.  See <u>Uebelacker v. Paula Allen Holdings, Inc.</u>, No. 06 C 326, 2006 WL 6021169, at *1 (W.D. Wis. Jan. 3, 2006) (delaying decision on motion to compel defendants' financial status until pending summary judgment motion decided).  Therefore, the plaintiff's motion to compel a response to Document Request No. 40 is denied without prejudice to renewal at a later time.

b.   <u>Document Request No. 25</u>

In addition, the plaintiffs have requested "[a]ny documents reflecting, referring or relating to financial statements of Thalassa Restaurant during the Time Period, whether formal or informal, audited or unaudited, including but not limited to profit/loss statements, documents containing information revenues, balance sheets, and tax returns relating to both income tax and sales tax." (Def. Doc. Response, Request No. 25).  In response to this request, the defendants produced redacted versions of the first page of its tax returns during the Time Period.  (Def. Doc. Response, Response to Request No. 25; Pl. Compel Memo. at 11).  The plaintiffs, however, request Schedule K of the defendants' tax

returns, arguing that these would identify the company's
shareholders, which is relevant to the issue of individual
liability. (Pl. Compel Memo. at 11).  The defendants do not appear
to dispute that disclosing the company's shareholders is relevant
to the action; instead, they contend that they have already agreed
to produce the corporate documents for Thalassa, which identify its
shareholder. (Def. Compel Response at 13).  If the defendants have
properly provided the plaintiffs with such information, the
plaintiffs' request is duplicative.

The plaintiffs also assert that the tax returns should be
produced in unredacted form in order to reveal Thalassa's gross
profits, which they claim are relevant to a determination of
damages.  The defendants argue that by providing the plaintiffs
with the redacted tax returns and by allowing them inspection of
thousands of pages of documents that include Thalassa's receipts,
they have already given the plaintiffs the information responsive
to their request. (Def. Compel Response at 13).  Because the
plaintiffs have not articulated how their request relates to
damages other than punitive damages, they have not sufficiently
demonstrated the relevance of this documents and will not be
granted access to them.

c.   Document Request No. 48

Finally, the plaintiffs previously sought "[a]ll documents
reflecting, referring, or relating to any investigations conducted
by any governmental authority into the labor practices or tax
reporting practices of any Defendant," not restricted to the Time

Period.   (Def. Doc. Response, Request No. 48).   They have since
agreed to limit their request to documents from defendant Thalassa.
(Pl. Compel Memo. at 11).    In response  to  this  request,  the
defendants produced documents concerning the unfair labor practice
charges filed by some of the plaintiffs with the NLRB.   (Def. Doc.
Response, Response to Request No. 48; Pl. Compel Memo. at 11).   The
plaintiffs argue that "[a]ny other government investigations are
also relevant to whether the violations of the labor and employment
laws in this action were willful, whether defendants have a good
faith defense to these violations, and as to the amount of damages
if  the  tax  return  is  improper."    (Pl. Compel  Memo.  at  11).
Apparently in response to the last point, the defendants state that
they have produced "all relevant payroll documents, receipts, and
banquet documents" and therefore their "tax returns should not be
considered the best evidence to base calculation of damages on."
(Def. Compel Response at 13-14).

    The  plaintiffs  are  entitled  to  documents  regarding  any
investigations  into  Thalassa's  labor  practices,  not  only  those
brought by the plaintiffs.   And, because such information can be
used to establish that the defendants had notice of the labor laws,
it  shall  not  be  restricted  to  the  period  of  the  plaintiffs'
employment.   With  regard  to  investigations  into  Thalassa's  tax
reporting practices, the defendants shall produce documents that
relate to any investigations that may be applicable to this action
-- for instance, investigations concerning tip credits.   However,
investigations about tax-related matters that have no relevance to

this action -- the under-reporting of income taxes, for example -- need not be provided to the plaintiffs.

    D.   <u>Costs</u>

    The plaintiffs request an award of the expenses they incurred, including attorneys' fees, in bringing the motion to compel.  If a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  However, the court must not order this payment if "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).  Because their motion has been granted in part and denied in part, and because the defendants' arguments were, on the whole, substantially justified, the plaintiffs will not be awarded their costs.  <u>See</u> <u>Nimkoff v. Dollhausen</u>, 262 F.R.D. 191, 196 (E.D.N.Y. 2009).

<u>Conclusion</u>

    As set forth in detail above, each of the pending motions is resolved as follows:

    1.  The plaintiffs' motion for leave to file a second amended complaint is granted.

    2.  The defendants' motion to quash the subpoenas served upon Fantis Foods and Fantis Transfer is denied with respect to Document

Requests Nos. 4, 5, and 8 and Deposition Topic 4. In all other respects, the motion is granted.

3.    The plaintiffs' motion to compel is denied without prejudice with respect to (a) Interrogatory No. 9; (b) information on Thalassa's internal payroll schedule regarding non-party employees except for information regarding the tips they received; (c) Requests Nos. 44, 46, and 47 except for information in Mr. Dogan's personnel file that relates to the positions he held at Thalassa, his responsibilities at Thalassa, whether he received money from the tip pool, and documents regarding his compensation that could aid the plaintiffs in determining if Mr. Kurt was a manager; (d) Request No. 40; (e) Request No. 25; and (f) Request No. 48 to the extent it seeks documents relating to tax investigations that are irrelevant to the claims at issue in this action. In all other respects, their motion is granted. However, the social security numbers of non-parties contained on any documents produced to the plaintiffs will be redacted, and the contact information of these parties will only be shared among attorneys. The plaintiffs' request for costs is denied.

Compliance with all aspects of this Order shall be effected within 30 days.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           April 5, 2010

Copies mailed this date:

David A. Colodny, Esq.
Molly Biklen, Esq.
Urban Justice Center
123 William Street, 16th Floor
New York, New York 10038

Alan S. Goudiss, Esq.
Daniel C. Lewis, Esq.
Diana J. Goff, Esq.
Joshua M. Goodman, Esq.
Marjorie A. Mulhall, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022

Marc D. Ashley, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York 10112

Elizabeth A. Alcorn, Esq.
David W. Field, Esq.
Stephanie L. Aranyos, Esq.
Alice B. Stock, Esq.
Lowenstein Sandler PC
1251 Avenue of the Americas
New York, New York 10020