UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICARDO COPANTITLA, DIEGO DIAZ DE LA VEGA,
IGNACIO GARCIA, FREDDY GUACHUN, JULIO
LANTIGUA, MANUEL LIZANDRO, MARTIN LOPEZ,
SEBASTIAN LOPEZ, AUGUSTIN MALDONADO,
HENRY MATUTE, JOELITO MELENDEZ,
AUSSENCIO RAMIREZ, and JOSE LUIS VARGAS,

                        Plaintiffs,

           -against-

FISKARDO ESTIATORIO, INC. d/b/a THALASSA
RESTAURANT, GEORGE MAKRIS, JULIA MAKRIS,
STEVE MAKRIS, and FANTIS FOODS, INC.,

                      Defendants.

09 Civ. No. 1608 (RJH)

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
(212) 408-5100

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
(212) 848-4000

URBAN JUSTICE CENTER
123 William Street, 16th Floor
New York, New York 10038
(646) 602-5600

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

I.   DEFENDANTS ILLEGALLY RETAINED GRATUITIES OR CHARGES PURPORTED TO BE GRATUITIES IN VIOLATION OF NEW YORK LABOR LAW ............................ 4

   A.   Banquet Gratuities Collected By Thalassa Were Gratuities Or Charges Purported To Be Gratuities Within The Meaning Of New York Labor Law § 196-d ................. 4

   B.   Thalassa Unlawfully Retained and Misappropriated Significant Portions of the Banquet Gratuities ....................................................................................... 8

      1.   Thalassa Improperly Retained 25% of the Banquet Gratuities for "The House".......................................................................................................... 9

      2.   Thalassa Illegally Used Banquet Gratuities to Pay Wages of Part-Time Employees and Additional Compensation to the Banquet Manager .............. 9

II.   FISKARDO ESTIATORIO, INC. IS AN ENTERPRISE  ENGAGED IN INTERSTATE COMMERCE............................................................................................................ 11

III.   DEFENDANTS VIOLATED FEDERAL AND STATE MINIMUM WAGE LAW ........... 12

   A.   Defendants Violated Federal Minimum Wage Law .................................. 12

      1.   Defendants Were Not Entitled to a "Tip Credit" ........................................... 13

      2.   Thalassa Failed to Satisfy the Notice Requirement ....................................... 14

      3.   Thalassa Deprived the Wait-Staff of Their Gratuities ................................... 15

   B.   Defendants Violated State Minimum Wage Law ...................................... 15

      1.   Thalassa Was Not Eligible for "A Tip Allowance" ....................................... 16

         a.   Thalassa Failed to Notify Plaintiffs .................................................. 17
         b.   Thalassa Deprived Plaintiffs of Tips................................................. 17

      2.   Regardless of Its Eligibility for the Tip Allowance, Thalassa Failed to Pay the Minimum Wage ............................................................................................ 18

IV.   DEFENDANTS VIOLATED FEDERAL AND STATE OVERTIME LAW ...................... 19

   A.   Defendants Violated the Overtime Requirements of Federal Overtime Law ............ 19

   B.   Defendants Violated the Overtime Requirements of New York Labor Law............. 20

V.   DEFENDANTS VIOLATED NEW YORK STATE SPREAD OF HOURS LAW ............. 22

VI.     DEFENDANTS FISKARDO, JULIA MAKRIS AND STEVE MAKRIS ARE  EACH
        "EMPLOYERS" UNDER THE FAIR LABOR STANDARDS ACT AND
        NEW YORK LABOR LAW AND ARE  JOINTLY AND SEVERALLY LIABLE FOR
        ALL VIOLATIONS........................................................................................................ 23

        A.     Legal Standards for Liability Under the Fair Labor Standards Act............................ 23

        B.     Legal Standards for Liability Under New York Labor Law...................................... 25

        C.     Defendants Fiskardo, Julia Makris, and Steve Makris are Each "Employers" Under
               Both Federal and State Law ...................................................................................... 25

               1.     Fiskardo Is an Employer Under Both Federal and State Law ...................... 25

               2.     Julia Makris Is an Employer Under Both Federal and State Law.................. 26

               3.     Steve Makris Is an Employer Under Both Federal and State Law ............... 27

VII.    PLAINTIFFS SHOULD BE AWARDED LIQUIDATED DAMAGES ............................. 29

        A.     Defendants Are Liable Under the Fair Labor Standards Act...................................... 29

        B.     Defendants Are Liable Under New York Labor Law................................................. 31

CPAM: 3328615.4

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Ansoumana v. Gristedes Operating Corp.,
     255 F. Supp. 2d 184 (S.D.N.Y. 2003)..........................................................................24, 25, 26

Arculeo v. On-Site Sales & Mktg., LLC,
     425 F.3d 193 (2nd Cir. 2005)...................................................................................................25

Bonnette v. Cal. Health & Welfare Agency,
     525 F. Supp. 128 (N.D. Cal. 1981) ..........................................................................................24

Brock v. Superior Care, Inc.,
     840 F.2d 1054 (2d Cir. 1988)...................................................................................................24

Brock v. Wiliamowsky,
     833 F.2d 11 (2nd Cir. 1987).............................................................................................29, 31

Cao v. Chandara Corp.,
     No. 00 Civ. 8057, 2001 U.S. Dist. LEXIS 8631 (S.D.N.Y. July 25, 2001)............................14

Cao v. Wu Liang Ye Lexington Rest., Inc.,
     No. 08 Civ. 3725, 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010) ....................................10, 17

Carter v. Dutchess Cmty. Coll.,
     735 F.2d 8 (2d Cir. 1984)........................................................................................................24

Chan v. Sung Yue Tung Corp.,
     No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007) ..................... passim

Chao v. Vidtape, Inc.,
     196 F. Supp. 2d 281 (E.D.N.Y. 2002) .....................................................................................24

Chung v. New Silver Palace Rest., Inc.,
     246 F. Supp. 2d 220 (S.D.N.Y. 2002).....................................................................................13

Doty v. Elias,
     733 F.2d 720 (10th Cir. 1984) ................................................................................................30

Eastman Kodak Co. v. Image Tech. Servs., Inc.,
     504 U.S. 451 (1992)...................................................................................................................3

Falk v. Brennan,
     414 U.S. 190 (1973)..........................................................................................................23, 24

ii

Hayes v. Bill Haley & His Comets, Inc.,
    274 F. Supp. 34 (E.D. Pa. 1967) ............................................................................20

Herman v. RSR Sec. Servs. Ltd.,
    172 F.3d 132 (2d Cir. 1999)............................................................................23, 24

Hernandez v. La Cazuela De Mari Rest., Inc.,
    538 F. Supp. 2d 528 (E.D.N.Y. 2007) ....................................................................26

In re Ngan Gung Rest., Inc.,
    183 B.R. 689 (Bankr. S.D.N.Y. 1995) ....................................................................10

Jiao v. Chen,
    No. 03 Civ. 0165, 2007 U.S. Dist. LEXIS 96480 (S.D.N.Y. Mar. 30, 2007).........................25

Ke v. Saigon Grill, Inc.,
    595 F. Supp. 2d 240 (S.D.N.Y. 2008)................................................................22, 32

Krynski v. Chase,
    707 F. Supp. 2d 318 (E.D.N.Y. 2009) ......................................................................3

Kulak v. City of New York,
    88 F.3d 63 (2d Cir. 1996)......................................................................................3

Lin v. Great Rose Fashion, Inc.,
    No. 08-cv-4778, 2009 WL 1544749 (E.D.N.Y. June 3, 2008)................................................28

Lu v. Jing Fong Rest. Inc.,
    503 F. Supp. 2d 706 (S.D.N.Y. 2007)......................................................................17

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)..............................................................................................3

Moon v. Kwon,
    248 F. Supp. 2d 201 (S.D.N.Y. 2002)..............................................................24, 25, 31

Nicholson v. Twelfth St. Corp.,
    No. 09 Civ. 1984, 2010 U.S. Dist. LEXIS 43448 (S.D.N.Y. May 4, 2010)..........................13

Padilla v. Manlapaz,
    643 F. Supp. 2d 302 (E.D.N.Y. 2009) ......................................................................17

Powell v. Nat'l Bd. of Med. Exam'rs,
    364 F.3d 79 (2d Cir. 2004)......................................................................................3

Reich v. Midwest Body Corp.,
    843 F. Supp. 1249 (N.D. Ill. 1994) ..........................................................................20

CPAM: 3328615.4

Reich v. S. New Eng. Telecomms. Corp.,
    121 F.3d 58 (2d Cir. 1997)................................................................................29, 30

Reilly v. Natwest Mkts. Group Inc.,
    181 F.3d 253 (2d Cir. 1999)......................................................................................32

Rodriguez v. City of New York,
    72 F.3d 1051 (2d Cir. 1995)........................................................................................3

Samiento v. World Yacht Inc.,
    10 N.Y.3d 70, 883 N.E.2d 990, 854 N.Y.S.2d 83 (2008)..................................5, 6, 9

Tlacoapa v. Carregal,
    386 F. Supp. 2d 362 (S.D.N.Y. 2005)....................................................................29, 30

Vermont v. 1-800 Beargram Co.,
    373 F.3d 241 (2d Cir. 2004)........................................................................................3

Zheng v. Liberty Apparel Co.,
    355 F.3d 61 (2d Cir. 2003)....................................................................................23, 27

**STATUTES**

29 U.S.C. § 203(d) ....................................................................................................23

29 U.S.C. § 203(m)..........................................................................................13, 14, 15

29 U.S.C. § 203(r)......................................................................................................11

29 U.S.C. § 203(s)(1)(A) ...........................................................................................11

29 U.S.C. § 206 ....................................................................................................12, 29

29 U.S.C. §§ 207 .......................................................................................................29

29 U.S.C. § 207(a)....................................................................................................19

29 U.S.C. § 216(b)....................................................................................................29

29 U.S.C. § 260 .........................................................................................................29

C.P.L.R. §§ 5001, 5004.............................................................................................32

NYLL § 190(3) ..........................................................................................................25

NYLL § 196-d.......................................................................................................passim

NYLL § 198................................................................................................................31

CPAM: 3328615.4

NYLL § 215 ...................................................................................................................2

NYLL § 652(1) .............................................................................................................16

NYLL § 652(4) .............................................................................................................18

**OTHER AUTHORITIES**

29 C.F.R. § 778.5 .........................................................................................................20

29 C.F.R. § 778.108 .....................................................................................................19

29 C.F.R. § 778.315 ...............................................................................................19, 20

12 N.Y.C.R.R. § 137-1.2 ..............................................................................................16

12 N.Y.C.R.R. § 137-1.3 ..............................................................................................19

12 N.Y.C.R.R. § 137-1.5 ..............................................................................................18

12 N.Y.C.R.R. § 137-1.7 ..............................................................................................22

DOL Opinion Letter RO-08-0052 (February 19, 2009) .................................................21

DOL Opinion Letter RO-08-0107, RO-08-0111, RO-08-0129 (December 1, 2008)................5, 6

DOL Opinion Letter RO-09-0181 (March 11, 2010) ......................................................8

Fed. R. Civ. P. 56 ........................................................................................................1, 3

Fed. R. Civ. P. 56(c)(2) .................................................................................................3

Fed. R. Civ. P. 56(d)(1) .................................................................................................3

Fed. R. Civ. P. 56(d)(2) .................................................................................................3

Fed. R. Civ. P. 56(e)(2) .................................................................................................3

CPAM: 3328615.4

Plaintiffs Ricardo Copantitla, Diego Diaz de la Vega, Ignacio Garcia, Freddy Guachun, Julio Lantigua, Manuel Lizondro,[1] Martin Lopez, Sebastian Lopez, Augustin Maldonado, Henry Matute, Joelito Melendez, and Jose Luis Vargas (collectively, "Plaintiffs")[2] respectfully submit this memorandum of law in support of their motion for partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs are current and former employees of Thalassa Restaurant ("Thalassa" or the "Restaurant"), an upscale Greek restaurant located in the Tribeca neighborhood of Manhattan.  Plaintiffs occupied a variety of positions in the restaurant, including captains, runners, expediters, busboys, and polishers.  Throughout Plaintiffs' employment, Thalassa violated numerous federal and state labor laws governing the payment of wages and tips.

Plaintiffs have been particularly aggrieved by the misappropriation of gratuities that were earned by the wait-staff.  When some Plaintiffs complained to Thalassa's management about such violations, the Restaurant threatened employees with termination and ultimately did terminate the employment of several Plaintiffs.

---

[1]   Plaintiff Manuel Lizondro is inaccurately referred to in the Complaints as "Lizandro."

[2]   Aussencio Ramirez is also a plaintiff in this action.  Ramirez worked as a dishwasher at Thalassa Restaurant from at least March 30, 2007 through September 17, 2008.  See Plaintiffs' Statement of Undisputed Material Facts (the "Rule 56.1 Statement"), at ¶ 13, Exs. 1-3.  Plaintiffs do not move for summary judgment on allegations in the Complaint relating to Ramirez but reserve the right to pursue such claims at trial.

On February 20, 2009, Plaintiffs brought this action seeking damages and other relief arising out of their employment at Thalassa.  Plaintiffs amended their complaint twice to add parties and claims.  The Second Amended Complaint (hereinafter the "Complaint" or "Compl.") states claims for:  (i) Minimum Wages Under the Fair Labor Standards Act ("FLSA"); (ii) Minimum Wages Under New York Labor Law ("NYLL"); (iii) Overtime Wages Under the FLSA; (iv) Overtime Wages Under NYLL; (v) Spread of Hours Payments Under NYLL; (vi) Unauthorized Deductions Under NYLL; (vii) Illegal Retention of Gratuities and "Charges Purported to be Gratuities" Under NYLL; (viii) Uniform Requirement Violations; (ix) Defendants' Failure to Pay Plaintiffs Call-In-Pay Under NYLL; (x) Illegal Retaliation Under NYLL § 215; (xi) Defendants' False Imprisonment Under New York State Common Law; (xii) Defendants' Sexual Harassment Under New York State Law; and (xiii) Defendants' Sexual Harassment Under New York City Law.

Plaintiffs now move for summary judgment with respect to Defendants' liability (but not damages) under Counts One through Five (minimum wage, overtime, and spread of hours violations) and Count Seven (unlawfully retained gratuities).  Additionally, Plaintiffs move for summary judgment dismissing Defendants' affirmative defense that their violations of the FLSA were made in good faith.  Finally, Plaintiffs also move for summary judgment with respect to the joint and several liability of Defendants Fiskardo Estiatorio, Inc. ("Fiskardo"), Julia Makris, and Steve Makris, and with respect to Plaintiffs' entitlement to liquidated damages.

## STATEMENT OF FACTS

The undisputed material facts pertinent to this motion are fully set forth in Plaintiffs' Rule 56.1 Statement and are fully incorporated herein.

**ARGUMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment on a claim where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 466-468 (1992); Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 83 (2d Cir. 2004). It is the moving party's burden to show that no genuine issue of fact exists. See Vermont v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).

Once the moving party has met its burden, however, the non-moving party "must -- by affidavits or as otherwise provided in th[e] rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see also Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). This is accomplished only by doing "more than simply show[ing] that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

A party may move for partial summary judgment where certain material facts are not genuinely at issue, as determined by an examination of the pleadings and available evidence. Fed. R. Civ. P. 56(d)(1). Partial summary judgment may also be appropriate where there is no genuine issue of material facts with respect to substantive claims, although there may exist a genuine issue with respect to the amount of damages due. Fed. R. Civ. P. 56(d)(2); see, e.g., Krynski v. Chase, 707 F. Supp. 2d 318, 329 (E.D.N.Y. 2009) (no genuine issues of material fact existed as to defendants' liability such that court ordered trial only on issue of damages).

3

## I.

## DEFENDANTS ILLEGALLY RETAINED GRATUITIES OR CHARGES PURPORTED TO BE GRATUITIES IN VIOLATION OF NEW YORK LABOR LAW

Plaintiffs are entitled to summary judgment on Count Seven of the Complaint due to Defendants' numerous violations of NYLL § 196-d.[3]  This section prohibits employers from demanding or retaining any employee's gratuities or charges purported to be gratuities.  The undisputed evidence demonstrates that Thalassa unlawfully misappropriated gratuities that should have been distributed to the wait-staff.  First, Thalassa retained for the house 25% of the funds it charged as a gratuity to customers holding private dining events (hereinafter "Banquet(s)" or "Banquet Service(s)") at the Restaurant.  Second, Thalassa diverted an additional share of these gratuities (above and beyond the 25%) to pay the wages of part-time employees.  Third, Thalassa inappropriately diverted yet an additional share of these gratuities to pay extra compensation to the "Banquet Manager," who was the captain that led the Banquets.[4]

### A.    Banquet Gratuities Collected By Thalassa Were Gratuities Or Charges Purported To Be Gratuities Within The Meaning Of New York Labor Law § 196-d

NYLL § 196-d expressly provides that "[n]o employer or his agent . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or any charge purported to be a gratuity for an employee."  As the

---

[3]   Plaintiff Lizondro does not move for summary judgment with respect to Count Seven.

[4]   Plaintiffs also allege in the Complaint that Thalassa violated section 196-d by requiring the wait-staff Plaintiffs to share their tips with managers and employees who polished silverware and glasses ("polishers").  Plaintiffs do not move for summary judgment on the facts underlying Count Seven that relate to managers and polishers but reserve their right to pursue such claims at trial.

New York Court of Appeals recently explained, this law protects for employees both gratuities voluntarily made as well gratuities paid pursuant to a charge imposed by the employer. <u>Samiento</u> v. <u>World Yacht Inc</u>., 10 N.Y.3d 70, 74, 883 N.E.2d 990, 991, 854 N.Y.S.2d 83, 84 (2008) ("a charge that is not a voluntary payment may be a 'charge purported to be a gratuity' within the meaning of [section 196-d]").  The Court of Appeals explained that "the standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer as this standard is consistent with the purpose of Labor Law § 196-d."  <u>Id</u>. at 79, 883 N.E.2d at 994, 854 N.Y.S.2d at 87-88.  The Court of Appeals further explained that "if the employer's agents lead the patron who purchases a banquet or other special function to believe that the contract price includes a fixed percentage as a gratuity, then that percentage of the contract price must be paid in its entirety to the waiter, busboys and 'similar employees' who work at that function, even if the contract makes no reference to such a gratuity."  <u>Id</u>. at 79-80, 883 N.E.2d at 995, 854 N.Y.S.2d at 88 (citing N.Y. Dep't of Labor ("DOL") Opinion Letter (March 26, 1999)).  Therefore, the Court of Appeals concluded that employers cannot retain "mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees."  <u>Id</u>. at 81, 883 N.E.2d at 996, 854 N.Y.S.2d at 89.

       This common sense explanation of the meaning behind section 196-d has been further reinforced by the New York Commissioner of Labor.  <u>See</u> DOL Opinion Letter RO-08-

0107, RO-08-0111, RO-08-0129 (December 1, 2008) (attached to Ashley Decl. as Ex. 133.)[5]  In
the December 1, 2008 DOL Opinion Letter, the Commissioner of Labor emphasized that, "as
described and affirmed by Samiento, it is clear that if an employer causes a reasonable patron to
believe that a service charge is a gratuity to be received by a service employee(s), then it is a
'charge purported to be a gratuity.'"  Id. at 3.  The December 1, 2008 DOL Opinion Letter also
rejected the notion that Samiento modified existing law; Samiento merely affirmed an opinion
issued by the DOL in 1999.  Id.

Here, it is undisputed that part of Thalassa's business has been the hosting of
Banquets since approximately December 2002.  (Rule 56.1 Statement at ¶¶ 15, 32; Ex. 75.)  It is
also undisputed that Thalassa has charged Banquet customers a gratuity or service charge
(hereinafter "Banquet Gratuity" or "Banquet Gratuities").  (Rule 56.1 Statement at ¶ 34; Exs. 1-
2, 78-80.)  Throughout the period in which Plaintiffs worked at Thalassa, the Banquet Gratuities
collected by the Restaurant was consistently 15% or 20% of the cost of food and beverages.  Id.

The undisputed facts also clearly establish that the Banquet Gratuities were either
gratuities or charges purported to be gratuities within the meaning of NYLL § 196-d.  It is clear
that under the reasonable-patron standard set forth in Samiento, Thalassa customers would have
believed that the Banquet Gratuities were for the benefit of the wait-staff.  This inescapable
conclusion is based on the totality of numerous undisputed facts, including:

---

[5]     All referenced exhibits ("Ex. __") are attached to the Declaration of Marc D. Ashley
("Ashley Decl.") executed on November 15, 2010, accompanying the Memorandum of Law
in Support of Plaintiff's Motion for Summary Judgment.

- The terms used by Thalassa to describe the Banquet Gratuity were "service," "service charge," and "gratuity."  (Rule 56.1 Statement at ¶ 45; Exs. 104-106.)  These terms were used throughout the written materials that Thalassa provided to Banquet customers, including information appearing on Thalassa's website, (Rule 56.1 Statement at ¶ 37, Ex. 76); proposed menus and contracts, (Rule 56.1 Statement at ¶¶ 39-42, Exs. 16, 79, 81, 83-88); documents explaining contract terms, (Rule 56.1 Statement at ¶¶ 41-42, Exs. 25, 77-78, 80, 89-90, 92-103); executed contracts, (Rule 56.1 Statement at ¶ 43, Exs. 25, 90); invoices, (Rule 56.1 Statement at ¶¶ 49-50, Exs. 110-113); and e-mail correspondence, (Rule 56.1 Statement at ¶¶ 51-52, Exs. 114-116).

- Thalassa admits that the terms "service charge" and "gratuity" carry the same meaning.  (Rule 56.1 Statement at ¶ 35, Ex. 14.)

- Thalassa routinely used the terms "service charge" and "gratuity" interchangeably in its correspondence with Banquet customers.  (Rule 56.1 Statement at ¶¶ 38, 42, 46, 51; Exs. 16, 25, 77-78, 80, 89-90, 92-103, 107-108, 114-115.)

- Banquet customers normally did not leave an additional gratuity on top of what they paid for the Banquet Gratuities pursuant to their contract or invoice.  (Rule 56.1 Statement at ¶¶ 44, 48; Exs. 25, 91.)

- Thalassa never informed customers that the Banquet Gratuities were not being distributed to the wait-staff.  (Rule 56.1 Statement at ¶ 47.)

7

The DOL has explained that using the term "service charge" without further explanation would lead a reasonable patron to believe the charge was for the wait-staff.  See DOL Opinion Letter RO-09-0181 at 2 (March 11, 2010) (attached to Ashley Decl. as Ex. 134) ("a banquet operator would not be permitted to retain but would be required to distribute an 18% or 20% service charge to the wait-staff if the banquet operator added the service charge to the banquet contract and said nothing about its purpose because a 'reasonable patron' would believe an 18% or 20% service charge is for the service staff.").  Therefore, the Banquet Gratuities collected by Thalassa were gratuities or charges purported to be gratuities within the meaning of NYLL § 196-d.

**B.     Thalassa Unlawfully Retained and Misappropriated Significant
          Portions of the Banquet Gratuities**

Thalassa regularly retained or diverted a significant portion of the Banquet Gratuities that were required by law to be distributed to the wait-staff.  For example, Thalassa imposed a Banquet Gratuity of $4,190.67 for an August 8, 2007 Banquet.  Instead of distributing this entire amount to the wait-staff as was required by NYLL § 196-d, Thalassa made the following deductions:  (i) $1,047.67 (or 25% of the Banquet Gratuity) was retained for the Restaurant; (ii) $374.00 (or 9% of the Banquet Gratuity) was used by Thalassa to pay the wages of part-time employees hired to work at the Banquet; and (iii) $104.67 (or 2.5% of the Banquet Gratuity) was distributed to the Banquet Manager as additional compensation.  Therefore, after all of the improper deductions, only $2,664.24 of the Banquet Gratuity of $4,190.67 (or 64% of this Banquet Gratuity) remained to be distributed to the wait-staff.  (Rule 56.1 Statement at ¶ 58, Ex. 129.)

8

1.      **Thalassa Improperly Retained 25% of the Banquet Gratuities
        for "The House"**

Defendants' retention for the Restaurant of 25% of the Banquet Gratuities is a

violation of NYLL § 196-d, which strictly prohibits employers from retaining gratuities or

charges purported to be gratuities.  See Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007

U.S. Dist. LEXIS 7770, at *55-56 (S.D.N.Y. Feb. 1, 2007) (retention of 25% of banquet tips is

prohibited by section 196-d); Samiento, 10 N.Y.3d at 80-81, 883 N.E.2d at 995-96, 854

N.Y.S.2d at 87-88 (remitting only 4% to 7% of the 20% banquet service charge was a violation

of section 196-d when employers represented to customers that charges were gratuities for

employees).

It is undisputed that Thalassa retained 25% of the Banquet Gratuities it collected,

usually amounting to 4% to 5% of the total bill for food and beverages, and that it failed to remit

that portion of the Banquet Gratuities to the wait-staff.  (Rule 56.1 Statement at ¶¶ 57-58; Exs. 1-

2, 14, 117-120, 123-124, 129.)  By retaining 25% of those Banquet Gratuities, Thalassa clearly

violated NYLL § 196-d, and Plaintiffs are entitled to summary judgment with respect to such

illegally retained gratuities.

2.      **Thalassa Illegally Used Banquet Gratuities to Pay Wages of
        Part-Time Employees and Additional Compensation to the
        Banquet Manager**

After Thalassa impermissibly retained 25% of Banquet Gratuities, it compounded

this illegal action by:  (i) using an additional portion of Banquet Gratuities to pay the wages of

part-time employees hired to work at the Banquets, (Rule 56.1 Statement at ¶¶ 60-61; Exs. 14,

117, 119, 120, 130); and (ii) retaining yet an additional portion of the Banquet Gratuities to pay

additional compensation to the Banquet Manager.  (Rule 56.1 Statement at ¶¶ 62-63; Exs. 1-2,

14, 117, 119-120.)

9

Thalassa's use of the Banquet Gratuities to pay the Restaurant's expenses – in this case, wages and additional compensation – violated NYLL § 196-d.  See Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725, 2010 WL 4159391, at *4 (S.D.N.Y. Sept. 30, 2010) (unlawful to require waiters to remit 12% to 15% of their tips, which were either retained by employer or used to pay busboys' wages, "thereby impermissibly transferring money from waiters to busboys to support the busboys' base pay"); Chan, 2007 U.S. Dist. LEXIS 7770, at *48 & n.7 (illegal to take money from tip pool to pay wages of employees who receive an hourly wage rather than wages and tips); In re Ngan Gung Rest., Inc., 183 B.R. 689, 695 (Bankr. S.D.N.Y. 1995) (purpose of NYLL § 196-d is to "ensure service employees actually receive the tips given to them by the public and to prohibit employers from engaging in the deceptive practice of confiscating tips in order to pay wages").

Thalassa's use of Banquet Gratuities to pay part-time employees and additional compensation to the Banquet Manager is a clear violation of section 196-d.  There can be no dispute that Thalassa periodically hired part-time workers to work at Banquets.  (Rule 56.1 Statement at ¶ 60, Exs. 14, 130.)  It is also undisputed that Thalassa paid these workers a flat wage per day or shift worked, without additional tips.  (Rule 56.1 Statement at ¶ 60, Ex. 130.)  It is further undisputed that Thalassa paid the wages for these part-time employees out of the Banquet Gratuities.  (Rule 56.1 Statement at ¶¶ 60-61, Exs. 14, 117, 119-120, 130.)  Likewise, it is undisputed that Thalassa took additional money from the Banquet Gratuities to pay additional compensation to the Banquet Manager.  (Rule 56.1 Statement at ¶¶ 62-63, Exs. 14, 117, 119-120.)  The amount taken by Thalassa for this purpose of compensating the Banquet Manager was normally about 2.5% of the total Banquet Gratuities.  Id.  Accordingly, Plaintiffs are also entitled to summary judgment based on these violations of NYLL § 196-d.

10

## II.

### FISKARDO ESTIATORIO, INC. IS AN ENTERPRISE ENGAGED IN INTERSTATE COMMERCE

Fiskardo is an enterprise engaged in interstate commerce within the meaning of the FLSA, and Plaintiffs have therefore been entitled to the FLSA's protections during the course of their employment.  In order to be subject to the FLSA, Fiskardo must have handled goods in interstate commerce and had an annual revenue exceeding $500,000.  29 U.S.C. § 203(s)(1)(A); see also 29 U.S.C. § 203(r) (definition of "enterprise").  Fiskardo is an entity that was incorporated in the state of New York and does business as Thalassa Restaurant.  (Rule 56.1 Statement at ¶ 15, Exs. 1-2, 14-15.)  There is no dispute that Thalassa, a Greek restaurant, sells food and wine that has traveled through interstate commerce.  Defendants admit that certain employees of Thalassa were "engaged in commerce, or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."  (Rule 56.1 Statement at ¶ 15, Exs. 1-2.)  Additionally, Thalassa regularly purchased food and wine from Fantis Foods, a New Jersey corporation.  (Rule 56.1 Statement at ¶ 16, Ex. 17.)  Fantis Foods is a wholesale food importer and distributor.  (Rule 56.1 Statement at ¶ 16, Ex. 17.)  The food imported by Fantis often originates in Europe.  (Rule 56.1 Statement at ¶ 16, Ex. 17.)  There is also no dispute that Thalassa's annual gross sales have exceeded $500,000 at all times relevant to the allegations in the Complaint.  (Rule 56.1 Statement at ¶ 15, Exs. 1-2.)

As Thalassa has handled goods in interstate commerce and has had an annual revenue exceeding $500,000 during the entirety of Plaintiffs' employment, Plaintiffs have been entitled to the protections of the FLSA throughout their employment, a point that forms the predicate of the federal claims in this motion.

11

**III.**

**DEFENDANTS VIOLATED FEDERAL AND STATE MINIMUM WAGE LAW**

**A.      Defendants Violated Federal Minimum Wage Law**

Plaintiffs are entitled to summary judgment on Count One of the Complaint due to Defendants' failure to pay the legally prescribed minimum wage required under federal law. Pursuant to the FLSA, 29 U.S.C. § 206, the appropriate minimum wage Thalassa was required to pay Plaintiffs was:  (i) $5.15 per hour for all time periods prior to July 24, 2007; (ii) $5.85 per hour for the time period between July 24, 2007 and July 23, 2008; (iii) $6.55 per hour for the time period between July 24, 2008 and July 23, 2009; and (iv) $7.25 per hour for the time period from July 24, 2009 to present.  It is undisputed that Thalassa routinely paid Plaintiffs wages less than these amounts at all times (including paying plaintiff Matute as low as $2.15 per hour during several years of his employment).

Specifically, Thalassa generally paid the wait-staff the following hourly rates: (i) $3.75 per hour from approximately when the Restaurant opened in late 2002 through March 2007; (ii) $4.60 per hour from approximately March 2007 through approximately July 2009; and (iii) $4.65 from approximately July 2009 through the present.[6]  (Rule 56.1 Statement at ¶ 27, Exs. 29-56.)  Accordingly, Thalassa failed to pay Plaintiffs the minimum wage required by the FLSA at all times of their employment.

---

[6]      This summary is not intended to be a precise history of the rates paid to all Plaintiffs.

1.      **Defendants Were Not Entitled to a "Tip Credit"**

Although the FLSA sometimes allows employers to pay "tipped employees" less than the minimum wage, an employer may take a "tip credit" against its minimum wage obligation only if certain conditions are met. Chan, 2007 U.S. Dist. LEXIS 7770, at *46-47. To be eligible for this "tip credit," the "employer must notify employees of the law regarding minimum wages and of the employer's intention to take the tip credit." Nicholson v. Twelfth St. Corp., No. 09 Civ. 1984, 2010 U.S. Dist. LEXIS 43448, at *6 (S.D.N.Y. May 4, 2010); see also 29 U.S.C. § 203(m) (the tip credit "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection"); U.S. Dep't of Labor, Fact Sheet #2: Restaurants and Fast Food Establishments Under the Fair Labor Standards Act (FLSA) (July 2009) ("Employees must be informed in advance if the employer elects to use the tip credit, [and of] the amount of tip credit to be claimed . . .") (attached to Ashley Decl. as Ex. 135).

In addition to the notice requirement, employers are also required to allow employees to keep all of the tips that they earn although employees can be required to participate in tip pools with other employees who "customarily and regularly receive tips." 29 U.S.C. § 203(m) (second requirement for tip credit eligibility is that "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips"); see also Nicholson, 2010 U.S. Dist. LEXIS 43448, at *8 (to be eligible for "tip credit," employer "must permit employees to retain all tips that they receive").

The notice and tip retention requirements "that the employer must fulfill to be eligible for the tip credit are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage." Chung v. New Silver Palace Rest., Inc.,

246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002); see also U.S. Dep't of Labor Fact Sheet #15: Tipped

Employees Under the Fair Labor Standards Act (FLSA) (July 2009) ("Where an employer does

not strictly observe the tip credit provisions of the Act, no tip credit may be claimed and the

employees are entitled to receive the full cash minimum wage, in addition to retaining tips they

may/should have received.") (attached to Ashley Decl. as Ex. 136.)

Here, as explained below, Defendants did not satisfy either requirement of

section 203(m) -- that of notice or full retention -- and accordingly should not be entitled to take

a tip credit against the minimum wage required by the FLSA.  Accordingly, Plaintiffs are entitled

to summary judgment on Count One of the Complaint due to Thalassa' failure to pay the

applicable minimum wage.

**2.      Thalassa Failed to Satisfy the Notice Requirement**

It is undisputed that Defendants have failed to demonstrate that they notified any

of Plaintiffs of the law regarding minimum wage or their intention to take a tip credit.  (Rule 56.1

Statement at ¶¶ 64-65, Exs. 14, 16, 19-20, 25-27, 131.)  Employers bear the burden of

demonstrating that they have satisfied the notice requirement of section 203(m).  Chan, 2007

U.S. Dist. LEXIS 7770, at *52; Cao v. Chandara Corp., No. 00 Civ. 8057, 2001 U.S. Dist.

LEXIS 8631, at *13 (S.D.N.Y. July 25, 2001).  Defendants are unable to satisfy this burden.  In

fact, there is no testimony from Defendants or their agents that they ever discussed minimum

wage with Plaintiffs even generally.  (Rule 56.1 Statement at ¶¶ 64-65, Exs. 14, 16, 19-20, 25-

27, 131.)  Additionally, although Thalassa has both an employee handbook and an employee

manual, there is no information in these documents regarding minimum wage.  (Rule 56.1

Statement at ¶ 65, Exs. 16, 131.)  By failing to give notice in accordance with section 203(m),

Thalassa rendered itself ineligible to reap the benefit of a tip credit, and it is therefore liable for

payment of the full minimum wage for the entirety of Plaintiffs' employment at the Restaurant.

See, e.g., Chan, 2007 U.S. Dist. LEXIS 7770, at *52 (citing Reich v. Chez Robert, Inc., 28 F.3d 401, 403 (3d Cir. 1994)).

### 3.     Thalassa Deprived the Wait-Staff of Their Gratuities[7]

Thalassa also is ineligible to invoke the benefit of a tip credit because it did not allow Plaintiffs to retain all of the tips that they earned.   As shown in Section I, supra, Thalassa denied Plaintiffs the benefit of their tips in several ways.  First, Thalassa retained 25% of the Banquet Gratuities.  See Section I.B.1., supra.  Second, Thalassa used additional Banquet Gratuities to pay the wages of part-time workers and the Banquet Manager.  See Section I.B.2., supra.  Each of these schemes to deprive Plaintiffs of their tips flatly contradicts section 203(m) and runs afoul of established precedent.  In Chan, a case with analogous circumstances, another court in this district expressly held that the restaurant violated the "strict" requirements of section 203(m) when it retained for the restaurant 25% of the banquet tips and misappropriated a portion of the tip pool to pay part-time employees.  2007 U.S. Dist. LEXIS 7770, at *49.

### B.     Defendants Violated State Minimum Wage Law

Plaintiffs are also entitled to summary judgment on Count Two of the Complaint due to Defendants' failure to pay minimum wage under NYLL.  As under federal law, New York

---

[7]   Plaintiffs allege in the Complaint that Lizondro, as a polisher, was entitled to the full minimum wage and that his pay was not subject to a tip credit or tip allowance.  The question of whether Lizondro's role as a polisher is an additional basis why Defendants were not entitled to take a tip credit against Lizondro's payment is an issue Plaintiffs intend to pursue at trial.  Accordingly, Lizondro does not move for summary judgment on the basis of deprivation of gratuities.  However, it is undisputed that Lizondro was paid less than minimum wage, (Rule 56.1 Statement at ¶ 27, Exs. 44-46), Lizondro moves for summary judgment on the Restaurant's failure to provide proper notice to him of its intention to take a tip credit.

state law also requires employers to pay employees a minimum wage.  Pursuant to NYLL

§ 652(1), the legally prescribed minimum wage has been:  (i) $5.15 on and after March 31, 2000;

(ii) $6.00 on and after January 1, 2005; (iii) $6.75 on and after January 1, 2006; (iv) $7.15 on and

after January 1, 2007; and (v) $7.25 on and after July 24, 2009.  12 N.Y.C.R.R. § 137-1.2.  As

discussed above, it is undisputed that Thalassa routinely paid the wait-staff hourly rates that fell

below these amounts at all applicable times (including paying plaintiff Matute as low as $2.15

per hour during several years of his employment).  Specifically, Thalassa generally paid the wait-

staff the following hourly rates of:  (i) $3.75 per hour from approximately when the Restaurant

opened in late 2002 through March 2007; (ii) $4.60 per hour from approximately March 2007

through approximately July 2009; and (iii) $4.65 from approximately July 2009 through the

present.[8]  (Rule 56.1 Statement at ¶ 27, Exs. 29-56.)

   Because Thalassa was not eligible to claim a "tip allowance"[9] under NYLL, its

payments below the rate prescribed by NYLL violated the minimum wage requirement.  Even if

Thalassa had been eligible for a tip allowance, it still violated the minimum wage requirement by

paying some Plaintiffs less than would be allowed even if it were entitled to invoke a tip

allowance.

  **1.**  **Thalassa Was Not Eligible for "A Tip Allowance"**

   New York state law allows employers, under limited circumstances, to pay less

than the statutorily mandated minimum wage.  Similar to federal law, under NYLL an employer

---

[8] This summary is not intended to be a precise history of the rates paid to all Plaintiffs.

[9] The term "tip allowance" under NYLL is analogous in meaning to the term "tip credit" under
the FLSA.

is not entitled to a tip allowance in the absence of either proper notice to the employee or full
distribution of tips to the employee.

### a.    Thalassa Failed to Notify Plaintiffs

In order to take a tip allowance under NYLL, "[f]irst, the employer is required to
'furnish to each employee a statement with each payment of wages listing . . . allowances . . .
claimed as part of the minimum wage . . .' [and] [s]econd, the employer must 'maintain and
preserve for not less than six years weekly payroll records which shall show for each employee
. . . allowances . . . claimed as part of the minimum wage.'" Padilla v. Manlapaz, 643 F. Supp.
2d 302, 309-10 (E.D.N.Y. 2009) (citing 12 N.Y.C.R.R. §§ 137-2.2; 137-2.1) (emphasis added);
see also Cao, 2010 WL 4159391, at *2.  There is no evidence that Defendants
contemporaneously "claimed" an allowance, either by providing any documentation showing
any intention to do so, notifying Plaintiffs of any allowances they were claiming against
minimum wage, or engaging in any other conduct that would memorialize their intention to claim
an allowance.  Accordingly, Defendants were not entitled to the benefit of a tip allowance, and
Plaintiffs are therefore entitled to summary judgment on Count Two of the Complaint.

### b.    Thalassa Deprived Plaintiffs of Tips[10]

As discussed in Section I, supra, Defendants improperly deprived Plaintiffs the
full portion of their Banquet Gratuities.  This deprivation precludes Defendants from taking a tip
allowance under New York state law.  See Lu v. Jing Fong Rest. Inc., 503 F. Supp. 2d 706, 710

---

[10]   Lizondro does not move for summary judgment on the basis of deprivation of gratuities but
rather moves for summary judgment only with respect to the Restaurant's failure to provide
him proper notice.  See note 7, supra.

(S.D.N.Y. 2007) ("[t]his separate violation of § 196-d would render Jing Fong ineligible to receive a tip [allowance] under New York law . . . .").

### 2.  Regardless of Its Eligibility for the Tip Allowance, Thalassa Failed to Pay the Minimum Wage

Even if Thalassa had satisfied the requirements entitling it to a tip allowance, the Restaurant would still be in violation of NYLL because the reduced hourly rate it paid Plaintiffs did not meet the reduced rate required by law.  Eligibility for the tip allowance would have allowed Thalassa to pay a minimum wage of no less than: (i) $3.30 on or after March 21, 2000; (ii) $3.85 on or after January 1, 2005; (iii) $4.35 on or after January 1, 2006; (iv) $4.60 on or after January 1, 2007; and (v) $4.65 on or after July 24, 2009.  12 N.Y.C.R.R. § 137-1.5; NYLL § 652(4).  As referenced above, plaintiff Matute was paid as low as $2.15 per hour during several years of his employment.  (Rule 56.1 Statement at ¶ 27, Exs. 52-56.)  Thalassa generally paid the wait-staff $3.75 per hour from January 1, 2005 through March 2007, and did not begin to pay $4.60 per hour until March 2007.  (Rule 56.1 Statement at ¶ 27, Exs. 23, 29-38, 40-51, 57-63.)  Accordingly, for a substantial period of Plaintiffs' employment, Defendants did not pay Plaintiffs the required rate even if a tip allowance was appropriate.

## IV.

## DEFENDANTS VIOLATED FEDERAL AND STATE OVERTIME LAW[11]

Plaintiffs are entitled to summary judgment on Counts Four and Five of the Complaint because Defendants failed to pay appropriate overtime wages required under both the FLSA and NYLL.  Under federal law and New York state law, an employee is entitled to at least one and a half times the "the regular rate" for every hour the employee worked in excess of forty hours per week.  29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 137-1.3; 29 C.F.R. § 778.108 (emphasis added).  It is undisputed that all Plaintiffs worked more than forty hours a week during some weeks of their employment.  (Rule 56.1 Statement at ¶ 28, Exs. 1-2, 24, 38, 45, 59, 64-65.)

**A.     Defendants Violated the Overtime Requirements of
         Federal Overtime Law**

Although Defendants paid Plaintiffs some overtime compensation at some points, they paid it at the inappropriate rate because, for the reasons stated above, Thalassa paid the inappropriate regular hourly rate from which to calculate the corresponding overtime rate.  Even if an employee's base hourly rate is below the minimum wage because his or her employer has taken a tip credit against the minimum wage, federal law nevertheless requires that the overtime rate be based on the applicable minimum wage.  29 C.F.R. § 778.315.

---

[11]   Defendants have produced records indicating that all Plaintiffs were paid some amount of overtime compensation, albeit at an unlawfully low rate, for working in excess of 40 hours per week.  However, there remains an open question as to whether Defendants paid all Plaintiffs any overtime compensation prior to 2007.  Accordingly, Plaintiffs reserve the right to pursue at trial the issue of whether Defendants paid all Plaintiffs any overtime compensation prior to 2007.

Moreover, because the minimum wage required by New York state law exceeded the federal minimum wage for most of Plaintiffs' employment, the FLSA requires the overtime rate to be calculated based on the higher NYLL rate.  See 29 C.F.R. § 778.5 ("Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is lawfully employed.").  If such regular hours have not been paid based on the higher state minimum wage, the FLSA will dictate that overtime has not been properly paid:

> Overtime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard.  This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid.

29 C.F.R. § 778.315; see also Reich v. Midwest Body Corp., 843 F. Supp. 1249, 1252 (N.D. Ill. 1994) (although employees were paid above minimum wage, FLSA required that employer pay overtime calculated using higher rate of pay prescribed by employment contract); Hayes v. Bill Haley & His Comets, Inc., 274 F. Supp. 34, 37 (E.D. Pa. 1967) ("the overtime rate can hardly be said to be paid until the non-overtime rate has been paid").

**B.    Defendants Violated the Overtime Requirements of
       New York Labor Law**

Defendants also violated NYLL by calculating the rate of overtime pay using a regular rate that fell below the minimum wage.  For example, when NYLL required a minimum wage of $7.15 per hour, Defendants should have paid overtime at a rate of $10.75 ($7.15 * 1.5)

20

per hour.  Instead, Defendants paid overtime at a rate of $6.90 per hour when the Restaurant paid a regular hourly rate of $4.60. [12]  (Rule 56.1 Statement at ¶ 28, Exs. 38, 45, 59, 64-65.)

Moreover, even if the Restaurant was entitled to take a tip allowance under New York state law, the overtime rate it paid to Plaintiffs still fell below the required rate because Thalassa miscalculated the overtime rate.  If an employer is eligible for a tip allowance, the proper overtime rate is derived by, first, multiplying the full minimum wage by 1.5 and, then, deducting the applicable tip allowance amount.  See DOL Opinion Letter RO-08-0052 (February 19, 2009) (attached to Ashley Decl. as Ex. 137).  Here, Thalassa deducted the tip allowance before multiplying by 1.5 when it should have deducted the tip allowance after multiplying by 1.5.  For example, during the period when the New York state minimum wage was $7.15 per hour and the tip allowance for wait-staff workers was $2.55 per hour, Thalassa paid a regular rate of $4.60 and an overtime rate of $6.90 (($7.15 - $2.55) * 1.5).  (Rule 56.1 Statement at ¶ 28, Exs. 38, 45, 59, 64-65.)  If Thalassa had been entitled to take a tip allowance, the appropriate overtime rate would have been $8.18 per hour (($7.15 * 1.5) - $2.55).  This calculation violation occurred throughout Plaintiffs' employment until Plaintiffs' counsel alerted Defendants to such violations in October 2008, (Rule 56.1 Statement at ¶ 69, Ex. 132), after which time, in about January 2009, Thalassa began to pay an overtime rate of $8.18 to employees who received a regular rate of $4.60.  (Rule 56.1 Statement at ¶ 30, Ex. 66.)

_____

[12]   Plaintiff Guachun was paid a minimum wage of $5.25 per hour during periods of his employment.  Thalassa paid overtime to Guachun at a rate of $7.875 per hour or ($5.25 * 1.5).  Rule 56.1 Statement at ¶ 29, Exs. 24, 65.  Despite the difference in pay that Guachun received, Defendants nevertheless failed to apply the appropriate overtime calculation to determine the proper rate of overtime pay to which Guachun was entitled.

Accordingly, Plaintiffs are entitled to summary judgment on Counts Three and Four of the Complaint.

## V.

## DEFENDANTS VIOLATED NEW YORK STATE SPREAD OF HOURS LAW

Plaintiffs are entitled to summary judgment on Count Five of the Complaint because Defendants failed to pay Plaintiffs "spread of hours" compensation under NYLL. Pursuant to 12 N.Y.C.R.R. § 137-1.7, if an employee works a spread of hours lasting more than ten hours in a work day, he or she must receive an additional "one hour's pay at the basic minimum hourly wage rate."  "Moreover, the minimum-wage payment to which the employee is entitled under the pertinent provisions is the regular minimum wage rather than the lower wage for tipped 'service employees.'"  Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 260 (S.D.N.Y. 2008).

It is undisputed that Defendants did not begin paying "spread of hours" compensation until about December 2008, (Rule 56.1 Statement at ¶ 31, Exs. 34, 67-74), after Plaintiffs' counsel alerted Defendants to such violations in October 2008.  (Rule 56.1 Statement at ¶ 69, Ex. 132.)  Prior to December 2008, Plaintiffs all periodically worked a "spread of hours" exceeding ten hours per day.  (Rule 56.1 Statement at ¶ 31, Exs. 67-69.)  Accordingly, Plaintiffs are entitled to summary judgment on Count Five of the Complaint.

**VI.**

**DEFENDANTS FISKARDO, JULIA MAKRIS AND STEVE MAKRIS ARE EACH "EMPLOYERS" UNDER THE FAIR LABOR STANDARDS ACT AND NEW YORK LABOR LAW AND ARE JOINTLY AND SEVERALLY LIABLE FOR ALL VIOLATIONS**

The broad definition of "employer" provided by the FLSA and NYLL requires that defendants Fiskardo, Julia Makris and Steve Makris be held jointly and severally liable for the compensation owed to Plaintiffs.

**A.      Legal Standards for Liability Under the Fair Labor Standards Act**

The FLSA defines "employer" as "any person acting directly or indirectly in the interests of an employer in relation to an employee."  29 U.S.C. § 203(d).  This definition is "expansive," not only in its plain language, but also in its application.  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  As the Second Circuit has made clear, in keeping with the FLSA's remedial purpose, the FLSA's provisions should be interpreted to give the statute the "widest possible impact in the national economy."  Id.; see also Falk v. Brennan, 414 U.S. 190, 195 (1973).

The Second Circuit employs an "economic reality" test to determine whether a defendant is an employer for purposes of the FLSA.  See Herman, 172 F.3d at 139.  In that analysis, the court should examine whether the defendant:  (i) has the power to hire and fire employees; (ii) supervises or controls employee work schedules or conditions of employment; (iii) determines the rate and method of payment; or (iv) maintains employment records.  Id.  This list is neither exclusive nor exhaustive, because a defendant need not satisfy all the above criteria to qualify as an employer under the FLSA; no one factor is dispositive, and any other relevant factor may also be considered.  See Zheng v. Liberty Apparel Co., 355 F.3d 61, 71 (2d Cir.

2003).  The Second Circuit has also warned that a "mechanical application of the test is to be avoided."  Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988).

The "overarching" issue in determining personal liability is thus whether the alleged employer has the power to exercise control over employees.  See Herman, 172 F.3d at 139.  Control need not be "ultimate" to support personal liability, see Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984), nor does it require "continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." Herman, 172 F.3d at 139; see also Ansoumana v. Gristedes Operating Corp., 255 F. Supp. 2d 184, 192-93 (S.D.N.Y. 2003) (to be an employer under FLSA, one need "not have direct control over the workers").  Rather, "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA."  Herman, 172 F.3d at 139.  Thus, the FLSA permits more than one person to be held liable as an employer, see Falk, 414 U.S. at 195, and it does not mitigate liability where a particular individual "may have shared or delegated operational control to other[s] . . . or exercised that control infrequently."  Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002).

Furthermore, a defendant's subjective belief as to whether he or she is an employer has no bearing on whether that defendant is, in fact, an employer under the FLSA. See, e.g., Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, 291 (E.D.N.Y. 2002) (finding defendant to be an employer despite defendant's contrary testimony), aff'd and modified, 66 F. App'x 261 (2d Cir. 2003); Bonnette v. Cal. Health & Welfare Agency, 525 F. Supp. 128, 135 (N.D. Cal. 1981) (good faith belief that one is not an employer is irrelevant to determination of employer liability under FLSA), aff'd, 704 F.2d 1465 (9th Cir. 1983).

24

**B.     Legal Standards for Liability Under New York Labor Law**

An "employer" who may be held liable under NYLL includes "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."  NYLL § 190(3).  NYLL thus follows the expansive definition of "employer" set forth in the FLSA, and imposes personal liability on employers for wage and hour violations.  See, e.g., Jiao v. Chen, No. 03 Civ. 0165, 2007 U.S. Dist. LEXIS 96480, at *30-31 n.12 (S.D.N.Y. Mar. 30, 2007) ("courts have interpreted the definition of 'employer' under the New York Labor law coextensively with the definition used by the FLSA"); Ansoumana, 255 F.Supp. 2d at 192-93; Moon, 248 F. Supp. 2d at 236.

**C.     Defendants Fiskardo, Julia Makris, and Steve Makris are Each "Employers" Under Both Federal and State Law**

Under both federal and state law, the definition of "employer" is sufficiently broad to encompass Fiskardo, Julia Makris, and Steve Markis as "joint employers."  See Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2nd Cir. 2005) (noting that an employee may impose liability for violations of employment law on joint employers).  Accordingly, Fiskardo, Julia Makris, and Steve Makris are jointly and severally liable for all of Thalassa's wage violations.

**1.     Fiskardo Is an Employer Under Both Federal and State Law**

Fiskardo is a corporation that was organized and exists under the laws of the State of New York.  (Rule 56.1 Statement at ¶ 15, Exs. 1-2, 15.)  Fiskardo was incorporated in 2001.  (Rule 56.1 Statement at ¶ 15, Ex. 14.)  At all times relevant to this action, Fiskardo has operated and done business as Thalassa Restaurant.  (Rule 56.1 Statement at ¶ 15, Exs. 1-2, 14 ("Thalassa is Fiskardo.  It does business as Thalassa Restaurant.  Fiskardo is the corporate name.").)  Defendants have admitted that Plaintiffs are current or former employees of Fiskardo.  (Rule

56.1 Statement at ¶ 15, Exs. 1-2.)  Accordingly, Fiskardo is an employer and liable for all violations of the FLSA and NYLL.

### 2.    Julia Makris Is an Employer Under Both Federal and State Law

It is undisputed that Julia Makris has been the sole owner of Thalassa since its opening.  (Rule 56.1 Statement at ¶ 17, Exs. 1-2, 14-15, 18.)  As the sole owner, Julia Makris has full authority and control over Plaintiffs' working conditions, and is clearly an employer and thus liable for all wage violations.  See Hernandez v. La Cazuela De Mari Rest., Inc., 538 F. Supp. 2d 528, 535 (E.D.N.Y. 2007) (individuals, as sole owners and officers, were "employers" and thus were jointly and severally liable with the restaurant corporation for any wage violations under both the FLSA and the New York Minimum Wage Act even if owner did not personally employ plaintiffs).  That Julia Makris delegated supervisory responsibilities to her son, Steve Makris, and Fiskardo Vice President Tommy Ziotas ("Ziotas") (Rule 56.1 Statement at ¶ 19, Exs. 15, 18), does not allow Julia Makris to escape liability.  In order to be deemed an employer one need "not have direct control over the workers."  Ansoumana, 255 F. Supp. 2d at 192 (in determining whether an individual exercised operational control for purposes of determining liability as a joint employer, "it [does] not matter that the putative employer did not directly hire workers, but only managerial staff, and that [the employer] did not have direct control over the workers in question").

Despite her purported delegation of control of daily decisions to Steve Makris and Ziotas (Rule 56.1 Statement at ¶ 19, Exs. 15, 18), Julia Makris remained involved in the corporation's decision-making.  For example, from 2001 through 2007 and in 2009, Julia Makris signed Consents as the only Shareholder of Fiskardo, electing herself and Ziotas as Directors of the corporation for one-year terms.  (Rule 56.1 Statement at ¶ 19, Ex. 15.)  In 2008, Julia Makris

26

signed a similar Consent electing only herself as Director of the Company.  (Rule 56.1 Statement at ¶ 19, Ex. 15.)  From 2001 through 2009, Ziotas as Secretary of Fiskardo signed Consents electing Julia Makris as President/Treasurer, Ziotas as Vice President, and Ziotas as Secretary. (Rule 56.1 Statement at ¶ 19, Ex. 15.)  Additionally, Julia Makris authorized Ziotas to testify as the Rule 30(b)(6) deponent on behalf of the corporation in this litigation.  (Rule 56.1 Statement at ¶ 22, Ex. 14.)

    Julia Makris has continued to be involved in the operations of the Restaurant.  For example, she visits Thalassa about once a week; receives reports from Ziotas regarding the status of the Restaurant, including how to improve the service provided by the employees, (Rule 56.1 Statement at ¶ 19, Exs. 18-19); and makes recommendations about hiring, food, music, and ambience.  (Rule 56.1 Statement at ¶ 19, Ex. 20.)  Finally, although Julia Makris testified at deposition that she received a paycheck only from when the Restaurant opened in 2002 until approximately 2003, (Rule 56.1 Statement at ¶ 19, Ex. 18), payroll records indicate that she was still receiving compensation from Thalassa at least in 2008.  (Rule 56.1 Statement at ¶ 19, Exs. 18, 21-24.)  All of these facts dictate that Julia Makris was an "employer" within the meaning of the FLSA and NYLL and is thus personally liable for all violations of those statutes by the Restaurant that she operates.

   **3.**  **Steve Makris Is an Employer Under Both Federal and State Law**

    It is undisputed that Steve Makris, the current General Manager of Thalassa (Rule 56.1 Statement at ¶ 20, Exs. 18, 20), exhibited many -- if not all -- factors enumerated by <u>Zheng</u>. Defendants have admitted that Steve Makris has the power and authority to hire and fire employees (and has in fact fired employees, including plaintiff Matute) and to set work schedules for employees of the Restaurant.  (Rule 56.1 Statement at ¶ 21, Exs. 1-2, 20.)  Even

prior to becoming the General Manager, Steve Makris has overseen the Restaurant for his mother Julia Makris "from day one," beginning in 2002 and continuing today.  (Rule 56.1 Statement at ¶ 20, Ex. 20.)  In fact, he has been described as the "eyes and ears" of Julia Makris with respect to Thalassa.  (Rule 56.1 Statement at ¶ 20, Ex. 19.)  Steve Makris represents to customers and the public that he is the owner of Thalassa.  (Rule 56.1 Statement at ¶ 20, Ex. 20.)  He determined the management structure of Thalassa, placing himself at the top of the hierarchy.  (Rule 56.1 Statement at ¶ 20, Exs. 18, 20.)  Prior to Steve Makris becoming the General Manager himself, all the previous general managers, the Special Events Coordinator, maitre d's, and chefs reported to him regarding decisions relating to employment, food, service, and customer satisfaction. (Rule 56.1 Statement at ¶ 21, Exs. 20, 25.)  Finally, Steve Makris, together with Ziotas, is in charge of all day-to-day employment decisions with respect to the Restaurant including determining employee compensation.  (Rule 56.1 Statement at ¶ 20, Exs. 18, 20.)

Moreover, Steve Makris is not insulated from liability because he was merely "overseeing" the restaurant for his mother Julia Makris, (Rule 56.1 Statement at ¶ 20, Ex. 20), until becoming General Manager.  (Rule 56.1 Statement at ¶ 20, Ex. 18, 20.)  See Lin v. Great Rose Fashion, Inc., No. 08-cv-4778, 2009 WL 1544749, at *15 (E.D.N.Y. June 3, 2008) (holding that daughter of absentee business owners was "employer" within the meaning of the FLSA, despite her assertions that she was just "helping out" her parents, where she, inter alia, supervised and managed employees and made hiring decisions.).

Given these myriad undisputed facts, it is clear that Steve Makris is an "employer" within the meaning of the FLSA and NYLL and is thus personally liable for all wage violations by the Restaurant that he helped run.

## VII.

## PLAINTIFFS SHOULD BE AWARDED LIQUIDATED DAMAGES

**A.      Defendants Are Liable Under the Fair Labor Standards Act**

Defendants' violations of federal law were not made in good faith, and Plaintiffs are therefore entitled to liquidated damages in an amount equal to the amount of actual damages under the FLSA.  An employer who violates the FLSA's minimum wage or overtime provisions "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and an additional equal amount as liquidated damages."  29 U.S.C. § 216(b); see 29 U.S.C. §§ 206, 207.  "Double damages are the norm" unless the employer can "show that the act or omission giving rise to the action was in good faith and that he had reasonable grounds for believing that the act or omission was not a violation of the [FLSA]."  Brock v. Wiliamowsky, 833 F.2d 11, 19 (2nd Cir. 1987); Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) ("[n]ormally, when an employer is found liable for unpaid minimum wages or overtime, the full award of liquidated damages provided for in the statute is mandatory").  Once an employee proves a violation of the FLSA, the burden then shifts to the employer to prove that its actions were in good faith.  29 U.S.C. § 260 (liquidated damages may be avoided only if the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of [the FLSA]").  Good faith in this context requires that an employer actively seek to determine the requirements of the FLSA and then attempt to comply with such requirements.  Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 71 (2d Cir. 1997).  Employers must show "plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it."  Id. at 71.

29

Certain factors are indicia of a lack of good faith, including the absence of evidence that employees made any effort to ascertain the FLSA requirements and the failure to obtain legal advice regarding compliance with the FLSA. Tlacoapa, 386 F. Supp. 2d at 368 (violations of FLSA were not made in good faith where there was "no evidence that the defendant made any effort to ascertain FLSA requirements or to fully comply with basic recordkeeping requirements"); Reich, 121 F.3d at 71 (obtaining of opinion letter from DOL was insufficient to compel finding of good faith, where employer failed to rely on informed counsel's advice). That an employer did not purposefully violate the dictates of the FLSA because of ignorance or uncertainty of the prevailing law is insufficient to establish that it acted in good faith. Tlacoapa, 386 F. Supp. 2d at 368 ("[i]gnorance of FLSA requirements is insufficient to establish good faith . . .").

Here, Defendants cannot establish that they have acted in good faith. As a threshold matter, there is a complete absence of evidence indicating that Defendants made any effort to ascertain the FLSA requirements. To the contrary, each witness for Defendants testified that he or she did not make any such effort. (Rule 56.1 Statement at ¶ 66-68, Exs. 14, 18, 20.) Additionally, none of Defendants sought legal advice regarding compliance with the FLSA. Id. Ziotas' vague testimony that he conferred with an accountant regarding the rate of minimum wage when he "hear[d] on the news there was a wage increase," (Rule 56.1 Statement at ¶ 68, Ex. 14), is not sufficient to establish good faith. See Doty v. Elias, 733 F.2d 720, 726 (10th Cir. 1984) (defendant did not establish good faith by asserting only that an accountant had informed him that his method of compensating waiters and waitresses was legal).

30

These collective facts make clear that Defendants did not act in good faith in violating the FLSA.  Accordingly, Plaintiffs are entitled to damages and summary judgment on Defendants' affirmative defense that their violations of federal law were made in good faith.

**B.      Defendants Are Liable Under New York Labor Law**

Defendants are also liable for liquidated damages under NYLL because their violations were "willful."  Under NYLL, an employee may be awarded liquidated damages that amount to 25% of the total wages owed by the employer "upon a finding that the employer's failure to pay the wage required was willful."  NYLL § 198 (1-a); see also Moon, 248 F. Supp. 2d at 219, 235 (defendants liable for liquidated damages under NYLL due to willful failure to pay plaintiff overtime).

In the context of NYLL violations, an "employer acts 'willfully' if it 'knowingly, deliberately, or voluntarily disregards its obligation to pay wages.'"  Chan, 2007 U.S. Dist. LEXIS 7770, at *81 (citations omitted).  Employees do not need to show that an employer "acted maliciously or in bad faith" in order for the employer to be liable for liquidated damages under NYLL.  Id.  The failure of an employer to take any steps to determine the lawfulness of its conduct constitutes evidence of willful violations.  Wiliamowsky, 833 F.2d at 18.

It has already been noted above that Defendants failed to ascertain whether they were in compliance with wage laws.  (Rule 56.1 Statement at ¶ 66-68, Exs. 14, 18, 20.)  Moreover, Defendants' misappropriation of more than 25% of Plaintiffs' gratuities in violation of section 196-d was clearly willful conduct.  Defendants must have known that it was wrong to retain and misappropriate the wait-staff's gratuities.  Defendants themselves considered the Banquet Gratuities to be tips, yet knowingly used them to pay some of the Restaurant's expenses.  These facts compel the conclusion that Defendants' violations of the applicable labor

laws were willful <u>per se</u>.  Defendants are therefore liable for liquidated damages under New York law in the amount of 25% of the total wages and gratuities owed.

Additionally, Plaintiffs are entitled to prejudgment interest, at a statutory rate of 9%, for all damages sought herein under NYLL.  <u>See</u> C.P.L.R. §§ 5001, 5004.  This prejudgment interest may be awarded in addition to any liquidated damages that the Court may award.  <u>See</u> <u>Reilly</u> v. <u>Natwest Mkts. Group Inc</u>., 181 F.3d 253, 265 (2d Cir. 1999); <u>see</u> <u>also</u> <u>Ke</u>, 595 F. Supp. 2d at 262 (plaintiff awarded liquidated damages under NYLL may also recover pre-judgment interest).[13]

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should grant Plaintiffs' motion for partial summary judgment with respect to Counts One, Two, Three, Four, Five, and Seven, and grant such other relief as the Court deems just and proper.

Date:   November 15, 2010
        New York, New York

---

[13]   Plaintiffs note that reasonable attorneys' fees may be awarded by statute, and that Plaintiffs will move for such reasonable attorneys' fees at the appropriate time should judgment be entered in Plaintiffs' favor.

Respectfully submitted,

CHADBOURNE & PARKE LLP


By ___/s/ Marc D. Ashley_____
          Marc D. Ashley  (MA-8896)
           mashley@chadbourne.com
  30 Rockefeller Plaza
  New York, New York  10112
  Telephone:  (212) 408-5100
  Facsimile:  (212) 541-5369


SHEARMAN & STERLING LLP
Daniel C. Lewis
daniel.lewis@shearman.com
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179


URBAN JUSTICE CENTER
David Colodny
Dcolodny@urbanjustice.org
123 William Street, 16th Floor
New York, New York 10038
Telephone:  (646) 602-5600
Facsimile:  (212) 533-4598

Attorneys for Plaintiffs