UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

RICARDO COPANTITLA, DIEGO DIAZ DE LA  :
VEGA, IGNACIO GARCIA, FREDDY GUACHUN,  :
JULIO LANTIGUA, MANUEL LIZANDRO, MARTIN  :
LOPEZ, SEBASTIAN LOPEZ, AUGUSTIN  :
MALDONADO, HENRY MATUTE, JOELITO  :
MELENDEZ, AUSSENCIO RAMIREZ, AND JOSE  :    Case No. 09 Civ. 1608
LUIS VARGAS,  :    (RJH)(JCF)
  :
                                         Plaintiffs,  :
  :
                    -against-  :
  :
FISKARDO ESTIATORIO, INC. d/b/a THALASSA  :
RESTAURANT, GEORGE MAKRIS, JULIA MAKRIS,  :
STEVE MAKRIS, and FANTIS FOODS, INC.,  :
  :
                                         Defendants.  :
  :
-----------------------------------------------------------------------x

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas
New York, New York  10020
212-262-6700
Attorneys for Defendants
Fiskardo Estiatorio, Inc. d/b/a Thalassa Restaurant,
George Makris, Julia Makris, Steve Makris, and
Fantis Foods, Inc.


Of Counsel:

David W. Field, Esq.
Stephanie L. Aranyos, Esq.
Eric Jesse, Esq.

## TABLE OF CONTENTS

**Page**

Table of Authorities..............................................................................................................iii

Preliminary Statement ..........................................................................................................1

Statement of Facts ................................................................................................................2

Legal Argument ....................................................................................................................2

I.   THE SUMMARY JUDGMENT STANDARD. ..............................................................2

II.  THE RESTAURANT WILL PAY TO PLAINTIFFS SPREAD OF
     HOURS PAY...............................................................................................................3

III. JULIA MAKRIS AND STEVE MAKRIS ARE NOT "EMPLOYERS"
     UNDER THE FLSA OR NYLL..................................................................................4

     A.   Julia Makris Is Not An "Employer" under the FLSA or NYLL. ............................4

     B.   There is a Dispute of Fact as to whether Steve Makris is an
          "Employer" and in any event, Plaintiffs Cannot Satisfy the
          Economic Reality Test...................................................................................7

IV.  THE RESTAURANT COMPLIED WITH THE LAW REGARDING
     MANDATORY SERVICE CHARGES AND THEREFORE
     PLAINTIFFS' CLAIM FOR UNPAID GRATUITIES UNDER NYLL
     §196-D SHOULD BE DENIED...................................................................................9

     A.   Plaintiffs Are Not Entitled To The Portion of the Service Charge
          Retained by the Restaurant. ...........................................................................9

     B.   World Yacht Should Not Be Applied Retroactively. ..........................................13

V.   THE RESTAURANT PAID THE STATUTORY Minimum wage
     REQUIRED UNDER NEW YORK LAW AND THE FLSA. .........................................21

     A.   The Restaurant Satisfied The FLSA Requirements And Were
          Entitled to Take a Tip Credit. .........................................................................21

     B.   The Restaurant Satisfied The NYLL Requirements And Were
          Entitled to Take a Tip Credit. .........................................................................24

VI.    DEFENDANTS HAVE ALWAYS PAID OVERTIME AND HAVE
ALWAYS CALCULATED AT ONE AND ONE-HALF TIMES
PLAINTIFFS LAWFUL REGULAR RATE. ....................................................................26

VII.   PLAINTIFFS' REQUEST FOR LIQUIDATED DAMAGES IS
PREMATURE AND THE RECORD DEMONSTRATES
DEFENDANTS' GOOD FAITH BASIS FOR ANY ALLEGED
VIOLATIONS. ...............................................................................................................29

Conclusion .................................................................................................................................31

# TABLE OF AUTHORITIES

**Pages**

**CASES**

Almedida v. Aguinaga,
    500 F. Supp.2d 366 (S.D.N.Y. 2007) .................................................................4

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ...........................................................................................3

Ansoumana v. Gristede's Operating Corp.,
    255 F. Supp. 2d 184 (S.D.N.Y. 2003) .............................................................5, 7

Bailey v. The Pilots' Ass'n for the Bay & River Del.,
    406 F. Supp. 1302 (E.D. Pa. 1976) ...................................................................30

Bennett v. SLT/TAG, Inc.,
    No. 02-65, 2003 WL 23531402, at 9 (D. Or. May 8, 2003) ............................30

Boyke v. Superior Credit Corp.,
    No. 01-0290, 2006 WL 3833544 (N.D.N.Y. Dec. 28, 2006) ...........................31

Busa v. Busa,
    609 N.Y.S.2d 452 (3d Dep't 1994) ..............................................................17, 20

Bynog v. Cipriani Group, Inc.,
    748 N.Y.S.2d 9 (1st Dep't 2002) ..............................................................15, 16, 21

Bynog v. Cipriani Group, Inc.,
    N.Y. 3d 193 (2003) ......................................................................................14, 15

Carter v. Dutchess Cmty. Coll.,
    735 F.2d 8 (2d Cir. 1984) ..................................................................................5

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ...........................................................................................3

Chan v. Sung Yue Tung Corp.,
    No. 03-Civ-6458, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb 1. 2007) ........15

Chung v. New Silver Palace Restaurant,
    246 F. Supp.2d 220 (S.D.N.Y. 2002) ..................................................10, 15, 16, 21

Dalheim v. KDFW-TV,
    715 F. Supp. 533 (N.D. Tex. 1989) ..................................................................30

Davis v. B&S, Inc.,
    38 F. Supp. 2d 707 (N.D. Ind. 1998) ................................................................22

Genao v. Blessed Sacrament School,
    No. 07-3979, 2009 WL 3171951 (E.D.N.Y. Oct. 1, 2009) .............................30, 31

Hayes v. Bill Haley and His Comets, Inc.,
    274 F.Supp. 34 (E.D.Pa 1967).............................................................................28

Heng Chan v. Triple 8 Palace, Inc.,
    No. 03-6048, 2006 WL 851749 (S.D.N.Y. Mar. 30, 2006)...............3, 4, 15, 22

Herman v. Blockbuster Entm't Group,
    18 F. Supp. 2d 304 (S.D.N.Y. 1998) ......................................................................7

Herman v. RSR Security Services,
    172 F.3d 132 (2d Cir. 1999) ..............................................................................5, 7

Hernandez v. La Cazuela de Mari Rest.,
    538 F. Supp. 2d 528 (E.D.N.Y. 2007) .....................................................................7

Howard v. Port Auth. of N.Y. & N.J.,
    684 F. Supp. 2d 409 (S.D.N.Y. 2010) .................................................................30

Jin v. Pacific Buffet House, Inc., et al.
    (CV-06-579), 2009 U.S. Dist. LEXIS 74901 (E.D.N.Y. August 24, 2009).....................27, 28

Kilgore v Outback Steakhouse
    160 F.3d 294 (6th Cir. 1998) .............................................................................22

Kurcsics v. Merchants Mut. Ins. Co.,
    49 N.Y.2d 451 (1980)..........................................................................................29

Lu v. Jin Fong Rest.,
    503 F. Supp. 2d 706 (S.D.N.Y. 2007) ........................................................ 15, 16

Marshall v. Gerwill, Inc.,
    495 F. Supp. 744 (D. Md. 1980).........................................................................22

Martin v. Tango's Rest.,
    969 F.2d 1319, 1322 (1st Cir. 1992)....................................................................23

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ..............................................................................................3

Moon v. Kwon,
    248 F. Supp. 2d 201 (S.D.N.Y. 2002) .................................................................5, 7

Morse v. Mer Corp.,
    No. 08-1389, 2010 WL 4812792 (S.D. Ind. Nov. 22, 2010) .................................. 30

Padilla v. Manlapaz,
    643 F. Supp. 2d 302 (E.D.N.Y. 2009) .............................................................. 26

People v. Favor,
    82 N.Y. 2d 254 (1993) ................................................................................ 17

People v. Martello,
    93 N.Y.2d 645 (1999) ...................................................................... 17, 19, 20

Ramirez v. Mansions Catering, Inc.,
    74 A.D.3d 490 (1st Dep't 2010) .................................................................... 13

Reich v. Midwest Body Corp.,
    843 F. Supp. 1249 (N.D. Ill. 1994) ................................................................ 28

Reilly v. Richmond County Country Club,
    909 N.Y.S.2d 732 (2d Dep't 2010) ................................................................ 13

Samiento v. World Yacht Inc.,
    10 N.Y.3d 70 (2008) ............................................................................ passim

Satkin v. McConnell,
    759 N.Y.S.2d 302 (Sup. Ct., Orange County 2003) ........................................... 19

Spicer v. Pier Sixty LLC,
    2010 U.S. Dist. LEXIS 76782 (S.D.N.Y. July 26, 2010) ................................ 13, 14

V.S. v. Muhammad,
    595 F.3d 426 (2d Cir. 2010) ........................................................................ 14

Winans v. W.A.S., Inc.,
    772 P.2d 1001 (Wash. 1989) ....................................................................... 22

Yang v. ABCL Corp.,
    2005 U.S. Dist. LEXIS 31567 (S.D.N.Y. Dec. 5, 2005) ...................................... 29

**STATUTES**

29 U.S.C. §201 et seq. ................................................................................... 1

29 U.S.C. §203(m) ............................................................................. 21, 22, 24

29 U.S.C. §207(a) ....................................................................................... 27

29 U.S.C. §207(e) ....................................................................................... 27

Labor Law §196-d ................................................................................................passim

**RULES**

Local Civil Rule 56.1 ...............................................................................................2

Fed. R. Civ. P. 56(c) ................................................................................................2

Fed. R. Civ. P. 56(e) ................................................................................................3

**REGULATIONS**

29 C.F.R. §531.59..............................................................................................21, 22

29 C.F.R. §778.315 ...............................................................................................28

12 N.Y.C.R.R. §137-1.3 .........................................................................................27

12 N.Y.C.R.R. §137-2.1 ....................................................................................25, 26

12 N.Y.C.R.R. §137-2.2 .........................................................................................25

12 N.Y.C.R.R. §137-3.11 ..........................................................................................1

## PRELIMINARY STATEMENT

Defendants Fiskardo Estiatorio, Inc. d/b/a Thalassa Restaurant (the "Restaurant" or "Fiskardo"), Julia Makris, George Makris, Steve Makris, and Fantis Foods, Inc., submit this memorandum of law in opposition to plaintiffs' motion for partial summary judgment. As a preliminary matter, it is undisputed that Fiskardo is an enterprise engaged in interstate commerce and was (or is) plaintiffs' employer within the meaning of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 et seq. (the "FLSA") and the New York Labor Laws. Furthermore, defendants do not dispute liability as to "spread of hours" pay under the New York Labor Law, 12 N.Y.C.R.R. §137-3.11.[1]

Plaintiffs' request to find Julia Makris plaintiffs' "employer" within the meaning of the FLSA and NYLL because she is the sole shareholder of the Restaurant should be denied as Julia Makris does not have any control over or involvement in plaintiffs' employment at the Restaurant. As set forth in defendants' pending motion for partial summary judgment all claims against Julia Makris should be dismissed. Moreover, there is clearly an issue of fact as to whether Steve Makris meets the definition of "employer" under the FLSA or NYLL. Thus, summary judgment is not appropriate.

Further, plaintiffs' claim that defendants wrongfully withheld a portion of its mandatory service charge imposed on all banquets is unsupported by the evidence. Prior to February 2008, New York law was clear that mandatory service charges could not be deemed "gratuities" under NYLL §196-d as a matter of law. However, in Samiento v. World Yacht Inc., 10 N.Y.3d 70, 79 (2008), the New York Court of Appeals reversed years of prior regulatory and judicial authority by holding, that mandatory service charges may be deemed a "gratuity" or "purported to be a gratuity" under NYLL §196-d, and therefore entirely payable to the service staff, if a "reasonable customer" expected and understood that the service charge was paid in lieu of a gratuity. Defendants respectfully submit that, under an objective standard, no "reasonable customer"

---

[1] Defendants reserve their right to introduce evidence on the issue of damages.

could believe the entire service charge was intended to serve solely as a gratuity. Accordingly, summary judgment should be denied with respect to Count Seven. Moreover, if this Court determines that partial summary judgment in favor of plaintiffs is appropriate, <u>World Yacht</u> should not be applied retroactively because that holding propounded a "new rule" of law.

In addition, plaintiffs claim that the Restaurant failed to compensate employees pursuant to the FLSA and NYLL is without merit. Specifically, the Restaurant satisfied the federal and state minimum wage requirements by properly relying upon a "tip credit." Defendants informed its employees that they were taking a tip credit by posting signs within the Restaurant advising the employees of their rights and by speaking with employees at the time of hire to inform them they would receive an hourly rate plus tips. Defendants also complied with the reporting requirements under the NYLL. Therefore, the Restaurant was entitled to take the tip credit. Moreover, plaintiffs were paid overtime at one and one half times their "regular rate" after the tip credit. Thus, this portion of plaintiffs' motion should be denied.

Finally, plaintiffs' motion for liquidated damages is premature. The evidence demonstrates that defendants acted in good-faith. Additionally, prejudgment interest is not awardable and plaintiffs' request should be denied. Therefore, defendants respectfully request that the Court deny plaintiffs' motion for partial summary judgment.

### STATEMENT OF FACTS

The Court is respectfully referred to Defendants' Counterstatement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1.

### LEGAL ARGUMENT

## I.    THE SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate if the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the

basis for its motion and identifying the portions of the record that it claims demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

To withstand a properly supported summary judgment motion, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986) (quoting Fed. R. Civ. P. 56(e)). An issue is considered genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

There are genuine issues of material fact as to the following issues: (a) whether Steve Makris is an employer within the meaning of the FLSA and NYLL; (b) whether the mandatory non-negotiable service charge the Restaurant applied to all banquets (private parties) constituted a "tip" or "gratuity;" (c) whether the Restaurant failed to comply with federal and state minimum wage laws, (d) whether the Restaurant failed to comply with federal and state overtime laws, and (e) whether plaintiffs' are entitled to liquidated damages and prejudgment interest. Therefore plaintiffs are not entitled to partial summary judgment on those issues.

Furthermore, plaintiffs' are not entitled to summary judgment on the issue of whether Julia Makris is an "employer" because, as set forth briefly below and in detail in defendants' memorandum of law in support of their motion for partial summary judgment, Julia Makris should be dismissed from this action in her entirety.

## II.   THE RESTAURANT WILL PAY TO PLAINTIFFS SPREAD OF HOURS PAY.

Plaintiffs allege that the Restaurant failed to pay spread of hours pay from November 2002 to approximately December 2008. However, in <u>Heng Chan v. Triple 8 Palace, Inc.</u>, No. 03 Civ. 6048, 2006 WL 851749 ("<u>Heng Chan I</u>"), (S.D.N.Y. Mar. 30, 2006) the court interpreted the plain text of §142-2.4, the spread-of-hours provision, not to affect "workers whose total weekly compensation is already sufficiently above the minimum rate." <u>Id.</u> at *21. In other words, "If the total compensation is equal to or greater than the minimum wages due, including

compensation for an additional hour for each day in which the spread of hours exceeds ten," the spread-of-hours provision does not entitle the employee to any further payments. Id. See also Almedida v. Aguinaga, 500 F. Supp.2d 366, 369-370 (S.D.N.Y. 2007) (holding that the law was not intended to protect well paid workers with an additional hour of pay at minimum wage.)

Although the Restaurant believes it was in compliance with the New York Wage Order regarding spread of hours pay, the Restaurant does not dispute plaintiffs' motion for summary judgment as to liability. Where the records reflect that plaintiffs properly and actually worked in excess of 10 hours in a given day, the Restaurant will pay those plaintiffs' an additional hour at the minimum wage for the applicable time period. But the Restaurant does not agree to compensate plaintiffs who did not work in excess of 10 hours in a day and where they, among other things, failed to properly "clock in" and "clock out" from each work shift.

## III. JULIA MAKRIS AND STEVE MAKRIS ARE NOT "EMPLOYERS" UNDER THE FLSA OR NYLL.

Plaintiffs allege that Julia Makris and Steve Makris are individually liable for wage and hour violations, retaliation, and sexual harassment claims because they are employers of plaintiffs. But, for the reasons set forth in defendants' pending motion for partial summary judgment, and set forth briefly below Julia Makris is not an employer and she should be dismissed in her entirety. Further, there is an issue of fact as to whether Steve Makris is an employer.

### A. Julia Makris Is Not An "Employer" under the FLSA or NYLL.

Plaintiffs cannot demonstrate that Julia Makris is (or was) their "employer" under the FLSA and NYLL.[2] To the contrary, and as discussed in defendants' moving brief, the undisputed evidence establishes that Julia Makris is not an "employer" as a matter of law. Unable to show that Julia Makris has any direct or indirect control over employment-related

---

[2] Similarly, for the reasons set forth in defendants' moving brief, Julia Makris is not an "employer" under the New York State Human Rights Law or the New York City Human Rights Law.

matters at Thalassa, the best plaintiffs can claim is that Julia Makris occasionally made recommendations to her son (unrelated to employment issues) that were free to be ignored (akin to what a customer might leave on a comment card), received an "occasional update" about Thalassa, and executed corporate documents in her capacity as *shareholder*.  (J. Makris Decl., ¶ 9[3]; Ex. B[4], J. Makris Dep. Tr. 24:17-25:2; 35:11-36:10; Ashley Decl., Ex. 15.)  Those facts and the absence of the economic reality test factors, when examined under the totality of circumstances, demonstrate that Julia Makris is not an "employer" of any plaintiff.

Courts rely upon the "economic reality test" and look to the "totality of circumstances," to determine whether an individual qualifies as an employer under the FLSA and NYLL.  See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984).  Under the test, "the overarching concern is whether the alleged employer possesses the power to control the workers in question." Moon v. Kwon, 248 F. Supp. 2d 201, 236 (S.D.N.Y. 2002); accord Carter, 735 F.2d at 12 ("The power to control a worker clearly is a crucial factor...").  Also embodied within the economic reality test is whether the owner of a business exercises "operational control" by "control[ing] significant functions of the business."  Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003).  Plaintiffs, however, have not offered any evidence to demonstrate that Julia Makris controls their conditions of employment or has significant (or any) operational control over Thalassa.

Instead, the undisputed evidence demonstrates that Julia Markis has no control over or involvement in plaintiffs' employment relationship with Thalassa:

> - Julia Makris is not responsible for paying employees and does not determine the method by which they are paid, unlike the putative employer in Herman v. RSR Security Services, 172 F.3d 132, 140 (2d Cir. 1999), who signed the employees'

---

[3] The J. Makris Decl. refers to the Declaration of Julia Makris filed with defendants' motion for summary judgment found at Docket no. 102.

[4] All exhibits annexed to the Affirmation of Stephanie L. Aranyos ("Aranyos Aff."), dated December 17, 2010, are cited as "Ex. ___."

paychecks and determined the rate and method of payment. (J. Makris Decl., ¶ 6.)

- Julia Markis does not set the employees' wages and has no involvement in doing so. (Id.)

- Julia Makris never interviewed a prospective employee of the Restaurant and consequently, never hired any of the plaintiffs. (Id.)

- Julia Makris never fired an employee of the Restaurant. (Id.)

- Julia Makris was never consulted about decisions to hire or fire employees and she never provided advice or recommendations pertaining to hiring and firing to individuals who made those decisions. (Id., ¶ 8.)

- Julia Makris never set an employee's schedule, assigned employee's positions and was never consulted or gave recommendations about such decisions. (Id., ¶ 6.)

- Julia Makris does not maintain any employment records. (Id.)

- Julia Makris does not control, supervise, or give directions to employees directly or through others. (Id., ¶ 10.)

As a result of the lack of Julia Makris' control and involvement in the Restaurant, taken as part of the totality of circumstances, plaintiffs cannot satisfy the economic reality test and plaintiffs' claims against her must fail.

Furthermore, plaintiffs cannot demonstrate that Julia Makris exercised any "operational control" over Thalassa. The extent of Julia Makris' involvement with the Restaurant was to make recommendations about meals, service, and ambiance. (Id., ¶ 9.) However, as an indicator of her lack of control, those she made the recommendations to, such as Steve Makris or Tommy Ziotas, were free to disregard them. (Id.) Moreover, there is no dispute that Julia Makris was also not involved with the Restaurant's financial matters or its day-to-day operations. (Id., ¶¶ 6, 12.) Julia Makris' visits to the Restaurant, which plaintiffs rely upon as evidence of her status as an employer, were merely as a patron of the Restaurant. (Id., ¶ 11.)

Plaintiffs also rely upon Julia Makris' status as the sole shareholder and documents she signed in that capacity as a talisman for employer liability.   However, plaintiffs do not demonstrate (especially under the totality of circumstances) how being a shareholder translates into involvement in employment decisions or any operational control over Thalassa.   Status as a shareholder is not sufficient as a matter of law to be an employer under the FLSA or NYLL.   See Herman v. Blockbuster Entm't Group, 18 F. Supp. 2d 304, 313 (S.D.N.Y. 1998).

Moreover, the case law cited by plaintiffs does not support a finding that Julia Makris is an "employer."   In each of those cases, the court was able to point to the putative employer's deep involvement in setting the conditions of employment or day-to-day operations.   For example, in Herman, the alleged employer, unlike Julia Makris, had financial control over the company and three out of four factors of the economic reality test were satisfied.   172 F.3d at 136, 140.   Here, plaintiffs do not satisfy even one factor.   In addition, Julia Makris does not "personally oversee and operate the companies and their agents on a daily basis" like the alleged employers in Ansoumana, 255 F. Supp. 2d at 193.   See also Hernandez v. La Cazuela de Mari Rest., 538 F. Supp. 2d 528, 535 (E.D.N.Y. 2007) (defendants did "not challenge the fact that they owned, controlled and operated the restaurant...").   In Moon, the putative employer "played an intimate role in the day-to-day operations," worked out of an office in the business, and supervised and determined the plaintiff's responsibilities.   Moon, 248 F. Supp. 2d at 237.   There the alleged employer, unlike Julia Makris, "hardly was a distant corporate officer, with no role in setting the terms and conditions of employment."   Id.   Therefore, Julia Makris is not an "employer" under the FLSA and NYLL.

**B.**      **There is a Dispute of Fact as to whether Steve Makris is an "Employer" and in any event, Plaintiffs Cannot Satisfy the Economic Reality Test.**

Plaintiffs have not demonstrated that Steve Makris is an employer under the FLSA and NYLL and there exists material disputes of fact.   Specifically, plaintiffs cannot pass the economic reality test or demonstrate operational control during the operative time period

sufficient to attach "employer" liability under the FLSA and NYLL based on the totality of the circumstances.

Although admittedly Steve Makris had the authority to hire and fire employees, he rarely exercised that authority. The non-use of that authority, combined with the absence of other factors in the economic reality test demonstrates that Steve Makris is not an employer. Steve Makris has no ownership interest (S. Makris Decl.,[5] ¶ 3) in the Restaurant and his role was to serve as the "eyes and ears" for his mother, Julia Makris. (Ex. A, Fiskardo 30(b)(6) 22:22-24.) Prior to becoming general manager, Steve Makris never received a paycheck from Thalassa and he has never had a role in the Restaurant's finances; that is Tommy Ziotas' responsibility. (Ex. C, S. Makris 20:6-8; 23:11-23; T. Ziotas Nov. Decl.[6] ¶ 4.) In addition, Steve Makris was not on the front-lines of making employment-related decisions. Such tasks were generally the responsibility of the general manager (such as Sophia Zilo or Tasso Zapantis) and the Restaurant's chef. In addition, the employees' rate of pay was ultimately determined through conferral with Tommy Ziotas, who periodically consulted with an accountant regarding the Restaurant's wage and hour obligations. (Ex. C, S. Makris 59:11-21.) As a result, he had minimal involvement in setting conditions of employment. Lastly, Steve Makris did not maintain any employment records.

These assertions demonstrate that, at a minimum, there exists a material dispute of facts and that plaintiffs cannot satisfy the economic reality test to hold Steve Makris liable as an "employer."

---

[5] The "S. Makris Decl." refers to the Declaration of Steve Makris filed with defendants' motion for partial summary judgment found at Docket no. 104.

[6] The "T. Ziotas Nov. Decl." refers to the Declaration of Tommy Ziotas filed with defendants' motion for partial summary judgment found at Docket no. 108. "T. Ziotas Dec. Decl." refers to the Declaration of Tommy Ziotas, accompanying this opposition Brief filed December 17, 2010.

IV.   **THE RESTAURANT COMPLIED WITH THE LAW REGARDING MANDATORY SERVICE CHARGES AND THEREFORE PLAINTIFFS' CLAIM FOR UNPAID GRATUITIES UNDER NYLL §196-D SHOULD BE DENIED.**

The Restaurant has always complied with the law regarding service charge payments, NYLL §196-d, and its accompanying case law. Therefore, the Restaurant was free to retain all or any portion of the mandatory service charge it imposed upon all banquets. NYLL §196-d (McKinney 2010). Even under the recently established "reasonable customer" standard to determine when a service charge is actually a "gratuity" for purposes of NYLL §196-d. However, if defendants are liable under the new World Yacht rule, that holding should only be applied prospectively.

A.   **Plaintiffs Are Not Entitled To The Portion of the Service Charge Retained by the Restaurant.**

Plaintiffs claim that the service charge was in fact a "gratuity" or a "charge purported to be a gratuity" is unsupported by the facts and law. Thalassa's service charge was a mandatory service charge, which included a gratuity component. However, World Yacht does not affect the conclusion that the service charge was not a "gratuity" or "charge purported to be a gratuity."

NYLL §196-d states, in relevant part, that:

> No employer...shall demand or accept...any part of the gratuities received by an employee, or retain any part of a gratuity, or of any charge purported to be a gratuity for an employee.

In February 2008, the decision in World Yacht represented a sudden reversal of prior case law and other legal authority on the issue of mandatory service charges. World Yacht[7] involved a claim that a dinner cruise company that held various banquet events on its ships

---

[7] Defendants note World Yacht dealt simply with an employer's motion to dismiss, and set forth a new standard for pursuing claims under NYLL §196-d; it did not make any findings on the merits. The fact that the World Yacht court reinstated a similar claim is irrelevant because that decision was not made in the context of a motion for summary judgment, but in connection with a motion to dismiss at the pleading stage where the plaintiffs need only establish that "the facts as alleged fit within any cognizable legal theory." World Yacht, Inc., 10 N.Y.3d 70, 79.

violated NYLL §196-d by failing to distribute its mandatory service charge payments to its wait staff. The Court of Appeals overturned precedent and held, for the very first time, that: (1) a mandatory service charge may be deemed a "gratuity," or at least a charge which is "purported to be a gratuity," under NYLL §196-d if it was "represented to the consumer as compensation to the defendants' wait staff in lieu of the gratuity;" and (2) the determination as to whether a particular mandatory service charge constituted a "gratuity" under NYLL §196-d should be based on "the expectation of the reasonable customer." 10 N.Y.3d 70, 79. However, <u>World Yacht</u> is inapplicable here. There, the company's representatives informed their customers that the entire service charge was paid to the service staff when, in actuality, the service staff did not receive any portion of the service charge. <u>See id.</u> at 75.[8]

It is undisputed that Thalassa has been providing its employees with over half of the revenue generated from each service charge payment collected. Therefore, plaintiffs are only seeking the unpaid portion retained by the Restaurant.[9] <u>See</u> T. Ziotas Dec. Decl., ¶ 9. Thus, even assuming, the <u>World Yacht</u> standard was applied retroactively in this case, to succeed on their NYLL §196-d claim, plaintiffs would be required to establish that Thalassa represented or led its customers to believe that the <u>entire</u> service charge payment was intended to be provided to the wait staff as a "gratuity."

Plaintiffs, however, have failed to produce sufficient admissible evidence to warrant summary judgment on their claim that Thalassa's customers had any reasonable expectation that

---

[8] As elaborated in subsection B, <u>infra</u>, prior to the <u>World Yacht</u> decision, the body of authority and case law in New York clearly established that a mandatory service charge was not a gratuity under NYLL §196-d, regardless of the customers' expectations. <u>See</u>, <u>e.g.</u>, <u>Chung v. New Silver Palace Restaurant</u>, 246 F. Supp.2d 220, 229 (S.D.N.Y. 2002) (NYLL §196-d "excludes from its reach fixed service charges for banquets or other special events"). Thus, prior to the World Yacht, Thalassa was simply operating under the state of the law regarding mandatory service charge payments. And, accordingly should not be found liable for retaining gratuities.

[9] The 20% service charge for each event is distributed by the Restaurant as follows: 25% of the 20% is retained by the Restaurant; 2.5% goes to the banquet manager (frequently, plaintiff Henry Matute); and the remainder distributed to the tip pool.

the service charge would be distributed in its entirety to the wait staff. The record here shows that: (1) Thalassa's customers do not believe that the mandatory service charge was being imposed solely as a gratuity, or as a payment in lieu of a gratuity; and that (2) Thalassa never represented or otherwise led its clients to believe that the entire 20% service charge was being paid as a gratuity.

Banquets[10] are large parties that include, among other things, pre-planned menus. Plaintiffs' argument that Thalassa's clients believed the entire service charge was intended solely as a gratuity for the wait staff is misleading and is based on nothing more than pure speculation as plaintiffs failed to obtain any statements or testimony from a single customer, which provides any evidence to the contrary. Although rare, when one of Thalassa's customers wished to provide an additional gratuity, they have done so explicitly at the conclusion of the event, further demonstrating the customers' knowledge that the service charge was not intended just as a gratuity for the wait staff. See T. Ziotas Dec. Decl. ¶ 8, and Ex. A. Further, Thalassa's customers did not express any interest as to what portion of the service charge the wait staff were being paid or any other aspect of compensation. See T. Ziotas Dec. Decl. ¶ 7; Ex. G, S. Zilo 151:20-24.). Rather, Thalassa's customers were concerned with their budgets and total contract price. Indeed, Mr. Zapantis merely hoped customers would "pay face value," but had room to negotiate except on certain standard terms, including the service charge, which were non-negotiable. (Ex. D, T. Zapantis 114:14-23, 124:11-12.) This was because the Restaurant, having experience with how customers try to spend their whole budget for menu items, etc., wanted to ensure that the wait staff would receive a fair gratuity from the banquets; therefore the service charge included a tip component. (T. Ziotas Dec. Decl. ¶ 6.) Indeed, as Ms. Zilo pointed out, "a service charge can encompass something other than a tip." (Ex. G, S. Zilo 152:5-7.) Which is precisely what it did here, the mandatory service charge included a tip component and also a house component for marketing and other ways to generate business. (Ex. C, S. Makris 34:16-18; 124:5-9.)

---

[10] The terms "banquet" and "private parties" are used interchangeably at Thalassa. (Ex. G, S. Zilo 145:21-23; T. Ziotas Dec. Decl. ¶ 3.)

Given the clear rule of law concerning the treatment of mandatory service charges under NYLL §196-d at the time, and relying upon its own knowledge and understanding of the law and industry standard on this issue, Thalassa operated in good faith under the working assumption that its mandatory service charge could not be deemed a "gratuity" because, unlike gratuities, it was a mandatory charge imposed on its clients for each event. T. Ziotas Dec. Decl. ¶ 5 and 11. Therefore, if the <u>World Yacht</u> standard is applied retroactively, which it should not be, there is a question of fact whether Thalassa's clients had any expectation – "reasonable" or not – that the entire service charge was being paid to the staff as a gratuity or as a payment in lieu thereof.

Furthermore, because the 20% added to the private parties was a mandatory service charge, defendants were entitled to pay wages of part-time employees and the banquet manager from the service charge. The distribution of the service charge was as follows: 25% of the 20% is retained by the Restaurant and is used to pay for marketing, to promote banquets advertisements, promotions; 10% goes to the banquet manager; and the remainder was distributed into the tip pool.  (Ex. A, Fiskardo 30(b)(6) 109:12-110: 9; 112:6-12.)

Finally, Thalassa's post-<u>World Yacht</u> contracts clearly explained service charges.  After the <u>World Yacht</u> decision, Thalassa revised its banquet contracts to explain the service charge. The revisions included providing the customer the following explanation under the title **"Tax, Service and Processing Fees"**:

> A 20% service fee will be added to your bill. Generally 15% of this fee will be provided to the service staff as a gratuity, although for certain events the service staff's share may be a few percentage points higher or lower. Generally, 5% of the service fee (or remaining percentage in certain circumstances) will be retained by the house for non-service staff who have worked on your event. The portion of the service fee provided to the service staff as a gratuity is not subject to customer sales tax. Feel free to inquire about the allocation of the service fee at your event and/or any additional gratuity payment you may care to make.

<u>See</u> T. Ziotas Decl. ¶ 12, Ex. B.

In or about December 2008, Thalassa revised the banquet contracts further. The latest revision and current contract, includes telling the customers that a "15% gratuity is added to your bill." Thalassa does not retain any portion of the 15% gratuity. See T. Ziotas December Decl. ¶ 13, Ex. C. Thus, from the Fall 2008 to present, the Restaurant did not retain any money that a "reasonable customer" could perceive as a "gratuity." See T. Ziotas Decl. ¶¶ 12, 13; S. Makris 33:5; 33:13-16). Accordingly, any claims that plaintiffs may have for an unpaid portion of the mandatory service charge payments from November 2008 forward is foreclosed.

**B.      World Yacht Should Not Be Applied Retroactively.**

Even if plaintiffs are entitled to partial summary judgment, World Yacht should be applied prospectively because it established a "new rule."

Retroactivity is a question of New York state law. Spicer v. Pier Sixty LLC, 2010 U.S. Dist. LEXIS 76782, *12 (S.D.N.Y. July 26, 2010). However, the Court of Appeals in World Yacht did not speak to the issue of whether its holding should be applied retroactively. Only the Appellate Division, First Department, has addressed this issue. Ramirez v. Mansions Catering, Inc., 74 A.D.3d 490, 491 (1st Dep't 2010)[11]. In Ramirez, the First Department found that World Yacht applied retroactively because it did not constitute the creation of a new rule of law, but rather it was "[a] judicial decision construing the words of a statute." Id. at 492. The First Department further found that the issue of whether mandatory service charges could constitute gratuities had not been authoritatively resolved. And, finally the court stated that "the Court of Appeals' construction of Section 196-d was 'foreshadowed' by the plain meaning of the term 'gratuity,' as used in the statute (Gurnee, 55 N.Y.2d at 192)." Id. As discussed further below, like the court in Spicer, 2010 U.S. Dist. LEXIS 76782, *12, the First Department erred in its findings and it is likely the New York Court of Appeals would reverse its holding.

---

[11] The retroactive application of World Yacht is also being litigated in the Second Department. See Reilly v. Richmond County Country Club, 909 N.Y.S.2d 732 (2d Dep't 2010).

"When a question of state law has only been addressed by an intermediate state court and has not yet been addressed by the state's highest court, a federal court is 'bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.'" Spicer v. Pier Sixty LLC, 2010 U.S. Dist. LEXIS 76782, *12 (S.D.N.Y. July 26, 2010) (citing V.S. v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010.)

The Southern District of New York in the Spicer decision also addressed the issue of retroactive application of the World Yacht decision. However, the Court erred in finding that the World Yacht decision did not create a new rule and that defendants did not present persuasive evidence that the Court of Appeals would reverse Ramirez. For the reasons established below, this Court should decline to follow the Spicer decision.

In concluding that World Yacht did not create a new rule, and thus should be applied retroactively, the court relied upon the holding in Gurnee, that "'[a] judicial decision construing the words of a statute [for the first time] does not constitute the creation of a new legal principle,'" Spicer 2010 U.S. Dist. LEXIS 76782, at *11. (citing Gurnee, 55 N.Y.2d at 192). In Gurnee, unlike here, there were no prior judicial decisions on the issue in question. See 55 N.Y.2d at 190. It was in that context that the Court in Gurnee concluded that its interpretation of the statute at issue did not constitute a "new rule" of decisional law. Id. at 194. By contrast, here, numerous pre-World Yacht cases consistently applied a contrary rule.

Furthermore, the court's finding that the rule announced in World Yacht was clearly foreshadowed should not be followed because it was based upon dicta in a footnote in Bynog v. Cipriani Group, Inc., N.Y. 3d 193, 199 n. 4 (2003). In that footnote, the Court of Appeals reserved judgment on the limited issue of whether the plaintiffs in that case would be entitled to a share of the service charge under NYLL §196-d if they were deemed employees. Indeed, in 2006, three years after the New York Court of Appeals reserved judgment in Bynog, the NYDOL issued three separate opinion letters on February 22, May 19, and August 2, all stating, that in Bynog, "the First Department held, and the Court of Appeals, New York's highest court,

confirmed, that a service charge 'is not in the nature of a voluntary gratuity presented by a customer in recognition of the waiter's service, and therefore need not be distributed to the waiters pursuant to Labor Law §196-d, notwithstanding that the customer might believe the charge is meant to be so distributed.'" 8/2/06 NYDOL Ltr., Ex. V (quoting Bynog, 748 N.Y.S.2d at 11); 2/22/06 NYDOL Ltr., Ex. T (same); 5/19/06 NYDOL Ex. U. Similarly, as discussed below, courts continued to hold that mandatory services charges were not voluntary gratuities within the meaning of NYLL §196-d. See, e.g., Lu, 503 F. Supp. 2d 706, 710 (S.D.N.Y. 2007); see also Chung, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002). Thus, Bynog did not clearly foreshadow the contrary rule announced in World Yacht.

Prior to the World Yacht decision, the body of authority and case law in New York clearly established that a mandatory non-negotiable service charge was not a gratuity under NYLL §196-d, regardless of the customers' expectations. In 1995, the New York Department of Labor ("NYDOL") issued a statewide memorandum ("1995 Memorandum"), which announced that "[e]ffective immediately, service charges will not be considered gratuities" under NYLL §196-d. And, thus, was not "required to be distributed to employees." Ex. N. The NYDOL advised employers that mandatory service charges were not gratuities.

The case law in New York followed suit and consistently found that mandatory service charges were not "gratuities" under NYLL § 196-d. Cf. Chan v. Sung Yue Tung Corp., No. 03-Civ-6458, 2007 U.S. Dist. LEXIS 7770, at *6 (S.D.N.Y. Feb 1. 2007). In Chan, the court found that the 15% surcharge at issue in that case was not mandatory, and that the banquet hosts occasionally refused to pay the charge or paid "significantly less." Id. at *5.

In Bynog v. Cipriani Group, Inc., 748 N.Y.S.2d 9 (1st Dep't 2002), aff'd as modified, 770 N.Y.S. 2d 692 (2003), a group of temporary waiters filed suit seeking, among other things, the entire 22% mandatory "service charge" the banquet facility-employer charged its customers. Id. The Court held that, because such mandatory service charges were "not in the nature of a voluntary gratuity presented by the customer in recognition of the waiter's service," the service charges "need not be distributed to the waiters pursuant to Labor Law 196-d, notwithstanding

that the customer might believe that the charge is meant to be so distributed." Id. (emphasis added). The Appellate Division affirmed the lower court's decision to grant summary judgment to the banquet facility-employer on the plaintiffs' NYLL §196-d claim. Id. Further, the New York courts repeatedly held that the customer's expectations were irrelevant in determining whether a mandatory service charge was a "gratuity" under NYLL §196-d. See, e.g., Bynog, 748 N.Y.S.2d 9, aff'd as mod., 770 N.Y.S.2d 692 (2003); see also Chung, 246 F. Supp.2d at 229 (NYLL §196-d "excludes from its reach fixed service charges for banquets or other special events").

In Lu, 503 F. Supp. 2d at 710, the Court expressly stated that this precise issue was "not an open question under New York law" and granted the employer summary judgment on claims identical to the ones brought by here. In Lu, a number of waiters brought suit against their restaurant-employer alleging, among other things, that they were entitled to the entire 15% service charge the restaurant charged its customers for private banquets, not simply the portion of the service charge they were receiving at the time. Id. at 709. In granting the restaurant-employer's motion for summary judgment on this claim, this Court held that mandatory service charges could not be deemed "gratuities" under NYLL §196-d as a matter of law because they were not voluntary payments and, in so holding, expressly rejected the plaintiffs' argument that the inquiry "requires examination of both the impression given to customers and the tax treatment of the fees." Id. at 710. The wait staff in that case received 65% of the service charge payments, with the remaining 35% being retained by the restaurant-employer. Id. at 709.  In affirming the lower court's dismissal of the NYLL §196-d claims, the Appellate Division held:

> All of these patrons paid a mandatory service charge that was not in the nature of a voluntary gratuity, and thus the failure to remit any of this charge to the waitstaff did not constitute a violation of [NYLL] section 196-d, notwithstanding defendants' treatment of the charge for sales or income tax purposes, and the fact that certain patrons believed the charge to be in the nature of a gratuity.

Id. at 3

The case law developed over the years, as well as the NYDOL's 1995 Memorandum shows that the New York Court of Appeals would likely reverse <u>Ramirez</u> because the "reasonable person" standard announced in <u>World Yacht</u> constitutes a "new rule" that was not "clearly foreshadowed."

A case should be applied prospectively where there is "change in decisional law", which includes those decisions which represent "a judicial holding overruling established precedent" and those which represent "a dramatic shift away from customary and established procedure." <u>People v. Favor</u>, 82 N.Y. 2d 254, 263 (1993); <u>see also</u> <u>Busa v. Busa</u>, 609 N.Y.S.2d 452, 453 (3d Dep't 1994) (describing new law as a "sharp break from our prior practice") (internal citations and quotations omitted). The <u>World Yacht</u> decision is a change in decisional law, therefore the Court need not apply its holding retroactively.

Retroactive analysis is required where a case itself established "a new rule of law in this State or, in the alternative, merely 'applie[d] previously established principles in a new factual setting or settle[d] a question in a manner that was clearly foreshadowed'" <u>People v. Martello</u>, 93 N.Y.2d 645, 651 (1999); <u>see also</u> <u>People v. Favor</u>, 82 N.Y. 2d 254, 263 (1993) (noting that any "judicial holding overruling established precedent should, in most cases, be considered a 'new' rule" for purposes of the court's retroactivity analysis).

Although the December 1, 2008 opinion letter cited by plaintiffs in the Ashley Decl. at Ex. 133, states that the March 26, 1999 NYDOL Opinion Letter effectively superseded the 1995 Memorandum, that is not an accurate statement. In fact, the Court's reliance on it in <u>World Yacht</u> was surprising because the March 26, 1999 Opinion Letter was a clear anomaly. Indeed, the NYDOL continued to endorse the 1995 Memorandum after March 1999:

- On August 11, 1999, the NYDOL issued an opinion letter confirming that "the Division still follows" the 1995 Memorandum. Ex. O.

- On March 24, 2000, the NYDOL enclosed a copy of the 1995 Memorandum with an opinion letter, stating: "On June 1, 1995, the Department issued the enclosed guidelines . . ., pursuant to which a

-17-

charge denominated a 'service charge' will not be considered a 'charge purported to be a gratuity[.]'" Ex. P.

- On March 12, 2001, the NYDOL again enclosed a copy of the 1995 Memorandum with an opinion letter, stating: "[I]f the service charge is imposed in connection with a banquet or other special function, it is exempted from the application of the statute and need not be distributed to employees, pursuant to the enclosed June 1, 1995 memorandum[.]" Ex. Q.

- On September 25, 2001, the NYDOL issued an opinion letter, stating: "If the service charge is added . . . in connection with a banquet or other special function, it is exempt from the statute's application." Ex. R.

- On November 8, 2004, the NYDOL again enclosed a copy of the 1995 Memorandum with an opinion letter, describing such enclosure as follows: "a copy of a June 1, 1995 memorandum . . . which sets forth the Division's present policy, [and] states that a service charge is not considered a gratuity[.]" Ex. S.

- On February 22, 2006, the NYDOL issued an opinion letter, stating: "neither the Tax Law, the federal or State Labor Laws, the regulations promulgated thereunder, the case law interpreting them, nor the [June 1995] memo contain any requirement that any restaurant withholding part of a service charge from its employees 'notify the banquet customer of that fact, thus ensuring transparency and accountability.'" Ex. T.

- On May 19, 2006, the NYDOL issued another opinion letter, which stated that "[n]either the FLSA, the regulations promulgated thereunder, the New York State Labor Law, the case law interpreting it, nor the New York State Tax Law considers service charges to be gratuities." Ex. U.

- On August 2, 2006, the NYDOL issued yet another opinion letter, stating: "Under both State and Federal law, 'service charges' are not gratuities and are not required to be distributed to employees." Ex. V.

The most clear and significant example demonstrating that the NYDOL continued to follow the 1995 Memorandum is its reliance on the 1995 Memorandum to train restaurateurs. Three and a half months before World Yacht was decided, but only two and a half months before it was argued, the NYDOL faxed the 1995 Memorandum to counsel for the New York State

-18-

Restaurant Association, New York City Chapter ("NYSRA") for the purpose of distributing it to members of the NYSRA who were attending a November 1, 2007 training program presented jointly by the NYDOL and NYSRA. Ex. W at page 13. Thus, throughout the period at issue, the NYDOL repeatedly relied upon the 1995 Memorandum and advised employers that mandatory service charges were not gratuities

As set forth above, prior to World Yacht, the law in New York was clear that mandatory service charges could not be considered gratuities under NYLL §196-d as a matter of law, regardless of the customers' expectations. The World Yacht decision, overruled longstanding precedent and industry practice regarding the treatment of mandatory service charges under New York law, and essentially legislated a new potential liability for employers and a potentially new cause of action for staff, enabling them to pursue claims for service charges if they can some how establish that a "reasonable customer" would have been led to believe that the service charge was actually a gratuity for the staff based on employer's conduct, even though the charge was mandatory.

When determining whether such a new rule of law should be given retroactive effect, New York courts should consider three factors: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application. See People v. Martello, 93 N.Y.2d 645, 650-51 (1999); Satkin v. McConnell, 759 N.Y.S.2d 302, 305 (Sup. Ct., Orange County 2003). Applying those three factors, retroactive application of World Yacht is not warranted.

First, in World Yacht, the defendant employer at issue allegedly "told inquiring customers that the 20 percent service charge [was] remitted to defendants' wait staff as the gratuity, but then failed to distribute any amount of the service charge to its wait staff." 10 N.Y.3d at 75. (emphasis added.) Based on these alleged facts, the Court held that such mandatory service charges could now be deemed "gratuities" if such charges had been falsely "represented to the consumer as compensation to the defendants' wait staff in lieu of a gratuity." Id. at 79. The court's purpose in reversing its longstanding precedent regarding mandatory

service charges was to ensure that those companies who make intentional egregious misrepresentations to their clients were no longer shielded from liability.

The court's purpose in extending the liability would not be further served by retroactively applying the World Yacht decision here, as Thalassa did distribute a substantial portion of the service charge to its employees and there is no evidence or allegations that Thalassa engaged in misconduct with its own clients. Thalassa advised its clients that the service charge includes a tip component for its wait staff. See T. Ziotas Dec. Decl. ¶ 13. Thus, this is simply not the type of case the World Yacht court was concerned with when it rendered its decision.

Second, Thalassa relied upon the pre-World Yacht rule, and industry standard, that the service charge could not be deemed a "gratuity" as a matter of law as long as the charge was mandatory in nature. See T. Ziotas Dec. Decl. ¶ 11. The retroactive application of World Yacht is inappropriate in this case. See Martello, 93 N.Y.2d at 651 (refusing to give retroactive effect to a new case law rule regarding the necessity of a warrant prior to using a certain eavesdropping device because, among other reasons, law enforcement authorities had "relied extensively on this State's previous rule of law that no warrant . . . was required" in its previous investigations). Finally, the effect on the administration of justice further compels a finding that the World Yacht decision should not be applied retroactively. Prior to the World Yacht decision, Thalassa was simply operating under the then-current and clear law regarding mandatory service charge payments. A decision which would potentially require Thalassa to now compensate its former and current wait staff with the unpaid portion of the service charge payments from all of the events in the six years preceding the World Yacht decision would unfairly prejudice a company which had always been complying with the law in good faith. See Busa, 609 N.Y.S.2d at 453 (refusing to give retroactive effect to a new case law requirement for the finalization of divorce proceedings because to do so would have the effect of "destabilizing divorce judgments long considered final."). All of the companies which impose similar mandatory service charges would thus be subject to the same type of lawsuits and the same level of retroactive liability as Thalassa faces here, regardless of whether they operated in good faith prior to the World Yacht decision.

In light of the above, the New York Court of Appeals' decision in <u>World Yacht</u> should not be applied retroactively in this case. Rather, plaintiffs' claim for the entire service charge payments for all of its events booked[12] prior to <u>World Yacht</u> should be dismissed with prejudice.

## V.   THE RESTAURANT PAID THE STATUTORY MINIMUM WAGE REQUIRED UNDER NEW YORK LAW AND THE FLSA.

It is undisputed that plaintiffs (except for Aussencio Ramirez) were compensated through an hourly wage plus tips. <u>See</u>, <u>e.g.</u>, Ex. J, S. Lopez 39. An employer may "pay tipped employees an hourly rate less than the minimum wage, by allowing them to credit a portion of the actual amount of tips received by the employee against the required hourly minimum wage." <u>Chung</u> 246 F.Supp.2d at 228; 29 U.S.C. §203(m); 29 C.F.R. §531.59. Plaintiffs allege that the Restaurant was not entitled to take a tip credit under either federal or state law because it failed to meet the statutes requirements by (1) not providing proper notice of the tip credit to its employees and (2) by illegally retaining a portion of the mandatory service charge imposed on all banquets. However, as set forth in detail below, the Restaurant satisfied the minimum wage requirement by properly relying upon the "tip credit" and was in full compliance with the FLSA, NYLL, and the New York Wage Order.

### A.   The Restaurant Satisfied The FLSA Requirements And Were Entitled to Take a Tip Credit.

Section 3(m) of the FLSA and corresponding regulations allow employers to use a tip credit which allows restaurants to pay employees below minimum wage and credit the tips the employees receive to make up the difference between the hourly wage paid by the employer and the minimum wage. 29 U.S.C §203(m); 29 C.F.R. §531.59. A "tip credit" is the amount of an employee's tips that the employer can use to make up the difference between $2.13 per hour and the $7.25 minimum wage. 29 U.S.C. §203(m). If an employer elects to use the tip credit

---

[12] Defendants note that most of Thalassa's events are booked at least several months in advance of the actual event date. Thus, there are a number of events which may have been booked prior to <u>World Yacht</u>, which provided that mandatory service charges could not be deemed "gratuities" under NYLL § 196-d as a matter of law. <u>See</u>, <u>e.g.</u>, <u>Bynog</u>, 748 N.Y.S.2d at 9.

provision, the employer must: (1) inform each tipped employee about the tip credit allowance (including the amount to be credited) before the credit is utilized and (2) be able to show that "all tips received by such employee have been retained by the employee, except this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. §203(m); <u>Winans v. W.A.S., Inc.</u>, 772 P.2d 1001 (Wash. 1989)

While the employer must provide notice to employees, it is not required to explain the tip credit. <u>Kilgore v Outback Steakhouse</u> 160 F.3d 294, 298, (6th Cir. 1998).

> As to how the employer may deliver that information to the employee, we conclude that an employer must provide notice to the employees, but need not necessarily "explain" the tip credit … The statute requires that the employee be "informed" of the tip credit. As the magistrate judge concluded, "inform" requires less from an employer than the word "explain" would.

<u>Kilgore</u>, 160 F.3d at 298; <u>see also</u> <u>Chan v. Triple 8 Palace, Inc.</u>, 2006 U.S. Dist. LEXIS 15780, 2006 WL 851749 * 19 (S.D.N.Y. 2006) (citing <u>Kilgore</u>, 160 F.3d at 298).

Here, defendants did properly "inform" its employees that they were taking a tip credit by posting signs within the Restaurant advising the employees of their rights and by speaking with employees when they are hired and informing them that they would receive an hourly rate plus tips.

From 2002 to present the Restaurant posted notices which detailed the minimum wage laws. (Ex. C, S. Makris 182:19-183:2; Ex. A, Fiskardo 30(b)(6) 129:13-17; 130; 130:23-131:4; Ex. E, Abrahante 32:23-33:25.) The Restaurant prominently displayed the sign within the restaurant on the wall across from the employees' locker room, where all employees could see it. (Ex. E, Abrahante 33:2-3.) Furthermore, there is testimony from Chef Abrahante that the sign was in both English and Spanish. (<u>Id.</u>, 33:25.) A poster is sufficient notice where the contents are sufficient and it is prominently displayed. <u>Davis v. B&S, Inc.</u>, 38 F. Supp. 2d 707 (N.D. Ind. 1998). An employer can satisfactorily convey notice of the tip credit by way of a poster, if the content of the poster is otherwise sufficient and it is prominently displayed. <u>See</u>, <u>Marshall v. Gerwill, Inc.</u>, 495 F. Supp. 744, 753 (D. Md. 1980); <u>cf.</u> <u>Tango's Restaurant</u>, 969 F.2d 1319, 1322

(1st Cir. 1992) (recognizing that notice of the tip credit should not be difficult for the employer to provide).

Not only did the Restaurant prominently post notices of the employees' rights, it was the Restaurant's policy that management would speak to employees about "how much money they would earn and if there was overtime and the rate of the overtime." (Ex. A, Fiskardo 30(b)(6) 131:21-24.) Furthermore, to ensure compliance, Tommy Ziotas kept abreast of minimum wage requirements by speaking with an accountant to ensure the Restaurant was paying wages in accordance with the minimum wage laws. (Ex. C, S. Makris 59:8-10; 59:16-21; Ex. A, Fiskardo 30(b)(6) 133:5-24.)

Plaintiffs' contention that there is "no testimony from Defendants or their agents that they ever discussed minimum wage with Plaintiffs even generally" is misleading and false. (Plaintiffs' Br. p. 14.) Indeed, Sophia Zilo, General Manager (responsible for hiring), clearly testified that she discussed with potential employees "their either salary, wage" and "the payment structure" when they were hired. (Ex. G, S. Zilo 36:10-20; 32:7-16, 105:14-18.) She further stated that the restaurant paid what it was required to by law, which was an hourly rate plus tips. (Ex. G, S. Zilo 39:7-8; 102:10-12; 102:24-103:7.)

Furthermore, Tasso Zapantis, who was the General Manager immediately following Ms. Zilo also testified that he told potential employees that their wage would be "part hourly wage and part tips." (Ex. D, T. Zapantis 212:1-2) And most tellingly, Sait Dogan, the Restaurant's former maitre d', acknowledged that when he was hired Steve Makris "of course" informed him of his compensation and that he would be paid an hourly rate plus a tip share. (Ex. F, S. Dogan 24:16-21.) And, although it is disputed what authority Mr. Dogan subsequently exercised over the hiring process, it is undisputed that Mr. Dogan met with potential candidates. During his deposition, Mr. Dogan testified that the Restaurant would tell employees that they would be compensated with an "hourly wage" and "tip" and the Restaurant would provide an explanation of the tip pool and point system and how they would be paid and the number of points they would receive. (Ex. F, S. Dogan 64:18-24.) Moreover, Mr. Dogan stated that he would tell them

"how much per hour" and that in addition to "per-hour they will get plus-tips." (Ex. F, S. Dogan 65:7-8; 65:13-14.)[13]

Accordingly the Restaurant was in full compliance with the minimum wage notice requirements by posting relevant signs in the Restaurant and by informing its employees during the hiring process. Moreover, as set forth in Point IV, the service charge was not a tip and thus, "all tips received by such employee have been retained by the employee." 29 U.S.C. §203(m).

**B.     The Restaurant Satisfied The NYLL Requirements And Were Entitled to Take a Tip Credit.**

Further, New York also allows employers to take a tip credit. The New York Wage Order for the Restaurant Industry specifically provides and allows employers to pay food service workers an hourly rate below the New York State minimum. Section 137-1.5 specifically states:

> Tip allowance for food service worker. (a) On or after March 31, 2000, a food service worker shall receive a cash wage of at least $3.30 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $5.15 per hour. (b) On or after January 1, 2005, a food service worker shall receive a cash wage of at least $3.85 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $6.00 per hour. (c) On or after January 1, 2006, a food service worker shall receive a cash wage of at least $4.35 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $6.75 per hour. (d) On or after January 1, 2007, a food service worker shall receive a cash wage of at least $4.60 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $7.15 per hour. (e) On or after July 24, 2009, a food service worker shall receive a cash wage of at least $4.65 per hour, provided that the tips of such worker, when added to such cash wage, are equal to or exceed $7.25 per hour.

For an employer to avail itself of the "tip allowance" the employer must "furnish to each employee a statement with every payment of wages listing….allowances…claimed as part of the

---

[13] Even some plaintiffs testified that they were informed of the hourly rate plus tips. See, generally, S. Lopez 39 (management explained hourly rate plus tips); Diaz de la Vega 100 (when he became a full time employee, he learned he would receive an hourly rate plus tips); Guachun 30 (was told about wage and tips).

minimum wage…." 12 N.Y.C.R.R. §137-2.2 and "maintain and preserve for not less than six years weekly payroll records which shall show for each employee…allowances…claimed as part of the minimum wage…." 12 N.Y.C.R.R. §137-2.1. It is undisputed that defendants met both of these requirements.

First, as discussed, <u>infra</u> Point V.A., Thalassa employees were properly informed of the tip credit and their hourly rate and plus tips. In addition, contrary to plaintiffs' assertions, the Restaurant plainly complied with the §137-2.2 requirements by providing employees "a statement with every payment of wages" that listed the hourly rate, hours worked, tips disbursed, deductions, and allowances. Indeed, in discovery, plaintiffs produced payroll records they maintained that contained that information. Ex. X; <u>See</u> <u>also</u> Ashley Decl. Ex. S 34-35, 37, 42, 47, 50-57, 61-63, 66, 70, 71-74. Second, the Restaurant has properly maintained payroll and employment documents and produced over 20,000 pages of payroll records dating back to 2002. The Restaurant maintains (and has produced) its payroll records showing hours worked, wages paid, overtime paid, tip disbursements, and any allowances or deductions. The Restaurant also produced employee time cards, schedules, and tip distributions. Ex. Y; <u>See</u> <u>also</u> Ashley Decl. 21-24, 31-32, 40, 43, 45-47, 58-59, 64-65, 67-68. As a result, the Restaurant has fully complied with the New York Wage Order and is entitled to a tip credit.

Plaintiffs rely on <u>Padilla v. Manlapaz</u>, 643 F. Supp. 2d 302 (E.D.N.Y. 2009), to support their contention that the Restaurant failed to meet its eligibility requirements to use take the tip credit. But, <u>Padilla</u> is inapplicable and distinguishable from this case. In that case, a waitress brought suit against her employer alleging, among other things, that it failed to pay overtime and New York State minimum wage. Plaintiff had worked for the restaurant from approximately October 2003 until May 2006. <u>Id.</u> at 306. Defendant-employer did not furnish the Court "with any employment records establishing the precise number of hours worked by plaintiff" and "failed to preserve or present employment records" (except from November 7, 2005 to May 11, 2006). <u>Id.</u> at 308. Because defendants failed to produce any payroll records it immediately failed to meet the recording keeping requirement of 12 N.Y.C.R.R. §137-2.1 and accordingly it

"conceded that they failed to comply with both requirements." Id. at 310. As set forth above, defendants are in full compliance with its reporting and recordkeeping requirements.

Furthermore, plaintiffs' allegation that defendants lose the tip credit because it retained a portion of the service charge also fails. As set forth in Point IV, the Restaurant imposed a mandatory service charge on all banquets, which was not a tip or gratuity. Therefore, defendants did not deprive plaintiffs of tips.

Accordingly plaintiffs' motion for partial summary judgment should be denied.

## VI.   DEFENDANTS HAVE ALWAYS PAID OVERTIME AND HAVE ALWAYS CALCULATED AT ONE AND ONE-HALF TIMES PLAINTIFFS LAWFUL REGULAR RATE.

Plaintiffs claim defendants failed to pay overtime compensation pursuant to FLSA, 29 U.S.C. §207(a).  However, Thalassa Restaurant has paid overtime to its workers at a rate of 1 ½ times the rate permitted under the FLSA and NYLL.

Employees covered by the FLSA must receive overtime pay for hours worked in excess of 40 in a workweek of at least one and one-half times their regular rate of pay. 29 U.S.C. §207(a). The "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. §207(e). Likewise, 12 N.Y.C.R.R. §137-1.3 requires an employer to "pay an employee for overtime at a wage rate of 1 ½ times the employee's regular rate for hours worked in excess of 40 hours in one workweek." The "regular rate" is defined as "the amount that the employee is regularly paid for each hour of work. When an employee is paid on a piece rate, salary or any other basis than hourly rate, the regular hourly rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." See New York Wage Order §137-3.5; New York Employment Law, Second Edition, Sulds, Vol. 3, Chapter 35.03[3][a] (2010).

Point VI, supra, clearly shows that the Restaurant was entitled to take the tip credit and pay plaintiffs an hourly rate below minimum wage, which is supplemented by tips. Thus, plaintiffs' "regular rate" is the lower rate after the "tip allowance." For example, on or after

January 1, 2007 to July 24, 2009, the tip allowance allowed Thalassa to pay $4.60 per hour to plaintiffs. The employees were "regularly paid" the lawful rate $4.60 "for each hour of work." (See Generally T. Ziotas Dec. Decl., Ex. D.) The Restaurant calculated overtime at the lawful rate times 1.5 ($4.60 x 1.5 = $6.90). Id.

Indeed, the Restaurant calculated its overtime in the same manner used by Magistrate Judge Pohorelsky to calculate overtime damages owed to plaintiff in Jin v. Pacific Buffet House, Inc., et al., (CV-06-579), 2009 U.S. Dist. LEXIS 74901 (E.D.N.Y. August 24, 2009). In that case the court found, among other things, that the employer satisfied its obligation under NY law with respect to the payment of minimum wages and the tip credit. Id. at *17.  The court further stated that plaintiff "should have been paid at least $3.30 per house for the first forty hours and $4.95 per hour (1.5 x $3.30) for overtime hours." Id. *17. Like the Restaurant, the court also calculated overtime at 1 ½ times the hourly rate with the tip credit.

Plaintiffs' misinterpret Hayes v. Bill Haley and His Comets, Inc., 274 F.Supp. 34 (E.D.Pa 1967). In that case, the plaintiff sought unpaid minimum wages and overtime compensation. The court awarded the plaintiff for nonovertime hours worked but not paid for at his regular rate, as opposed to minimum wage, because, the policy of the Administrator is to enforce the regular rate where there is overtime involved since the overtime rate can hardly be said to be paid until the nonovertime rate has been paid." Hayes, 274 F. Supp. at 37 (citing 29 C.F.R. §778.315). In that case, plaintiffs' regular rate exceeded the minimum wage. Thus, the court found that where the regular rate is over the minimum wage, overtime must be paid at 1½ times the greater rate, that rate above the minimum rate. Id. (Overtime is 150 percent of the regular rate, not the minimum wage.) Likewise, plaintiffs misunderstood Reich v. Midwest Body Corp., 843 F. Supp. 1249 (N.D. Ill. 1994). In that case plaintiffs-employees sought both straight time and overtime pay. The court held that the defendant had to pay the employees' straight time compensation and overtime based upon their contract rates, not based upon minimum wage rates (which were lower than the contract rates), in order to satisfy the FLSA. In contrast, here, plaintiffs' hourly rate is

lawfully lower than minimum wage because of the "tip credit" provisions. Accordingly, the Restaurant is paying 1½ times plaintiffs' regular hourly rate.

Plaintiffs cite to a February 19, 2009 the New York State Department of Labor Opinion Letter addressing, among other things, the method for calculating overtime for tipped employees. That Opinion Letter stated that overtime should be calculated at 1½ times the New York minimum wage before deducting the tip allowance permitted by the New York Wage Order for the Restaurant Industry. Accordingly, where the payroll records reflect that plaintiffs worked in excess of 40 hours in a given week, the Restaurant will pay each plaintiff an additional amount per overtime hour worked ("Y"). The formula to be used is (New York minimum wage for applicable year x 1.5) – tip allowance for given year = X. X-Amount paid = Y. In other words, the Restaurant will pay the difference between the reduced hourly overtime rate they were paid based on the tip allowance and the New York minimum wage times 1.5 minus the tip allowance.

However, plaintiffs' reliance is on the Opinion Letter is misplaced and this Court should not give any weight to the NYDOL Opinion Letter. Deference is not required when 'the question is one of pure legal interpretation of statutory terms. In <u>Yang v. ABCL Corp.</u>, 2005 U.S. Dist. LEXIS 31567, *24-26 (S.D.N.Y. Dec. 5, 2005), the court declined to defer to a NYSDOL Opinion Letter in rendering its decision interpreting New York's "spread of hours" statute. In doing so the court explained that while courts should defer to the governmental agency which administers the statute (the NYSDOL, in this case) when the matter "involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn there from," deference is *not* required when "the question is one of pure legal interpretation of statutory terms." <u>Id.</u>, citing <u>Kurcsics v. Merchants Mut. Ins. Co.</u>, 49 N.Y.2d 451, 459, 403 N.E.2d 159, 426 N.Y.S.2d 454 (N.Y. 1980) ('Where [] the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight).'"

Further, plaintiffs' contention that "there remains an open question as to whether defendants paid all plaintiffs any overtime compensation prior to 2007" (Pla.'s Br. at 19 n. 11) is wrong. In fact, there is no dispute, plaintiffs have received overtime payments since the Restaurant's opening. Defendants' payroll records, produced to plaintiffs in discovery, demonstrate as much. See generally T. Ziotas Dec. Decl. ¶ 16, Ex. D. For example, during the pay-period ending April 7, 2006, plaintiff Freddy Guachun worked 40.59 hours. Mr. Guachun received $210.00 as a wage for 40 hours worked ($5.25 an hour) and $4.65 for the 0.59 hours of overtime worked ($7.88 per hour and 1.5 times his $5.25 hourly wage). See Ziotas Dec. Decl. at Ex. D. Accordingly, the Restaurant has properly paid its employees overtime.

## VII.   PLAINTIFFS' REQUEST FOR LIQUIDATED DAMAGES IS PREMATURE AND THE RECORD DEMONSTRATES DEFENDANTS' GOOD FAITH BASIS FOR ANY ALLEGED VIOLATIONS.

Plaintiffs' request for summary judgment on the issue of liquidated damages under the FLSA and NYLL is premature and, in any event, meritless. The award of liquidated damages is left to the Court's "discretion" and can properly be denied if there is a showing that "the employer acted in subjective good faith and had objectively reasonable grounds for believing that the acts or omissions … did not violate the [Act]." Howard v. Port Auth. of N.Y. & N.J., 684 F. Supp. 2d 409, 416 (S.D.N.Y. 2010) (internal quotation marks omitted). Good-faith by an employer is demonstrated if "the employer … take[s] active steps to ascertain the dictates of the FLSA" such as by seeking professional advice (including from an accountant). Id. (internal quotation marks omitted); accord Genao v. Blessed Sacrament School, No. 07-3979, 2009 WL 3171951, at *11 (E.D.N.Y. Oct. 1, 2009) (liquidated damages were not awarded when employer relied on advice of the accountant). In addition, courts nationwide recognize that an employer's compliance with industry standards, even if those standards are in error, is further evidence of an employer's good-faith that can preclude liquidated damages. See Morse v. Mer Corp., No. 08-1389, 2010 WL 4812792, at *1 (S.D. Ind. Nov. 22, 2010) ("The evidence about the Defendant's compliance with industry custom and practice is relevant to the subjective portion of the good

faith defense" under the FLSA); Bennett v. SLT/TAG, Inc., No. 02-65, 2003 WL 23531402, at *9 (D. Or. May 8, 2003); Dalheim v. KDFW-TV, 715 F. Supp. 533, 540 (N.D. Tex. 1989) (finding defendant's "conduct was objectively reasonable in light of the uncertainty in the law."); Bailey v. The Pilots' Ass'n for the Bay & River Del., 406 F. Supp. 1302, 1308 (E.D. Pa. 1976) ("There is authority for denying liquidated damages where noncompliance was in good faith and was the result of tradition, custom, or industry practice.").

     Here, there has been no judicial finding or admission by defendants that there is FLSA or NYLL liability, let alone any award of damages. With no such violations or damages determined, it is premature for plaintiffs to argue that defendants acted willfully or without good-faith. In any event, the evidence demonstrates that defendants meet the good-faith requirement and did not act willfully. First, plaintiffs contend that "Defendants failed to ascertain whether they were in compliance with wage laws." (Pl.'s Br. at 31.) That fact is plainly in dispute. However, even as plaintiffs note, Tommy Ziotas, like the employer in Genao, conferred with an accountant regarding the minimum wage. Ziotas testified that he periodically -- at least every six months -- consulted an accountant regarding the Restaurant's minimum wage obligations and then set the rate of wages for the Restaurant's employees. (Ex. A, Fiskardo 30(b)(6) Dep. Tr. 133:10-24; S. Makris Dep. Tr. 59:8-21.) In Genao, it was sufficient that the employer "relied on the accountant" even though he "did not specifically ask the accountant about the plaintiff's overtime." 2009 WL 3171951, at *11.[14] Second, the Restaurant's practice regarding retention of banquet service charges was customary within the restaurant industry in New York City. (See T. Ziotas Decl. ¶ 11.) Finally, as set forth in detail in Points N the Restaurant's practices were reasonable in light of the sharp change in decisional law. As a result, these undisputed facts demonstrate the Restaurant had a good-faith basis to believe that it was complying with the

---

[14] Although the court found an overtime violation because a church and a school were joint employers, the court found a good-faith violation because when the employee exceeded 40 hours a week working for only the church, the church, like Thalassa, paid overtime wages. 2009 WL 3171951, at 11.

FLSA and NYLL, which was objectively reasonable under the circumstances, and that any alleged violations were not willful.  Therefore, plaintiffs are not entitled to summary judgment on this point.

Plaintiffs also erroneously seek prejudgment interest for liquidated damages under the NYLL.  Prejudgment interest for liquidated damages under the NYLL is not awardable.  See Boyke v. Superior Credit Corp., 01-0290, 2006 WL 3833544, at *1, 8 (N.D.N.Y. Dec. 28, 2006) (the court awarded liquidated damages under the NYLL but found that "plaintiff is not entitled to prejudgment interest under § 5100 (sic) of the NYCPLR.").  Plaintiffs do not seek prejudgment interest for any liquidated damages awarded under the FLSA.

## CONCLUSION

For the reasons set forth above, the Court should deny plaintiffs motion for partial summary judgment, except defendants do not dispute that Fiskardo Estiatorio, Inc. d/b/a Thalassa Restaurant is plaintiffs' employer and engaged in interstate commerce and that certain plaintiffs' may be entitled to spread of hours pay.


Dated:   New York, New York
         December 17, 2010

                                        Respectfully submitted,

                                        **LOWENSTEIN SANDLER PC**


                                        By:   s/ Stephanie L. Aranyos
                                              Stephanie L. Aranyos (SA-1657)
                                              1251 Avenue of the Americas
                                              New York, New York  10020
                                              (212) 262-6700
                                              saranyos@lowenstein.com
                                              Attorneys for Defendants


-31-