UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

RICARDO COPANTITLA, DIEGO DIAZ DE LA :
VEGA, IGNACIO GARCIA, FREDDY GUACHUN, :
JULIO LANTIGUA, MANUEL LIZANDRO, MARTIN :
LOPEZ, SEBASTIAN LOPEZ, AUGUSTIN :
MALDONADO, HENRY MATUTE, JOELITO :
MELENDEZ, AUSSENCIO RAMIREZ, AND JOSE :       Case No. 09 Civ. 1608
LUIS VARGAS,                          :       (RJH)(JCF)
                                      :
                      Plaintiffs,     :
                                      :
-against-                             :
                                      :
FISKARDO ESTIATORIO, INC. d/b/a THALASSA :
RESTAURANT, GEORGE MAKRIS, JULIA MAKRIS, :
STEVE MAKRIS, and FANTIS FOODS, INC.,    :
                                      :
                      Defendants.     :
                                      :
---------------------------------------------------------------------x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS CERTAIN PLAINTIFFS

**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas
New York, New York  10020
212-262-6700
Attorneys for Defendants
Fiskardo Estiatorio, Inc. d/b/a Thalassa Restaurant,
George Makris, Julia Makris, Steve Makris, and
Fantis Foods, Inc.

Of Counsel:

David W. Field, Esq.
Stephanie L. Aranyos, Esq.
Eric Jesse, Esq.

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................. iii

Preliminary Statement .............................................................................. 1

Legal Argument ......................................................................................... 1

I.    PLAINTIFFS' COUNSELS' CONFLICT OF INTEREST PERSISTS ............................ 1

II.   JULIA AND GEORGE MAKRIS ARE NOT "EMPLOYERS" BECAUSE PLAINTIFFS' FAIL TO SATISFY THE "ECONOMIC REALITY TEST" ............................................................................ 2

      A.   Julia Makris' Status As Sole Shareholder Does Not Make Her An "Employer". ................................................................ 2

      B.   George Makris Is Not An Employer And Plaintiffs' Reliance On A Few Isolated Facts, Even If True, Do Not Alter That Conclusion. ......... 3

III.  THE "ECONOMIC REALITY" TEST FAILS TO ESTABLISH FANTIS FOODS AS A "JOINT EMPLOYER" ............................................. 5

IV.   PLAINTIFF VARGAS DOES NOT RAISE ANY DISPUTED FACTS SUFFICIENT TO DEFEAT SUMMARY JUDGMENT OF HIS FALSE IMPRISONMENT CLAIM ................................................................ 8

      A.   No Reasonable Trier Of Fact Could Find That Steve Makris Intended To Confine Jose Luis Vargas. ........................................ 8

      B.   Vargas Was Not Conscious of His Purported Confinement. ................. 10

      C.   Vargas Consented To His Purported Confinement. ......................... 10

V.    PLAINTIFFS DID NOT WEAR A "UNIFORM" ........................................ 11

VI.   PLAINTIFFS MELENDEZ AND DIAZ DE LA VEGA HAVE NOT PROFFERED SUFFICIENT EVIDENCE THAT THEY WERE SUBJECTED TO A SEXUALLY HOSTILE WORK ENVIRONMENT OR QUID PRO QUO SEXUAL HARASSMENT ......................................... 13

      A.   Melendez and Diaz de la Vega Cannot Establish a Prima Facie Case of Same-Sex Sexual Harassment, Hostile Work Environment or Constructive Discharge. ...................................... 13

      B.   Melendez Cannot Establish A Constructive Discharge Claim. .............. 15

C.     Diaz de la Vega Has Not Raised Material Issues of Fact to Defeat Summary Judgment on His Quid Pro Quo Claim...................................................16

D.     Melendez and Diaz de la Vega Failed to Establish Claim Under the NYCHRL ............................................................................................................18

VII.    PLAINTIFFS CANNOT DEMONSTRATE, AS A MATTER OF LAW OR THROUGH DISPUTED FACTS, THAT DEFENDANTS RETALIATED AGAINST THEM ...........................................................................19

A.     Plaintiffs Lantigua, Diaz De La Vega, And Lizandro Cannot Prove Retaliation Arising Out Of The March Complaint. ...............................20

B.     Plaintiffs Copantitla, S. Lopez And Maldonado Cannot Demonstrate A Reduction In Hours Following The October 2008 Complaint...............................................................................................22

C.     Plaintiff Vargas' Meeting With Steve Makris Was Not Retaliatory ...................23

D.     Punitive Damages Are Not Available For A NYLL Retaliation Claim..............................................................................................................23

VIII.   THE DOCTRINES OF COLLATERAL ESTOPPEL, ELECTION OF REMEDIES, AND JUDICIAL ESTOPPEL PREVENTS PLAINTIFF FROM PREVAILING ON CERTAIN CLAIMS ............................................24

A.     The NLRB ALJ's Opinion Collaterally Estops Certain Plaintiffs From Re-litigating Issues In This Court. ..................................................24

B.     Plaintiff Diaz De La Vega Must Elect His Remedies Because He Asserts Claims With Inconsistent Factual Bases. ..................................25

C.     Judicial Estoppel Is Necessary To Prevent Diaz De La Vega From Taking Inconsistent Factual Positions. ...................................................26

IX.    CERTAIN PLAINTIFFS AND/OR THEIR CLAIMS SHOULD BE DISMISSED ON PROCEDURAL GROUNDS...........................................26

A.     Plaintiff Martin Lopez Failed To Comply With Discovery Obligations Making Dismissal Appropriate. ........................................26

B.     Copantitla Failed To Comply With His Discovery Obligations And Should Be Dismissed From The Action. .............................................27

C.     Plaintiff Ignacio Garcia's Two Allegations Should Be Stricken. ..........................28

X.     PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE TOLLING..............................29

Conclusion ..........................................................................................................30

# TABLE OF AUTHORITIES

**Pages**

CASES

Albury v. J.P. Morgan Chase,
    No. 03-2007, 2005 WL 746440 (S.D.N.Y. Mar. 31, 2005) ............................................... 10, 11

Bartle v. Mercado,
    235 A.D.2d 651 (App. Div. 1997) ........................................................................... 17

Bates v. Long Island R.R. Co.,
    997 F.2d 1028 (2d Cir. 1993) ................................................................................ 26

Cao v. Wu Liang Ye,
    2010 U.S. Dist. LEXIS 109373 (S.D.N.Y. September 30, 2010) ........................................... 13

Carter v. New York City Dep't of Corr.,
    7 Fed. Appx. 99 (2d Cir. 2001) ............................................................................. 20

Chicarelli v. Plymouth Garden Apartments,
    551 F. Supp. 532 (E.D. Pa. 1982) ......................................................................... 10

Clarke v. Mount Sinai Hosp.,
    05-CV-566 (CBA)(LB), 2007 U.S. Dist. LEXIS 52274, 2007 WL 2816198 (E.D.N.Y.
    July 18, 2007) ................................................................................................ 17

Donovan v. Captain Bill's Inc.,
    No. CV-82-06-4, 1982 WL 2103 (E.D.N.C. June 20, 1982) ................................................ 12

DuBois v. Brookdale Univ. Hosp.,
    2004 WL 3196952 (N.Y. Sup. Ct. Dec. 1, 2004) ................................................... 20, 21, 22

Durant v. A.C.S. State and Local Solutions, Inc.,
    460 F.Supp.2d 492 (S.D.N.Y. 2006) ....................................................................... 14

Godineaux v. LaGuardia Airport Marriott Hotel,
    460 F.Supp.2d 413 (E.D.N.Y. 2006) ...................................................................... 14

Grochowski v. Ajet Constr. Corp.,
    1999 U.S. Dist. LEXIS 13473 97-civ-6269 (LAK) (S.D.N.Y. September 2, 1999) ................. 5

Herbst v. Wuennenberg,
    No. 75-841, 83 Wis. 2d 768 ................................................................................. 10

Herman v. Blockbuster Entm't Group,
    18 F. Supp. 2d 304 (S.D.N.Y. 1998) ........................................................................ 2

Herman v. RSR Sec. Serv. Ltd.,
    172 F.3d 132 (2d Cir. 1999)..............................................................................................3

Hernandez v. La Cazuela De Mari Rest., Inc.,
    538 F. Supp. 2d 528 (E.D.N.Y. 2007) ..............................................................................3

Ke v. Saigon Grill, Inc.,
    595 F. Supp. 2d 240 (S.D.N.Y. 2008)..............................................................................29

Lee v. Bankers Trust Co.,
    No. 96 Civ. 8153 (DAB), 1998 WL 107119 (S.D.N.Y. Mar. 11, 1998) ..................................8

Lin v. Great Rose Fashion, Inc.,
    2009 U.S. Dist. LEXIS 46726 (NGG)(RLM) (E.D.N.Y. June 3, 2009)...........................5, 6, 7

Lin v. Hayashi Ya II, Inc.,
    No. 08-6071, 2009 WL 289653 (S.D.N.Y. Jan. 30, 2009) .....................................................23

Lopes v. Caffe Centrale LLC,
    548 F. Supp. 2d 47 (S.D.N.Y. 2008)..................................................................................16

Lu v. Jing Fong Rest., Inc.,
    503 F. Supp. 2d 706 (S.D.N.Y. 2007)...........................................................................12, 20

Martindell v. Int'l Tel. Corp.,
    594 F.2d 291 (2d Cir. 1979.)............................................................................................27

Merck Eprova AG v. Prothera, Inc.,
    670 F. Supp. 2d 201 (S.D.N.Y. 2009).................................................................................2

Mitchell v. Washingtonville Ctr. School Dist.,
    190 F.3d 1 (2d Cir. 1999)................................................................................................26

Moran v. Fashion Inst. Tech.,
    2002 U.S. Dist. LEXIS 19387 (S.D.N.Y. October 7, 2002) ..............................................14, 19

Mormol v. Costco Wholesale Corp.,
    364 F.3d 54 (2d Cir. 2004)...............................................................................................16

Morris v. Schroeder Capital Mgmt. Int'l,
    445 F.3d 525 (2d Cir. 2006)..............................................................................................15

Mutlu v. Jetblue Airways Corp.,
    2009 U.S. Dist. LEXIS 60164 (S.D.N.Y. March 31, 2009) ..................................................10

Nat'l Labor Relations Bd. v. Thalbo Corp.,
    171 F.3d 102 (2d Cir. 1999)..............................................................................................25

Nunez v. City of Los Angeles,
    147 F.3d 867 (9th Cir. 1998) ........................................................20

Oncale v. Sundowner Offshore Services, Inc.,
    523 U.S. 75 (1998)........................................................................19

Patraker v. The Council on Env't of New York City,
    No. 02-7382, 2003 WL 22703533 (S.D.N.Y. Nov. 17, 2003)................29

Perez v. Jasper Trading, Inc.,
    No. 05-1725, 2007 WL 4441062 (E.D.N.Y. Dec. 17, 2007)..................23

Petrosino v. Bell Atlantic,
    385 F.3d 210 (2d Cir. 2004)....................................................15, 16, 18

Reich v. Priba Corp.,
    890 F. Supp. 586 (N.D. Tex. 1995) ................................................12

Richards v. NYC Dep't of Homeless Serv.,
    No. 05-5986, 2009 U.S. Dist. LEXIS 20410 (E.D.N.Y. March 15, 2009) .............13

Riggs Nat'l Bank v. Price,
    359 A.2d 25 (D.C. App. 1976)........................................................10

Tepperwien v. Entergy Nuclear Operations, Inc.,
    606 F. Supp. 2d 427 (S.D.N.Y. 2009)..............................................15

Terry v. Ashcroft,
    336 F.3d 128 (2d Cir. 2003)...........................................................14

Torres v. Pisano,
    116 F.3d 625 (2d Cir. 1997)...........................................................20

Tracy v. NVR, Inc.,
    No. 04-6541, 2009 WL 3153150 (W.D.N.Y. Sept. 30, 2009)................3, 4

United States v. Alcan Aluminum Corp.,
    990 F.2d 711 (2d Cir. 1993)...........................................................25

United States v. Certain Real Prop. and Premises Known as: 4003-4005 5th Ave.,
    Brooklyn, New York,
    55 F.3d 78 (2d Cir. 1995)..............................................................27

White v. Levy Brothers,
    306 S.W.2d 829 (Ky. 1957).............................................................10

Williams v. New York City Housing Auth.,
    872 N.Y.S.2d 27, 61 A.D.3d (N.Y. App. Div. 2009) .........................18

Zerilli-Edelglass v. New York City Transit Auth.,
   333 F.3d 74 (2d Cir. 2003)..................................................................................29

Zheng v. Liberty Apparel,
   355 F.3d 61 (2d Cir. 2003)..............................................................................6, 7

**RULES**

Fed. R. Civ. P. 37, (b), (d) and 41(b) ................................................................27, 28

Fed R. Civ. P. Rule 26(b)..........................................................................................28

**OTHER AUTHORITIES**

18 Moore's Federal Practice, § 131.13[5][a] ..............................................................25

1 N.Y. Jur. 2d, Actions § 9 ........................................................................................25

Prosser and Keeton, The Law of Torts, sec. 11, p. 49 (5th ed. 1984)..........................11

## PRELIMINARY STATEMENT

Defendants Fiskardo Estiatorio, Inc. d/b/a Thalassa Restaurant, Fantis Foods, Inc., Steve Makris, George Makris and Julia Makris submit this reply memorandum of law in further support of their motion for summary judgment on plaintiffs Eighth, Tenth, Eleventh, Twelfth, and Thirteenth Counts and to dismiss plaintiffs M. Lopez's and Copantitla's claims for failure to comply with their discovery obligations. As set forth in detail herein, despite a lengthy opposition brief flooding the Court with irrelevant facts[1], plaintiffs' opposition brief fails to raise any material issues of fact and instead underscores defendant's entitlement to summary judgment and dismissal of certain plaintiffs.

## LEGAL ARGUMENT

### I.   PLAINTIFFS' COUNSELS' CONFLICT OF INTEREST PERSISTS

From the outset of this lawsuit (even without defendants' counterclaims), a conflict of interest existed.  If the so-called "properly tipped employees" prevail on their allegations that "improperly tipped employees" wrongfully were included in the tip pool, those improperly tipped employees will receive less damages if they prevail on their wage and hour claims.  This is because the tips paid to "improperly tipped employees" can be applied to any damages that may be awarded. Plaintiffs' counsel took a position that would benefit one subset of plaintiffs, but which has negative effects on other clients (the improperly tipped employees).  In addition, defendants assert legally viable counterclaims[2] that expose one group of plaintiffs to liability if other plaintiffs prevail on claims they have asserted.  Having failed to take the necessary steps of

---

[1] (See Plaintiffs' Responses to Defendant's Rule 56.1 Statement of Material Uncontroverted Facts) (Pls. Resp.) The facts cited to in Plaintiffs' Statement of Material Facts which preclude Summary Judgment are disputed facts, but even when taken in light most favorable to plaintiffs do not defeat defendants' motion for partial summary judgment.

[2] Plaintiffs misread defendants' counterclaims as a claim for contribution or indemnification for NYLL or FLSA liability.  Instead, defendants simply seek to apply the overpayment of tips allegedly improperly paid to certain plaintiffs (if plaintiffs prevail on their claim that Thalassa improperly diluted the tip pool) to any damages owed to  those individuals and/or the properly tipped employees.  This is a cognizable claim.  See Hoyle v. Dimond, 612 F. Supp.2d 225, 231 (W.D.N.Y. 2009)

obtaining informed consent or dividing representation, the Court is left to resolve the conflict by disqualifying plaintiffs' counsel, <u>Merck Eprova AG v. Prothera, Inc.</u>, 670 F. Supp. 2d 201, 208 (S.D.N.Y. 2009), or by dismissing the illegal retention of tips claim (leaving certain plaintiffs with a legal malpractice claim).

## II.     JULIA AND GEORGE MAKRIS ARE NOT "EMPLOYERS" BECAUSE PLAINTIFFS' FAIL TO SATISFY THE "ECONOMIC REALITY TEST"

### A.     <u>Julia Makris' Status As Sole Shareholder Does Not Make Her An "Employer".</u>

Plaintiffs hope to prevent Julia Makris' dismissal by arguing that she is the sole shareholder of the Restaurant, which somehow transforms her into an "employer."   As defendants' discuss in their opposition brief to plaintiffs' partial summary judgment motion (at pp. 5-6), plaintiffs have not offered a single instance of Julia Makris exercising any authority or control over plaintiffs (or any other employee) and consequently, have not satisfied a single factor in the economic reality test.   Plaintiffs have not offered a single line of deposition testimony where Julia Makris set the plaintiffs' pay, fired or hired a plaintiff, or gave a directive to a plaintiff.   Also, Julia Makris' suggestions to her son regarding the Restaurant's menu and ambiance are not directives and are free to be disregarded. Clearly, she has no control over operations or conditions of employment.

Her lone role as sole shareholder is insufficient, as a matter of law, to be an employer. Plaintiffs attempt to distinguish <u>Herman v. Blockbuster Entm't Group</u>, 18 F. Supp. 2d 304 (S.D.N.Y. 1998), which stands for that precise proposition, by claiming the "Court specifically contrasted the case before it [where the shareholder owned 49.9% of shares] from this case, where the corporation was 'wholly owned'" is wrong.  (Pb[3] 4.)  The <u>Blockbuster</u> court did not rest its finding that Blockbuster was not liable because it was not a sole-shareholder.  Instead, like Julia Makris, in the absence of "any participation by Blockbuster in Discovery Zone's employment and labor decisions, its status as a *major shareholder* in Discovery Zone is insufficient to consider" Blockbuster as an employer.  <u>Id.</u> at 313. (emphasis added)

---

[3] Citation (Pb __.) shall refer to Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion for Partial Summary Judgment and to Dismiss Certain Plaintiffs.

The case law that plaintiffs rely upon as talismanic proof that a sole shareholder is deemed an employer, in fact, does not support that position.  In each of those cases the shareholders were also managers who oversaw the operation of the corporation or exercised control over conditions of employment.  See Hernandez v. La Cazuela De Mari Rest., Inc., 538 F. Supp. 2d 528, 535 (E.D.N.Y. 2007) (individuals "acted as managers of the restaurant" with "operational control" and were "responsible for paying Defendants their wages."); Herman v. RSR Sec. Serv. Ltd., 172 F.3d 132, 136, 139 (2d Cir. 1999) (purported employer "exercised financial control over the company" and met "at least three of the four factors" of the economic reality test).  The employers in those cases stand in stark contrast to Julia Makris.  Indeed, in contrast to Julia Makris, "corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedule or tasks, signing the employees paycheck or directly hiring the employee."  Tracy v. NVR, Inc., No. 04-6541, 2009 WL 3153150, at *4 (W.D.N.Y. Sept. 30, 2009).[4]

For the foregoing reasons, summary judgment should issue in Julia Makris' favor.[5]

**B.** **George Makris Is Not An Employer And Plaintiffs' Reliance On A Few Isolated Facts, Even If True, Do Not Alter That Conclusion.**

Plaintiffs are unable to provide any proof that George Makris exercised any control over conditions of employment or operations of Thalassa.  Instead, they cloud the record with trivial facts, and attenuations.

---

[4] The facts in Tracy are aligned with this case.  The employees in Tracy tried to impute employer liability to individual defendants solely because they held the positions of chairman and president.  2009 WL 3153150, at *5.  However, as in this case, plaintiffs made no allegation that the chairman and president hired, fired, supervised workers, determined rate or method of pay, or maintained employment records.  Id.  The Tracy court was unwilling to allow suit to proceed "simply because of the position the individual holds."  Id.

[5] By slight of hand in footnote 2 of their opposition brief, plaintiffs seek to expand their motion for summary judgment against Julia Makris to include her status as an employer under New York state and city human rights laws.  However, nowhere in plaintiffs' moving papers do they seek summary judgment on those statutes and the Court should not grant relief not sought in the initial motion.

The facts plaintiffs offer, even if true, are actually in line with the facts in <u>Vidtape</u> -- a case plaintiffs do not distinguish -- where the father, "occasionally gave the employees orders or directions and did attend some employee meetings" but "did not hold an integral role in Vidtape's operations, or in setting work policies, schedules or conditions of employment."  196 F. Supp. 2d at 291; <u>see also</u> <u>Tracy</u>, 2009 WL 3153150, at *4 ("employers" have "some direct contact with the plaintiff employee.").  Therefore, plaintiffs' suggestion that George Makris' advice regarding the décor (<u>i.e.</u> "introduc[ing] a new plant" (Aff. [1/13/11] Ex. D., Lantigua 231:15-17)) or requests to fix a door or a wobbly chair is no reason employer liability should attach.[6]  Plaintiffs offer no proof that George Makris satisfies the economic reality test factors.[7]

The only strand of evidence plaintiffs offer on George Makris' role is Lantigua's hearsay testimony that George Makris instructed Kemal Kurt ("Kurt") to suspend Henry Matute.  Even if true, this allegation – in the absence of any other meaningful factors – is not sufficient for employer liability.  However, plaintiffs offer no competent evidence to substantiate that hearsay[8] or to show that Kurt ever followed that alleged directive.  Instead, Matute testified that Steve Makris suspended him during a telephone call making any alleged action by George Makris incidental (or non-existent).  (<u>Id.</u> Ex. F, Matute 83:15-24.)  Plaintiffs also try to transform George Makris' mere presence with Steve Makris and a secretary when Sait Dogan was advised of his wage into "play[ing] a role in setting employees' pay." (Pb. 6.) However, mere presence in a room is not evidence that George Makris actually set Dogan's method or rate of pay or informed him of it.  By plaintiffs' argument, that secretary would also be plaintiffs' employer.

Last, plaintiffs try to attach liability to George Makris because he is majority shareholder of Fantis Foods, Inc., which plaintiffs allege is a joint employer.  Such an attenuated argument --

---

[6] Transforming George Makris' request to fix a wobbly chair into liability is a stretch and, is taken out of context.  That request occurred when he was a patron. (Zapantis 36:8-12); the request was not made in a managerial capacity, as plaintiffs would lead the Court to believe.

[7] The plaintiffs also suggest that the perception of Diaz de la Vega that George Makris was an owner somehow matters.  However, as noted in <u>Vidtape</u>, the court found that the father, who "most thought [] was a 'boss'" was not an employer. 196 F. Supp. 2d at 291.

[8] Plaintiff Matute does not provide any evidence on the incident.

that George Makris is a shareholder of a company that might be (according to plaintiffs) a joint employer with another company -- is not a basis for employer liability.  As discussed, in <u>Section III</u>, <u>infra</u> Fantis Foods is not a joint employer.

## III.   THE "ECONOMIC REALITY" TEST FAILS TO ESTABLISH FANTIS FOODS AS A "JOINT EMPLOYER"

The "economic reality" is that Fantis Foods and Thalassa do not have "interlocking" operations and the familial ties of the Makris Family have no bearing on the economic relationship between Fantis Foods and Thalassa.

Plaintiffs base their conclusion that a joint employer relationship exists by ignoring the key proposition that "a joint employer relationship exists where the employee "performs work which simultaneously benefits two or more employers." <u>Grochowski v. Ajet Constr. Corp.</u>, 1999 U.S. Dist. LEXIS 13473 97-civ-6269 (LAK) (S.D.N.Y. September 2, 1999). Similarly, plaintiffs ignore "[t]he heart of the inquiry", whether, "'as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves.'" (citations omitted) <u>Lin v. Great Rose Fashion, Inc.</u>, 2009 U.S. Dist. LEXIS 46726, *36, 08-cv-4778 (NGG)(RLM) (E.D.N.Y. June 3, 2009).[9] In their opposition papers plaintiffs do not provide any evidence that Fantis Foods derives any benefit from the work performed by plaintiffs at Thalassa (other than selling the Restaurant products in the normal course of Fantis Foods' business). Instead, plaintiffs base their entire claim on the Makris' familial relationship, Thalassa's payroll process, and because on one occasion Steve Makris met with Sait Dogan in Carlstadt, NJ and may have, on a handful of occasions, met with other members of "management" in Carlstadt, NJ.  (Pb 8-9.)

First, the Makris family relationship does not give rise to a finding of joint employer status.  It is undisputed that Julia Makris is the sole shareholder of Thalassa Restaurant and that

---

[9] Based upon a review of the relevant "joint employer" case law, it would follow that the ultimate purpose of the "joint employer" test is to expose sham subcontracting arrangements that exist just to shield the client company from employment laws, including wage and hour laws. <u>See</u>, e.g. <u>Zheng</u> and <u>Lin</u>.

she had no involvement in Fantis Foods. (Pls. Resp. to 3 and 10.)  Moreover, George Makris has no ownership interest in the Restaurant. Plaintiffs hinge their argument on Steve Makris, son of Julia and George Makris. Steve Makris' familial ties and relationship to Thalassa Restaurant is an insufficient basis to preclude summary judgment on this issue. At most, the Court could conclude that Steve Makris, as an individual, is an "employer."[10]

Second, the fact that Thalassa's payroll information was forwarded to Thalassa employees, Tommy Ziotas and Kathy Zotos, who happened to be doing that work from the Fantis Foods office in Carlstadt, before sending it to the outside payroll company is not enough to create a joint employer relationship. Both Tommy Ziotas and Kathy Zotos were employed by and received pay checks from Fantis Foods and Thalassa. (Ziotas Decl. ¶¶ 7, 12.) Thus, Fantis Foods did not have custody and control over Thalassa's payroll documents. Moreover, the record is clear, Fantis Foods did not pay plaintiffs wages or issue plaintiffs W-2s. (Pls. Resp. to 51.)

Although a company, that does not "literally pay the workers," "can *de facto* set employees' wages and "dictate[] the terms and conditions" of their employment, those employees must "perform work exclusively in service of that company." Zheng v. Liberty Apparel, 355 F.3d 61, 72 (2d Cir. 2003). The key factor missing is that plaintiffs do not "perform work exclusively" in service of Fantis Foods. Indeed, they do not perform any work for Fantis Foods. Similarly, Thalassa was never economically dependent on Fantis Foods or its employees.

In support of the contention that Fantis Foods is a joint employer of plaintiffs, plaintiffs rely solely on Lin. (Pb. 10).[11] However, plaintiffs' reliance is misplaced because (i) Lin dealt

---

[10] Defendants acknowledge that there is an issue of fact as to whether Steve Makris is an "employer" under the FLSA and NYLL, which is the subject of plaintiffs' pending motion for summary judgment.

[11] Plaintiffs also cite to Grochowski, 1999 U.S. Dist. LEXIS 13473, in support of its position that questions of fact remain precluding summary judgment on the issue of joint employer. However, unlike here, defendants conceded that "'there is sufficient facts in the record from which a trier of fact might "conclude 'employer' status under the FLSA. Id. *6. Moreover, the court noted that the record shows that one plaintiff produced a payroll check written out to him from a joint account. Id. * 9. Those facts are not present here. It is undisputed that Thalassa and Fantis Foods maintain separate bank accounts.

simply with an employer's motion to dismiss and (ii) the "factual situation", as plaintiffs say, is distinguishable from the facts of this case. [12] In <u>Lin</u>, the court denied defendants' motion based on a pleadings standard; it did not make any findings on the merits. <u>Lin</u> at *49.

Moreover, the facts in <u>Lin</u> are significantly distinguishable from this case. Like <u>Zheng</u>, <u>Lin</u> deals with the very specific garment industry. In that case, plaintiffs were garment factory workers. Defendant Great Wall was a wholesale garment company and defendant Silver Fashion was a garment manufacturing company. The Court determined that Silver Fashion was plaintiffs' "employer." However, the court held, among other things, that "[d]iscovery [was] needed to determine whether a functional employment relationship existed between the Plaintiffs and Great Wall under the <u>Zheng</u> factors." 2009 U.S. Dist. LEXIS 46726, *45. The court pointed out that the evidence had already established that (1) "[t]he ownership of the premises and the equipment used in the Factory could be imputed to Great Wall" given among other things "the fact that the Factory's space was distinguished from Great Wall's space by nothing more than a pile of paper boxes;" <u>Lin</u>, 2009 U.S. Dist. LEXIS 46726, *46, and (2) Great Wall was Silver Fashion's ***sole*** client and that Silver Fashion existed for the ***singular purpose*** of manufacturing garments for Great Wall. <u>Id.</u> at *10-11 (emphasis added.) Further, the entities were functioning as complementary components of a single business enterprise: "[u]pon review of the preliminary evidence before the court, the relationship between Plaintiffs and Silver Fashion appears to have had "no substantial, independent economic purpose" beyond serving as a "subterfuge meant to evade the FLSA or other labor laws" for the benefit of Great Wall." <u>Id.</u> at *47.

Here, unlike <u>Lin</u>, the work performed at Thalassa by plaintiffs is not integral to Fantis Foods' product or vice versa. While Thalassa uses some Fantis Foods products in its meals (with the vast majority of its food products coming from other vendors), Thalassa could easily continue operating without purchasing from Fantis Foods and Fantis Foods could certainly

---

[12] Plaintiffs correctly point out that the Court granted their motion to amend to add Fantis Foods as party. <u>Copantitla v. Fiskardo Estiatorio, Inc. d/b/a Thalassa Restaurant</u>, 2010 U.S. Dist. LEXIS 33430, *19 (S.D.N.Y. 2010). However, even the Court noted that "the facts alleged in this case may not support joint employer status as strongly as those in <u>Lin</u>." <u>Id.</u> at *18-19.

continue operating without Thalassa's purchase orders. In the end, plaintiffs' work has absolutely no bearing on Fantis Foods' import and distribution company.

Finally, the fact that Steve Makris met with Sait Dogan[13] or a few other Thalassa employees at his Fantis Foods office, even if true, is not sufficient for joint employer liability. In the absence of any participation by Fantis Foods in Thalassa's employment and labor decisions and an absence of common management and economic dependence, Fantis Foods cannot be found to be a joint employer. Accordingly, summary judgment should be granted in favor of Fantis Foods.[14]

## IV.   PLAINTIFF VARGAS DOES NOT RAISE ANY DISPUTED FACTS SUFFICIENT TO DEFEAT SUMMARY JUDGMENT OF HIS FALSE IMPRISONMENT CLAIM

Despite plaintiffs' attempt to bury the Court in irrelevant facts regarding Vargas's false imprisonment claim, Vargas cannot demonstrate sufficient material evidence to defeat summary judgment.

### A.   No Reasonable Trier Of Fact Could Find That Steve Makris Intended To Confine Jose Luis Vargas.

Failure to show an intent to confine and actual confinement or threatening conduct is fatal to a claim for false imprisonment. Lee v. Bankers Trust Co., No. 96 Civ. 8153 (DAB), 1998 WL 107119, at *4 (S.D.N.Y. Mar. 11, 1998), aff'd 166 F.3d 540 (2d Cir. 1999). In an attempt to establish the necessary element of false imprisonment, Vargas claims that his confinement was a result of "a reasonable fear for his safety."[15] (Pb. 16, fn 6.) However, Vargas offers no evidence for his conclusory assertion that he was confined by a "reasonable apprehension of force,"

---

[13] Sait Dogan's meeting at the Fantis Foods facility was out of convenience for Dogan, who lived in New Jersey and in close proximately to the Fantis Foods office in Carlstadt, NJ. ( Aff. [1/13/11] Ex. G, Dogan 81:10-13; Ex. B, Steve Makris. 125:25-126-6.)

[14] For the reasons discussed in Section III, supra, plaintiffs' claims against Fantis Foods fail under the NYSHRL and NYCHRL. See Eaton v. Goodstein Mgmt., Inc., 1999 U.S. Dist. LEXIS 17655 (S.D.N.Y. 1999). (recognizing the joint employer test in under the NYSHRL and NYCHRL.)

[15] Plaintiff Vargas concedes that the mere threat to arrest does not constitute confinement. (Pb. 16. fn 6.)

because he cannot.[16] (Pb. 15.)   The record is clear; during the October 2nd meeting, no one exerted any "force" or made any "threats."[17] At most, Vargas asserts a claim that Steve Makris yelled at him and threatened to have him arrested. But, as Vargas concedes, that is irrelevant.

Having failed to establish that Steve Makris threatened Vargas physically or verbally, he suggests that the presence of 2 plainclothes police officers created the "apprehension of fear." But, the mere presence of police officers is insufficient to create a reasonable apprehension of force.[18] Further, Vargas does not offer any evidence that either of the plainclothes police officers verbally or physically restrained him.  Indeed, if Vargas' facts are taken as true, Steve Makris was the person "directing the [alleged] interrogation" and the plainclothes police officers did not speak. (Pb. 13.) Accordingly, Vargas' claim that the police officers "acted to intimidate the employee" is baseless.[19] (Pb. 16.) Based on the facts established on the record, no reasonable trier or fact could conclude that the presence of plainclothes polices officers, who identified themselves to be NYC Police Officers, and who are required to uphold the law, could demonstrate an intent to confine. Similarly, Vargas' argument that the presence of police officers made the office a "hostile" and "unfamiliar" surrounding, is meritless.

---

[16] Plaintiffs rely upon Campoverde v. Sony Pictures Entm't, 2002 U.S. Dist. LEXIS 18347, *30-31 (S.D.N.Y. Sept. 30, 2002), for the proposition that "a defendant exercises confinement over a plaintiff "when the plaintiff submits to an apprehension of force reasonably understood from the defendant's conduct." (Pb. 15.) However, that case dealt simply with a Rule 12(b)(6) motion and not the merits of the case.

[17] Defendants have filed exceptions to the ALJ's finding that the October 2nd meeting was an "interrogation" in violation of the National Labor Relations Act of 1935, as amended 29 U.S.C. §151 et seq.

[18] Prosser and Keeton, The Law of Torts, sec. 11, p. 51 (5th ed. 1984) ("[T]he presence of a policeman who questions the plaintiff, or the bare assertion that authority to arrest exists in the defendant, without the defendant's purporting to exercise it by taking the plaintiff into custody, is not imprisonment, so long as no present restraint of liberty is implied.")

[19] "Had the officer exhibit a warrant, or if he asserted that he would arrest plaintiff, a submission to such a show of force might raise a question for the jury." (citations omitted) Foulke v. New York Consolidated Railroad Co., 180 A.D. 848, 849 (2d Dep't 1917).The mere presence of police officers does not raise to the leave of a reasonable apprehension of force. Further, Vargas claims that he did not believe they were even police officers.  Ex. 11 to Joshua M. Goodman's declaration, at ¶ 6.

Accordingly, Vargas's claim for false imprisonment fails as a matter of law because no reasonable trier of fact could find that Steve Makris communicated an intent to confine Vargas. See Mutlu v. Jetblue Airways Corp., 2009 U.S. Dist. LEXIS 60164 (S.D.N.Y. March 31, 2009) (finding that plaintiff's claim of false imprisonment failed for a matter of law because "the pilot never threatened Plaintiff or forced him into the lavatory.")

**B.      Vargas Was Not Conscious of His Purported Confinement.**

Vargas also fails to prove that he was conscious of the alleged confinement. As established above, Vargas was not confined by a "reasonable apprehension of force." (Pb. 15.) Thus, in the absence of physical force or physical barriers, plaintiff must make some attempt to determine whether s/he is actually confined. Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 541 (E.D. Pa. 1982). Absent force or physical barriers, a claim of false imprisonment can not rest upon a mere belief that one is confined. Id.  See also White v. Levy Brothers, 306 S.W.2d 829, 830 (Ky. 1957); cf. Riggs Nat'l Bank v. Price, 359 A.2d 25 (D.C. App. 1976) quoting Herbst v. Wuennenberg, No. 75-841, 83 Wis. 2d 768; 266 N.W.2d 391 (Wis. 1978).[20]  In fact, it is undisputed that Vargas' only request was to leave the office to go get a business card to identify his lawyer and that he actually left the office to get the card.  (Aff. [11/15/10] Ex. HH, Abrahante 43:22-44:23; Ex. II, R. Abrahante NLRB 553:14-17; Ex. DDD;  Aff. [1/13/11], Ex. C Zapantis NLRB 50:17-20; 136:14-17; 137:6-14;.) Thus, there is no showing of actual confinement.

**C.      Vargas Consented To His Purported Confinement.**

Vargas voluntarily consented to the purported confinement, which nullifies his claim of false imprisonment.   Albury v. J.P. Morgan Chase, No. 03-2007, 2005 WL 746440, *14 (S.D.N.Y. Mar. 31, 2005).  Here, Vargas consented to the meeting by remaining in the office.

---

[20] Although the office door had a key code to enter, there is no evidence that the doors were locked from the inside out.  Moreover, "[t]he fact that the doors were locked does not mean that there was an intent to confine her, or for that matter, that claimant was truly confined." Fernandez v. The State of New York, 2002 N.Y. Slip Op 50510U, *7 (Ct of Claims December 3, 2002).

(Id. 134:24-135:25.)   As Prosser and Keeton, The Law of Torts, sec. 11, p. 49 (5th ed. 1984) state, in pertinent part:

> The plaintiff is not required to incur the risk of personal violence by resisting until it actually is used. ***It is essential, however, that the restraint be against the plaintiff's will; and if one agrees of ones own free choice to surrender his freedom of motion, as by remaining in a room*** or accompanying the defendant voluntarily, to clear himself of suspicion or to accommodate the desires of another, rather than yielding to the constraint of a threat, then there is no imprisonment. (emphasis added). [21]

The evidence shows that Vargas assented to his confinement by freely walking downstairs to the office and entering the office to speak with Steve Makris. He further consented by remaining in the office after the plain clothes police officers identified themselves. Plaintiffs ignore the telling fact that even when Vargas was alone in the office, he made no attempt to exit. (Aff. [11/15/10] Ex. WW, Vargas 134:24-135:25; 143:3-5.) Nor did he attempt to exit the open door. (Id. Ex. CC, S. Makris 149:10-155:25; Ex. NN, Giakoumis 76:21-25; Ex. JJ, Kurt 334:20-335:6; 336:5-24.) Nor did he ever asked the uniformed police officers (who he believed to be officers) to be allowed to leave the office.  (Id. Ex. WW, Vargas 138:17-19.)  Thus, according to Vargas's own testimony, there is no evidence from which a reasonable jury could find that plaintiff did not consent to the meeting.  Accordingly, Vargas's false imprisonment claim should be dismissed in its entirety.

## V.     PLAINTIFFS DID NOT WEAR A "UNIFORM"

Contrary to plaintiffs assertion, neither captains, nor "non-captain front-of-house" staff (busboys, runners and expediters) wore a uniform and accordingly, defendants were not responsible for the cost of, purchasing and maintaining of the clothing.

---

[21] Vargas cites Rosario v. Amalgamated Ladies' Garment Cutters' Union, 605 F.2d 1228 (2d Cir. 1979) to support his position that he did not consent to his purported confinement.  In that case, the court rejected defendant's contention that plaintiffs consented to the confinement because there was evidence on the record that defendant had maliciously used false information to cause the arrest and prosecution of plaintiffs. Id. at 1251. Here, there is no evidence that Vargas was tricked or goaded into the meeting and remaining at the meeting.

In an attempt to create a triable issue of fact, plaintiffs claim that the blue suits worn by captains could not be worn in the ordinary wardrobe because certain plaintiffs found the style unappealing. However, plaintiffs offer no support that preference is the test for "ordinary wardrobe."  Merely because plaintiffs disliked the clothes worn does not mean they could not be worn in an ordinary wardrobe.

Instead, plaintiffs' primarily rely on district court opinions from North Carolina and Texas, and argue that if an employer requires "a specific type of clothing such as a distinctive style, color or quality, such clothing is considered to be a 'uniform'". (Pb. 26.) See Donovan v. Captain Bill's Inc., No. CV-82-06-4, 1982 WL 2103 (E.D.N.C. June 20, 1982) and Reich v. Priba Corp., 890 F. Supp. 586, 596-97 (N.D. Tex. 1995). However, even if the cases cited were binding on the Court, their facts are sufficiently distinct from the facts of the instant case that they would not compel a ruling for plaintiffs.

In Donovan, plaintiffs/waitresses were required to wear white dresses and white shoes and to purchase or acquire the same at their own expense, which were regularly purchased from "uniform centers or the uniform sections of department stores."  Id.  at *3.  In stark contrast, here, Thalassa's employees were permitted to purchase clothing from any store. However, for a short period of time, Thalassa offered its employees the option of purchasing clothing from Sarar, which is a clothing retailer, not a "uniform center."[22] See www.sarar.com. In Reich, defendant employer Cabaret Royale was a nightclub and restaurant with topless female dancers. Cabaret Royale required its waitresses to wear a uniform which included "black shoes; black bodysuit; tights; fishnet stockings; and a wide belt." Id.  at 596.  In that case, Cabaret Royale did not dispute that it required employees to wear and provide their own "uniform." Moreover, bodysuits and fishnet stockings are meaningfully different from dark suits and button down shirts. Accordingly, here these items do not qualify as a "uniform."  Lu v. Jing Fong Rest., Inc.,

---

[22] Plaintiffs have failed to offer any time period regarding purchasing at Sarar, which is significant because there is no evidence that before or after that time period plaintiffs claim they wore a "uniform."

503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007) (granting summary judgment in favor of defendants where plaintiffs attire at the restaurant did not qualify as a "uniform.")

In their opposition brief, plaintiffs concede that busboys, runners, and expediters outfit of black pants, black shirt, and black shoes do not meet the "required uniform" standard.[23] Plaintiffs seem to focus only on the issue that the black aprons and black vests worn by those employees were part of a "required uniform."[24] However, plaintiffs fail to provide any documentary evidence to show that plaintiffs were actually charged for those items. Thus, plaintiffs' claim still fails. See e.g. Cao v. Wu Liang Ye, 2010 U.S. Dist. LEXIS 109373 (S.D.N.Y. September 30, 2010) (Plaintiff waiters were required to wear a white shirt, black pants, a tie, and a red vest. "The only item that arguably could not have been worn as part of the employee's ordinary wardrobe, the red vest, was provided by defendants. There is no evidence in the record that plaintiff waiters incurred any expenses to acquire or clean their red vests."). [25]

## VI. PLAINTIFFS MELENDEZ AND DIAZ DE LA VEGA HAVE NOT PROFFERED SUFFICIENT EVIDENCE THAT THEY WERE SUBJECTED TO A SEXUALLY HOSTILE WORK ENVIRONMENT OR QUID PRO QUO SEXUAL HARASSMENT

Plaintiffs argue that disputed issues of fact preclude summary judgment on Melendez's and Diaz de la Vega's claims of sexual harassment. However, despite their attempt to raise issues of fact, even if their factual allegations are true, Melendez and Diaz de la Vega do not establish a prima facie case of sexual harassment.

## A. Melendez and Diaz de la Vega Cannot Establish a Prima Facie Case of Same-Sex Sexual Harassment, Hostile Work Environment or Constructive Discharge.

Courts within this Circuit have granted summary judgment, where, as here, the purported harassing conduct is not severe or pervasive. See, e.g., Richards v. NYC Dep't of Homeless Serv., No. 05-5986, 2009 U.S. Dist. LEXIS 20410, *19-20 (E.D.N.Y. March 15, 2009)(granting

---

[23]To the extent that plaintiffs have not conceded that the black pants, shoes and shirts were part of a "required uniform", they have offered no support to overcome the case law cited in defendants moving Memorandum of Law.

[24] The Restaurant provided and laundered those items at its expense. (Defs 56.1 Stmt at 109.)

[25] Further, it is difficult to imagine why simple articles of clothing, such as an apron and black vest, would require special treatment and could not be thrown into the laundry.

summary judgment to defendant on hostile work environment claim based on plaintiff's allegations that his supervisor told him that he needed a "real woman," touched her buttocks twice, several times came in close physical proximity to him and assigned him to unfavorable tasks, e.g., cleaning the bathroom. Court found that '[n]one of these incidents standing alone are severe enough to establish a hostile work environment. Moreover, no reasonable trier of fact would find that the allegations, taken as a whole, were so severe or pervasive as to rise to the level of a hostile work environment"); Durant v. A.C.S. State and Local Solutions, Inc., 460 F.Supp.2d 492, 497-98(S.D.N.Y. 2006)(court granted summary judgment to defendant and held that offensive jokes, a comment by a supervisor regarding her sex life, and two requests for sex did not rise to the level of a hostile work environment); Godineaux v. LaGuardia Airport Marriott Hotel, 460 F.Supp.2d 413, 421-23 (E.D.N.Y. 2006)(court held that repeated "hissing" at plaintiff, stray anatomy-related comments, stray sexually suggestive comments and gestures, one request for sex, and one attempt at a kiss did not create a hostile work environment).[26]

The first element of a hostile work environment claim contains both an objective and subjective component. The alleged misconduct "must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003). The objective severity of harassing conduct, based on the totality of the circumstances presented by Melendez, is not severe or pervasive enough to establish a hostile work environment.

Looked at objectively, the two instances that plaintiff complained of – Kurt allegedly grabbing him and rubbing his shoulders – lack the severity, frequency, and physical threatening nature that is required to show that the conditions of plaintiff's employment were altered, thereby creating a hostile work environment. Moran v. Fashion Inst. Tech., 2002 U.S. Dist. LEXIS 19387, *19, (S.D.N.Y. October 7, 2002)(brief touches on the arm or shoulder when speaking, talking about co-workers and the close proximity when speaking do not alter the conditions of

_____

[26] Diaz de la Vega's pleadings fail to adequately plead a hostile work environment claim. Even if this Court reads a claim for hostile work environment he, like Melendez, fails to establish sufficiently "severe and persuasive" conduct.

employment).  Recognizing the deficiencies in his claim, Melendez does not even address in his opposition brief the "severe and pervasive" case law relied upon by defendants.

Instead, Melendez mounts his case by stating that all unreported harassment or other sexual harassment may be considered when assessing all relevant circumstances surrounding a hostile work environment claim.[27] (Pb. 19 n. 10)  However, "[o]nly admissible evidence need be considered…in ruling on a motion for summary judgment." Tepperwien v. Entergy Nuclear Operations, Inc., 606 F. Supp. 2d 427, 436 (S.D.N.Y. 2009)(internal quotations omitted).  The alleged harassment by Dogan occurred prior to Melendez's employment and there is no evidence that either Melendez (or Diaz de la Vega) had any knowledge of the purported harassment. Further still, the alleged harassment by Dogan illustrates a male-female issue of harassment and not same-sex harassment.  Accordingly for the reasons set forth in defendants' moving brief and herein, Melendez hostile work environment claim should be dismissed.

**B.      Melendez Cannot Establish A Constructive Discharge Claim.**

Melendez still fails to prove that a reasonable person in his position would have been compelled to resign. The Second Circuit has established that "constructive discharge requires the employer's intentional conduct and an intolerable level of working conditions." Petrosino v. Bell Atlantic 385 F.3d 210, 229 (2d Cir. 2004).

The evidence before the Court is insufficient to conclude that a reasonable person would find Melendez's working conditions so intolerable, as to compel him to resign. See Morris v. Schroeder Capital Mgmt. Int'l, 445 F.3d 525, 528 (2d Cir. 2006)(to establish constructive discharge, plaintiff must show abusive environment so intolerable that resignation qualified as a fitting response). The two alleged acts of inappropriate touching by a co-worker, as noted above, were insufficient to rise to the level of hostile work environment.[28]

---

[27] Also, as discussed in Section VI D., Melendez and Diaz de la Vega fail to offer any evidence of Kurt's sexual preference.

[28] Plaintiffs point out, "the effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive." (Pb 20.) It, "like any other relevant factor, may be taken into account, no single factor is required." Harris

Plaintiffs cite to <u>Lopes v. Caffe Centrale LLC</u>, 548 F. Supp. 2d 47, 53 (S.D.N.Y. 2008), which is distinguishable on its facts. In that case, the record demonstrated plaintiff's continued tolerance of the alleged harassment and offensive conduct was a condition of employment. Although defendants deny it, plaintiff allegedly spoke to his manager about a customer's comments and touching, however the manager told plaintiff to go along with the customer, and that he was homosexual. After an altercation, wherein the plaintiff confronted the customer, the manager told plaintiff that his behavior violated written rules of employee conduct and unless he apologized to the customer he would be terminated. Moreover, if the apology was not accepted he would be fired. Further, plaintiff claims that the manager said he would have to accede to a request for sexual favors, "If that is what it takes him to accept your apology." <u>Id.</u> at 50.  Faced with these alternatives, plaintiff resigned. Thus the court found that material issues of fact remain regarding the meeting and summary judgment on the constructive discharge claim is inappropriate. However, such egregious allegations are not present in this case. Even if all of plaintiffs' allegations are taken as true, Melendez cannot establish constructive discharge.

## C.   <u>Diaz de la Vega Has Not Raised Material Issues of Fact to Defeat Summary Judgment on His Quid Pro Quo Claim.</u>

As set forth in <u>Section VIII</u>, <u>infra</u>, Diaz de la Vega's sexual harassment claim should be precluded because of the doctrines of collateral estoppel, judicial estoppel, and election of remedies.  Notwithstanding, Diaz de la Vega's claim still fail on the merits because, among other things, he fails to show a "tangible employment action," resulted from his refusal to submit to Kurt's sexual advances. <u>Mormol v. Costco Wholesale Corp.</u>,  364 F.3d 54, 57 (2d Cir. 2004) (internal quotation marks and citation omitted).[29]

Kurt was not a supervisor and could not affect the conditions of any plaintiff's employment. (Defs.' moving brief p. 29 and 33). But, even if Kurt were found to have the ability

---

v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Here, one instance of purported inappropriate conduct, that lasted mere seconds, could not reasonably affect an employees' well-being.

[29] When determining if quid pro quo discrimination has occurred, courts apply virtually identical standards under the NYSHRL and Title VII.  <u>Messer v. Fahnestock & Co. Inc.</u>, no. 03-4989, 2008 WL 4934608, at *7 (E.D.N.Y. Nov. 18, 2008) (<u>citing</u> <u>Petrosino</u>, 385 F.3d at 220 n.1.)

to affect Diaz de la Vega's conditions of employment, Diaz de la Vega has failed to show any direct or circumstantial evidence that his purported refusal was causally linked to his departure in April 2008. See Clarke v. Mount Sinai Hosp., 05-CV-566 (CBA)(LB), 2007 U.S. Dist. LEXIS 52274, 2007 WL 2816198, *8 (E.D.N.Y. July 18, 2007)("[w]ithout some evidence of a causal connection between the alleged sexual harassment and [plaintiffs] termination, the plaintiff's quid pro quo sexual harassment claim must be dismissed.")(internal questions omitted).[30] Here, Diaz de la Vega does not point to any evidence that he was threatened with any type of sexual blackmail, or that Kurt sabotaged his job.[31] The only purported "termination" occurred when Diaz de la Vega told the Restaurant that he did not intend to work his scheduled shift on a busy Saturday night. The undisputed evidence shows that Diaz de la Vega's departure was because of the events that occurred on April 25, 2008. Plaintiffs claim that the casual link is a disputed fact is wrong. There is no evidence linking his purported rejection of Kurt's alleged advances and his alleged termination. Thus, Diaz de la Vega's quid pro quo claim should be dismissed.

Diaz de la Vega denied that Kurt ever made any sexual demand of him: Kurt "didn't explicitly ask me to engage in a sexual act, or to have sex."[32] (Aff. [11/15/10] Ex. QQ, Diaz de la Vega  69:18-19.)  Diaz de la Vega claimed that Kurt touched him on his shoulders as if giving a massage, on one occasion touched his penis and on two other occasions Kurt allegedly asked Diaz de la Vega to show his penis. (Id. 69:19-70:14.)  Where, as here, no explicit demand is made, courts express doubt that an alleged harasser's conduct is sexually motivated if the offending behavior occurred infrequently and out in the open.  See Bartle v. Mercado, 235

---

[30] In support of his quid pro quo claim, plaintiff Diaz de la Vega cites to Ragin v. Newburgh Enlarged City School District, 2009 U.S. Dist. LEXIS 118704 (S.D.N.Y. December 17, 2009), the facts of that case establish a strong temporal relationship between plaintiff's refusal and adverse employment actions.  No such temporal relationship is established here.

[31] Moreover, Diaz de la Vega ignores the ALJ's finding of fact, which was not the basis of any exceptions, that he left Thalassa to work at the Tribecca Grand.  ALJ Op. at 31.   Further, Diaz de la Vega offers no information regarding the proximity of time between the alleged harassment and his purported alleged termination. Instead, he merely claims that Kurt's promotion in March 2008 creates a link between his departure on April 25, 2008. (Pb. 23.) It is illogical to assume that they are, in any way, causally related.

[32] Kurt strongly denies all of Diaz de la Vegas allegations. (Aff. [11/15/10] Ex. JJ, 330:9-331-3.)

A.D.2d 651, 653-54 (App. Div. 1997) (concluding that conduct was not sexual in nature where no sexual advances were made, the frequency and intensity of the alleged contact did not increase, and the alleged contacts occurred in public even though the opportunity for private interaction was available).  At most, plaintiff has stated that subjectively he felt uncomfortable with Kurt's actions.[33] For these reasons, Diaz de la Vega's claim must be dismissed.

## D.   Melendez and Diaz de la Vega Failed to Establish Claim Under the NYCHRL

With regard to Melendez's and Diaz de la Vega's claims under the NYCHRL, while the NYCHRL employs a more liberal standard than the NYSHRL, "the broader purposes of the [NYCHRL] do not connote an intention that the law operate as a general civility code." Williams v. New York City Housing Auth., 872 N.Y.S.2d 27, 61 A.D.3d at 79 (N.Y. App. Div. 2009) (internal quotation marks and citation omitted). Therefore, summary judgment is appropriate where the alleged discriminatory conduct is "no more than petty slights or trivial inconveniences." Id. at 80. Here, the evidence for Melendez and Diaz de la Vega is of such a minimal character and supported by such vague evidence that a trier of fact would have to conclude that it represents, at best, "petty slights or trivial inconveniences." Id.

Furthermore, they have not set forth sufficient competent evidence to show that they were subjected to discrimination because of sex.[34] Melendez and Diaz de la Vega boldly state that they met the requirements for determining whether an individual was discriminated against because of sex in same-sex sexual harassment cases. In this regard, Melendez and Diaz de la Vega, without

---

[33]  Plaintiffs cite to Petrosino, 385 F.3d 210 to support their position that "asking one's subordinates repeatedly to "go out" can be abusive if juxtaposed against repeated and unwanted sexual touching." (Pb 19.) However the environment there was much more severe than that here. The conduct found to be severe and pervasive in Petrosino included sexual assault. Id. at 214-15. Here, Diaz de la Vega's own allegations and testimony make it clear that the comments were sporadic in nature and did not amount to continuous and pervasive activity to establish a claim.

[34] Neither Melendez nor Diaz de la Vega have presented competent evidence to defeat defendants' motion for summary judgment. A summary judgment motion "will not be defeated merely…on the basis of conjecture or surmise." Hill v. Rayboy-Brauestein, 2008 U.S. Dist. LEXIS 5461, *12 (S.D.N.Y. Jan. 24, 2008), quoting, Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991); see also, McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 215, n.4 (2d Cir. 2006)(speculation is insufficient to defeat summary judgment).

any support in the record now claim that Kurt was homosexual.  However, they provide conclusory statements alleging that Kurt was homosexual. (Pb. 22; Pls. Resp. at ¶56.).

In order to prevail on a same-sex sexual discrimination claim, plaintiffs must present some evidence that the harasser was homosexual. Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998). To establish his claim of same-sex harassment, plaintiff has the burden of demonstrating that Kurt intended to have some kind of sexual contact with him and had an underlying sexual desire toward plaintiff. See Moran, 2002 U.S. Dist. LEXIS 19387, *14-15; Oncale, 523 U.S. at 81. Here the record clearly shows that Kurt is a heterosexual male. At his deposition, Kurt freely discussed his wife and their 1998 marriage. (Aff. [11/15/10] Ex. JJ, Kurt 49:13-18; and generally pages 49-50.) Moreover, Kurt vehemently denied ever "hoping to have a sexual or romantic relationship with either Mr. Diaz de la Vega or Mr. Melendez." (Id. 329:22:330:2.) Melendez and Diaz de la Vega have presented no evidence of Kurt's homosexuality and therefore, no inference can be made to support their contention that Kurt's actions were done out of sexual desire. Put simply, they fail to meet their burden of showing that they were discriminated against because of sex. Thus, all allegation of sexual harassment should be dismissed.

**VII.   PLAINTIFFS CANNOT DEMONSTRATE, AS A MATTER OF LAW OR THROUGH DISPUTED FACTS, THAT DEFENDANTS RETALIATED AGAINST THEM**

Certain plaintiffs alleged that defendants retaliated against them in response to two complaints about wages and tips: one in the end of March 2008 and one on October 1, 2008.[35] However, summary judgment is appropriate against plaintiffs because their claim is barred as a matter of law and the facts presented do not create a material dispute.

---

[35] Plaintiffs do not contest that their retaliation claim is limited to only the two incidents alleged in the SAC, thereby precluding a retaliation claim based on other complaints plaintiffs may have made, but have not been alleged.

First, plaintiffs have not produced any direct or circumstantial[36] evidence that any purported retaliation is causally linked to the March or October complaints -- a critical requirement. Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007). Second, plaintiffs' allegations of scheduling changes are simply not reflected in the record. Third, certain acts that plaintiffs allege do not, as a matter of law constitute an adverse employment action. Courts recognize that a retaliatory act must result on a change in employment conditions; threats and mere words are not sufficient. See Carter v. New York City Dep't of Corr., 7 Fed. Appx. 99, 103 (2d Cir. 2001); Nunez v. City of Los Angeles, 147 F.3d 867, 875 (9th Cir. 1998). Even the case law relied upon by plaintiffs recognizes that a threat is only actionable when accompanied by a *change* in the employee's working conditions. Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997). Likewise, plaintiffs claims of being yelled at, having an unfavorable schedule, or being asked to perform other work-related tasks are not adverse employment actions. DuBois v. Brookdale Univ. Hosp., No. 6062-04, 2004 WL 3196953, at *6 (N.Y. Sup. Ct. Dec. 1, 2004). Last, the facts alleged in plaintiffs' opposition brief do not give rise to a *genuine* dispute of *material* fact and only disguise the absence of plaintiffs' argument.

**A.**    **Plaintiffs Lantigua, Diaz De La Vega, And Lizandro Cannot Prove Retaliation Arising Out Of The March Complaint.**[37]

Lantigua alleges he was terminated in July for a March complaint, but offers no proof that his alleged discharge was retaliatory. When outright asked during his deposition what retaliation he suffered he made no mention of his supposed discharge and only stated that his hours were reduced. (Aff. [11/15/10] Ex. OO, Lantigua 139:11-140:2.) Such a glaring omission

---

[36] Plaintiffs cannot rest their case on circumstantial evidence permitted in retaliation cases -- temporal proximity -- because the time between the complaints and the retaliatory acts is too distant. See Stoddard v. Eastman Kodak Co., 209 Fed.Appx. 475,480 (2nd Cir. 2009) (no temporal proximity when protected activity took place two months prior to adverse action); Murray v. Visiting Nurse Servs. of N.Y., 528 F.Supp.2d 257, 275 (S.D.N.Y.2007) (where temporal proximity is the only evidence offered, the proximity must be "very close." Two to three months distance is insufficient.).

[37] Not surprisingly, plaintiffs also offer no rebuttal to defendants' argument that Lantigua's, Diaz de la Vega's, Lizandro's, and Melendez's retaliation claims stemming from the October complaint fail because they were not employed by the restaurant at the time of that complaint.

of the most significant adverse employment action -- termination -- is telling.  However, this is not surprising because Lantigua was <u>not even present</u> when a group of employees made the March complaint.  (Aff. [1/12/11] Ex. D, Lantigua 171:9-21.).  Relying on Lantigua's NLRB testimony, he tries to sustain his retaliation claim by basing it not on the March complaint, but on his ROC-NY organizing activities.  Of course, this issue has been adjudicated before the NLRB and plaintiffs' retaliation claims are limited to two complaints about tips and wages -- and are not premised on purported union activities.

Lantigua's allegation that his hours were reduced in retaliation for a complaint he did not make, at a meeting he did not attend, likewise lacks merit.  Following the alleged March Complaint, Lantigua's hours show no appreciable or drastic fluctuation.  Aff. [11/15/10] Ex. X.

Lantigua also provided no evidence demonstrating causation -- that the reason for the alleged discharge and hours reduction was because of the March complaint.  Indeed, Lantigua abandoned his job at Thalassa to become a full-time law student. (Lantigua 149:4-8; 195:24-196:6; 197:14-16.)  With no direct evidence, temporal proximity does not save Lantigua's claim.  <u>See</u> <u>Murray,</u> 528 F.Supp.2d at 275. The alleged hours reduction and discharge occurred four months after the March complaint.

As for plaintiff Lizandro, the retaliatory acts that he supposedly suffered do not amount to adverse employment actions (or constructive discharge) as a matter of law.  Plaintiffs summarily contend, that Lizandro received "unfavorable work schedules."  However, plaintiffs do not dispute defendants' argument that the schedule change occurred in February 2008 -- before the March complaint occurred -- and therefore could not have be a causal result of that complaint.  In fact, unfavorable schedules are not adverse actions.  <u>DuBois</u>, 2004 WL 3196952, at *6.  Moreover, plaintiffs' conclusory statement that Lizandro's work schedule was "unfavorable" is not supported by the evidence.  First, Lizandro's hours remain steady following the March complaint.  Second, he suffered no reduction in pay that would correspond with "unfavorable" hours.  Indeed, in April and May Lizandro was paid in excess of $500 during four

pay periods.  However, from January to March (before the complaint), that occurred only once.  See  Aff. (11/15/10) Ex. X.

In addition, Lizandro contends that he was reprimanded on a single occasion and assigned additional duties because of his complaint.  However, plaintiffs offer no law to demonstrate that such acts are adverse employment actions or give rise to an intolerable working condition to support constructive discharge.  Being yelled at and receiving additional work are not adverse employment actions.  DuBois, 2004 WL 3196952, at *6.

Plaintiff Diaz de la Vega, who has already unsuccessfully litigated before the NLRB the issue of whether he was fired or quit seeks a second bite of the apple with a new story.  However, the ALJ unequivocally found that Diaz de la Vega was not a credible witness and that he quit.  See ALJ Op. at 31.  As discussed, infra, p. 24, he is collaterally estopped from re-litigating that same issue before this Court. Because he quit on his own accord to work a second job, his retaliation claim must fail; the ALJ conclusively found that Thalassa took no adverse employment action against him.  Therefore, Diaz de la Vega cannot state a claim for Retaliation.

**B.   Plaintiffs Copantitla, S. Lopez And Maldonado Cannot Demonstrate A Reduction In Hours Following The October 2008 Complaint.**

Plaintiffs do not assert in their opposition that Copantitla, S. Lopez, Maldonado, or Vargas suffered retaliation arising out of the alleged March Complaint.  Instead, plaintiffs Copantitla, S. Lopez, and Maldonado only contend in opposition that defendants' sole retaliatory act after the October complaint was a reduction in hours.  However, plaintiffs' statement has no support in the record.  Prior to the October complaint, Copantitla frequently had pay-periods where he worked between 25-35 hours.  Indeed, working a full forty hour work week (or more) is the exception.  Following the October complaint, Copantitla's hours (not to mention pay) follow the same pattern from the first nine months of the year.  The same is true for S. Lopez, Maldonado, and Vargas[38].  A review of their hours and pay prior to the October complaint shows

---

[38] In their opposition, plaintiffs do not contend that Vargas received reduced hours in retaliation for the October complaint although defendants seek summary judgment on this particular issue.

no pattern of reduction in hours or pay after the complaint.  In fact, most of S. Lopez's post-complaint work weeks were near, at, or in excess of 40 hours.

### C.    Plaintiff Vargas' Meeting With Steve Makris Was Not Retaliatory

Plaintiffs contend that Vargas was retaliated against based on a "detention and interrogation" by Steve Makris, the day after the October incident.  The meeting could not be considered a retaliatory act because Vargas suffered no adverse employment action.  As plaintiffs concede, he was not fired.  His hours were not reduced.  He suffered no damages as he was paid in full. ((Pls. Resp. 251; Ziotas Decl. Ex. E.)  Moreover, Vargas' retaliation claim also fails to the extent that he bases it on Steve Makris' mere words or yelling during the meeting.  Even assuming that Vargas' meeting with Steve Makris is an adverse employment action, plaintiffs cannot show that Steve Makris had knowledge of the complaint (a necessary element) and therefore cannot show causation (another necessary element).  Plaintiffs distract the Court with disputed fact as to what other restaurant employees were told by the group that tried to deliver the letter.  However, the plaintiffs offer no evidence or testimony to demonstrate that Steve Makris knew of the letter's content or was told by anyone.  The most plaintiffs can do is belittle the true reason for the meeting: Steve Makris' safety concerns for the restaurant and his family (who live above the restaurant) and to find out why a boisterous group of people came to the restaurant.  The plaintiffs offer no evidence that the purpose of the meeting was anything other than to allay safety concerns, further negating any causal link.

### D.    Punitive Damages Are Not Available For A NYLL Retaliation Claim.

The case law in defendants moving brief (at 41) demonstrates that punitive damages are not available for NYLL retaliation claims.  The federal case law plaintiffs rely upon to support their arguments should not be followed in this Court.  In both of those cases, the court awarded punitive damages on a default judgment.  Lin v. Hayashi Ya II, Inc., No. 08-6071, 2009 WL 289653 (S.D.N.Y. Jan. 30, 2009); Perez v. Jasper Trading, Inc., No. 05-1725, 2007 WL 4441062 (E.D.N.Y. Dec. 17, 2007).  Therefore, the court did not have the benefit of having punitive damages briefed and zealously argued.  With no such guidance on the law, those courts

erroneously awarded punitive damages.  Second, in both cases, the court awarded punitive damages *because* the plaintiffs suffered mental anguish.  Here, there is no evidence (or even an allegation in the SAC) that plaintiffs suffered a modicum of "metal anguish."  Accordingly, punitive damages are not awardable.

## VIII.   THE DOCTRINES OF COLLATERAL ESTOPPEL, ELECTION OF REMEDIES, AND JUDICIAL ESTOPPEL PREVENTS PLAINTIFF FROM PREVAILING ON CERTAIN CLAIMS

### A.   The NLRB ALJ's Opinion Collaterally Estops Certain Plaintiffs From Re-litigating Issues In This Court.

Plaintiffs Diaz de la Vega, Vargas, and S. Lopez were willing participants in the NLRB proceeding against the Restaurant.  Having litigated certain facts in that forum where finding of facts (that will ultimately become final)[39] were made, collateral estoppel bars those plaintiffs from having a "second bite at the apple."

Plaintiffs Diaz de la Vega, Vargas, and S. Lopez were charging parties in the NLRB action.  It was their factual allegations that was the basis for the NLRB proceeding.  Although plaintiffs now try to distance themselves from the unfavorable factual findings by the NLRB ALJ, Diaz de la Vega, Vargas, and S. Lopez had a vested interest in the outcome of that action.  They were the real parties in interest and at a minimum in privity with the Counsel for the General Counsel.  First, as charging parties, plaintiffs would be direct beneficiaries of monetary and injunctive relief that the ALJ could award (if they had prevailed).   Second, far from being side-line participants, as plaintiffs' brief suggests, the charging parties were actively involved in prosecuting the NLRB proceeding to vindicate their rights.   The charging parties were represented by the Urban Justice Center, which presented evidence, cross-examined witnesses, collaborated with counsel for the general counsel, submitted their own post-hearing and exceptions briefs, and even made document demands in connection with the NLRB's subpoenas

---

[39] Plaintiffs have raised exceptions to the ALJ's decision with the NLRB only as to charging parties Lantigua and Lizandro.  Therefore, the decision and findings of the ALJ as to Diaz de la Vega, Vargas, and S. Lopez will ultimately become final.

to Thalassa.  As such, plaintiffs Diaz de la Vega, Vargas, and S. Lopez are the real parties in interest that were given a full and fair opportunity to litigate in the NLRB proceeding.

Contrary to plaintiffs' statements, defendants do not seek sweeping application of collateral estoppel.  Admittedly, collateral estoppel applies to identical issues that were actually litigated and decided.  Nat'l Labor Relations Bd. v. Thalbo Corp., 171 F.3d 102, 109 (2d Cir. 1999).  This is especially true for Diaz de la Vega's allegation that he was fired by the Restaurant.  This issue was before the NLRB ALJ and is present in this lawsuit to support his retaliation and sexual harassment claims.  However, the ALJ found that Diaz de la Vega quit his job at the Restaurant and was not fired, which was necessary to decide the NLRA claim.  Although this issue was used to support an NLRA claim, preclusion applies to preclude re-litigation of that identical fact when used to support other claims, contrary to plaintiffs' assertion.  United States v. Alcan Aluminum Corp., 990 F.2d 711, 718 (2d Cir. 1993) ("Under collateral estoppel … the second suit is upon a different claim or cause of action.").

**B.    Plaintiff Diaz De La Vega Must Elect His Remedies Because He Asserts Claims With Inconsistent Factual Bases.**

Plaintiffs misapply the doctrine of election of remedies.  The issue here is that Diaz de la Vega asserts two inconsistent factual positions to support two different claims: he supports his retaliation claim by alleging he was discharged for making a complaint about labor law violations while at the same time supporting his sexual harassment claim by alleging he was fired for refusing sexual advances.

Plaintiffs cannot require defendants "to defend against a version of the facts marshaled in support of one theory" and then pursue "another claim resting upon a ***repugnant factual*** or legal basis."  18 Moore's Federal Practice, § 131.13[5][a] (emphasis added).  "When a choice is made between irreconcilable claims, with full knowledge of the facts, the party making the election may not thereafter maintain an action on the inconsistent claim." 1 N.Y. Jur. 2d, Actions § 9.  Of course here, we have different and contradictory courses of events: discharge for refusing sexual advances; discharge in retaliation for labor law complaints; and discharge for engaging in

-25-

protected activities under the NLRA.  Because Diaz de la Vega failed to properly elect, the Court should dismiss his retaliation and sexual harassment claims.

## C.  Judicial Estoppel Is Necessary To Prevent Diaz De La Vega From Taking Inconsistent Factual Positions.

Judicial estoppel bars Diaz de la Vega from "asserting a factual position that is contrary to a position previously taken … in a prior legal proceeding."  Mitchell v. Washingtonville Ctr. School Dist., 190 F.3d 1, 6, (2d Cir. 1999).  Diaz de la Vega, as a charging party in the NLRB proceeding and party in interest eligible for relief, took the position that he was terminated by Thalassa for engaging in protected activities.  Now he takes the contrary position that he was terminated for refusing sexual acts to support of his sexual harassment claim.

Although the ALJ did not find in favor Diaz de la Vega and found that he voluntarily left Thalassa to work at another job, judicial estoppel should bar him from asserting that the reason for his termination is refusing sexual advances.  Judicial estoppel should not be as narrow as plaintiff suggests (i.e. only to circumstances were the tribunal renders favorable judgment) because it is intended to preserve "the sanctity of the oath by demanding absolute trust and consistency in all sworn positions."  Bates v. Long Island R.R. Co., 997 F.2d 1028, 1038 (2d Cir. 1993).  Such an important purpose is not fulfilled by only precluding a prevailing party from asserting a contrary fact.  A party that does not prevail should, likewise, not be permitted to jump from forum to forum asserting whatever contrary facts suit the claim.

## IX.  CERTAIN PLAINTIFFS AND/OR THEIR CLAIMS SHOULD BE DISMISSED ON PROCEDURAL GROUNDS

## A.  Plaintiff Martin Lopez Failed To Comply With Discovery Obligations Making Dismissal Appropriate.

Plaintiffs' assertion that M. Lopez, who is represented by counsel and ignored the discovery process (denying defendants the opportunity to put him to his proof) to avoid summary judgment can still avail himself of the relief sought is contrary to law.

Plaintiffs do little more than make excuses for Martin Lopez and claim that his appearance at deposition should be *voluntary* because there is documentary evidence and "his

testimony would add little." (Pb 47.)  These baseless excuses and assumption do not change the fact that Martin Lopez has ignored this lawsuit and his discovery obligations, which warrant dismissal with prejudice under Fed. R. Civ. P. 37, (b), (d) and 41(b).[40]

In addition, even the case cited by plaintiffs demonstrates that defendants are greatly prejudiced because they are unable to question Martin Lopez on claims which form the basis of both plaintiffs' and defendants' motions for summary judgment.  See Sease, 2006 WL 3210032, at *5 ("Failure to appear for a deposition alone can 'greatly prejudice' an adverse party.")

Lastly, M. Lopez's *continued* failure to make himself available for deposition, despite repeated requests and his and his counsel's awareness of the consequences for failing to make himself available demonstrates M Lopez's "willfulness" making dismissal the appropriate sanction.  "Failure to appear for a deposition satisfies the element of willfulness required for dismissal under Rule 37."  Id. at *3.  His repeated failure to appear further demonstrates that lesser sanctions are not appropriate.

**B.**    **Copantitla Failed To Comply With His Discovery Obligations And Should Be Dismissed From The Action.**

Contrary to plaintiffs' assertions that defendants were able to continue with Copantitla's deposition, plaintiff and plaintiffs' counsel foreclosed defendants from obtaining relevant evidence regarding Copantitla. The "full disclosure of all evidence that might conceivably be relevant…represents the cornerstone of our administration of civil justice." United States v. Certain Real Prop. and Premises Known as: 4003-4005 5th Ave., Brooklyn, New York, 55 F.3d 78, 84 n.5 (2d Cir. 1995) (quoting Martindell v. Int'l Tel. Corp., 594 F.2d 291, 295 (2d Cir.

---

[40] Plaintiffs' claim that it was not enough for defendants to advise plaintiffs' counsel -- prestigious New York law firms -- that there would be consequences for failure to appear and that defendants were actually required to "bring their concern to the Court's attention."  To the contrary, courts have "never considered warning an absolute condition precedent" to the imposition of sanctions, because parties "have no absolute entitlement to be 'warned' that they disobey court orders at their peril." Interscope Records v. Barbosa, 2006 U.S. Dist. LEXIS 94210 *6, (E.D.N.Y. 2006). Thus, it was sufficient for defendants to warn plaintiff through its counsel about. Moreover, plaintiffs' case law only requires a warning from the court when a party is pro se.

1979.)); see also Fed R. Civ. P. Rule 26(b) (permitting parties to  obtain discovery of any "relevant" matter, unless subject to an evidentiary privilege.)

Plaintiffs acknowledged that they instructed Copantitla not to answer a question posed, but failed to offer any basis or justification such instruction, because they cannot. (Pb 45.) Counsel's instruction was meritless and destructive. The question which plaintiff refused to answer is relevant and material to the issues in dispute, and the information sought to be elicited by that question is not privileged. Inquiry into plaintiff Copantitla's identity goes to defendants' understanding of Copantitla's alleged losses and to understand how and why the documents for "Eduardo Garcia" relate to Copantitla, and to Copantitla's credibility as a party. There is no other source for obtaining this information except from Copantitla.

Further, after Copantitla refused to answer the question posed, plaintiffs' counsel refused to permit defendants to proceed with their deposition stating "We'd be happy to have you ask him any other lines of questioning that we mutually deem appropriate." (Aff. (11/15/10), Ex. W, Copantitla 12:8-12:10.) (emphasis added.) Thus, the reason the deposition ceased was because plaintiffs' counsel made it clear that the deposition would proceed only as plaintiffs deemed fit and not based on the Federal Rules of Civil Procedure.

Finally, plaintiffs fail to provide any authority for their position that dismissal is unwarranted. Although defendants did not previously seek a motion to compel, plaintiff and plaintiff's counsel knew or should have known that a motion was pending and their refusal to comply with his deposition could lead to Fed R. Civ. P 37 sanctions. See generally Fed R. Civ. P 37 (failure of plaintiff to answer questions may result in sanctions including dismissal of the action.) Moreover, at deposition defendants' counsel clearly stated that "we're going to cancel the dep and we're going to go to the judge." (Ex. W, Copantitla 8:11-16.)  The fact remains, Copantitla failed to meet his discovery obligations and dismissal of his claims is warranted.

**C.    Plaintiff Ignacio Garcia's Two Allegations Should Be Stricken.**

Initially, plaintiff Ignacio Garcia asserted a retaliation claim against the Restaurant.  To support that claim, he alleged that he complained to Thalassa about Labor Law violations in

"June or July 2008" (SAC ¶110) and that he was terminated because of that complaint (SAC ¶ 115).  At his deposition, I. Garcia withdrew his retaliation claim but paragraphs 110 and 115 remain in the SAC.  With the retaliation claim dismissed with prejudice, it is appropriate for this court to strike those two paragraphs because they (1) are immaterial and impertinent; (2) have no bearing on the case; (3) are unsupported by any evidence; and (4) prejudice the defendants.

Paragraphs 110 and 115 should be stricken because they only pertain to I. Garcia's retaliation claim and are not supportive of any other claims.  This is particularly true for other plaintiffs who assert retaliation because I. Garcia's retaliation claim arises from a June or July complaint and is unconnected with the other plaintiffs' alleged complaints in March and October. Therefore, paragraphs 110 and 115 have no bearing on the other plaintiffs' claims making them immaterial and impertinent.

## X.   PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE TOLLING

Plaintiffs Guachun, Matute, and Copantitla each seek damages under the FLSA and NYLL dating back to the start of their employment in 2002, which is far outside the 2 or 3 year statute of limitation under the FLSA and the 6 year statute under the NYLL.  To overcome this hurdle, plaintiffs ask the Court to equitably toll the statute of limitations.  However, such relief is not appropriate as a matter of law as well as based on the facts.

"Equitable tolling is only appropriate in rare and exceptional circumstances … in which a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003)(internal quotation marks omitted). Indeed, it applies when "plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant."  Id.  In addition, the party seeking equitable tolling must "act with diligence" for the period he or she seeks to toll.  Id.

Those "rare and exceptional circumstances" are not present here.  First, plaintiff offers no evidence that defendants intentionally or affirmatively mislead plaintiffs, as was the case in Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 258-59 (S.D.N.Y. 2008). See Patraker v. The Council on Env't of New York City, No. 02-7382, 2003 WL 22703533, at *2 (S.D.N.Y. Nov. 17, 2003)

(equitable tolling did not apply in wage and hour action where plaintiff did not allege "any affirmative deception by defendants" and only alleged that "defendants never told him that he was entitled to overtime pay.").   Second, plaintiffs fail to satisfy the second requirement for equitable tolling by showing they "act[ed] with diligence."   Lastly, defendants advised plaintiffs of their hourly rates upon hiring and provided notice through a wage and hour poster in the employee locker-room.[41]   (Aff. [11/15/10] Ex. CC, S. Makris 182:19-183:2, Ex. Y, Fiskardo 30(b)(6) 129:13-17; 130:23-131:4; Ex. HH, Abrahante 32:23-33:25.)

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court (1) enter summary judgment as to the Eighth Count, Eleventh Count, Twelfth Count, Thirteenth Count, (2) dismiss all claims of plaintiffs Copantitla and M. Lopez, (3) dismiss all claims against defendant Julia Makris, George Makris, and Fantis Foods, Inc. (4) dismiss certain allegations concerning I. Garcia, (5) strike plaintiffs' claims for punitive damages under NYLL §215, and (6) resolve plaintiffs' counsel's conflict of interest.

Dated:   New York, New York
        January 13, 2011                             Respectfully submitted,

                                                    **LOWENSTEIN SANDLER PC**


                                            By:   _s/ Stephanie L. Aranyos_
                                                    Stephanie L. Aranyos (SA-1657)
                                                    1251 Avenue of the Americas
                                                    New York, New York  10020
                                                    (212) 262-6700
                                                    saranyos@lowenstein.com
                                                    Attorneys for Defendants

---

[41] Plaintiffs' characterization of any alleged FLSA violation of willful is erroneous.  As noted in defendants' opposition brief (at 30) Thalassa sought wage an hour advice through an accountant. Fiskardo 30(b)(6) Dep. Tr. 133:10-24.